1  R. Dennis Osterman (D.C. Bar No. 951822)
   **R. DENNIS OSTERMAN, PLLC**
2  1901 Pennsylvania Avenue, N.W.
   Suite 1005
   Washington, DC  20006
3  Tel: 202-861-4297
   Fax:202-463-2091

4
   J. Brian McTigue (D.C. Bar No. 475904)
   Bruce F. Rinaldi (D.C. Bar No 455187)
5  **McTIGUE LAW FIRM**
   5513 Connecticut Avenue, Suite 220
6  Washington, DC  20015
   Tel: 202-364-6900
   Fax: 202-364-9960
7
   Ellen M. Doyle (PA ID No. 21854) (Admitted *Pro Hac Vice*)
8  James A. Moore (PA ID No. 73515)
   **MALAKOFF DOYLE & FINBERG, P.C.**
   437 Grant Street, Suite 200
9  Pittsburgh, PA 15219
   Tel: 412-281-8400
10 Fax: 412-281-3262
   Attorneys for Plaintiffs William S. Harris, Reginald E. Howard, and Peter M.Thornton, Sr.

11              **UNITED STATES DISTRICT COURT**
12                  **DISTRICT OF COLUMBIA**

13

14  **WILLIAM S. HARRIS, REGINALD E. HOWARD, and PETER M.**
    **THORNTON, SR.** on behalf of themselves and all others similarly
15  situated,
                                    Plaintiffs,
16
    v.
17
    **JAMES E. KOENIG; STATE STREET BANK AND TRUST**          **Case No. 1:02-**
18  **COMPANY; WASTE MANAGEMENT HOLDINGS, INC.; WASTE**        **CV00618(GK)**
    **MANAGEMENT RETIREMENT SAVINGS PLAN; WASTE**
19  **MANAGEMENT, INC. PROFIT SHARING AND SAVINGS PLAN**       **SECOND AMENDED**
    **ADMINISTRATIVE COMMITTEE; H. JESSE ARNELLE; HOWARD**     **COMPLAINT**
20  **H. BAKER, JR.; J. STEVEN BERGERSON; DEAN L. BUNTROCK;**
    **DR. PASTORA SAN JUAN CAFFERTY; DON CHAPPEL; ROBERT**     **CLASS ACTION**
21  **DEES, JR.; JERRY E. DEMPSEY; JAMES EDWARDS; DONALD F.**
    **FLYNN; THOMAS R. FRANK; HERBERT A. GETZ; RODERICK M.**
22  **HILLS; JOSEPH M. HOLSTEN; PETER H. HUIZENGA; WILLIAM P.**
    **HULLIGAN; RON H. JONES; EDWARD C. KALEBICH; JOHN J.**
23  **MACHOTA; PATRICIA MCCANN; ROBERT S. MILLER; PAUL M.**
    **MONTRONE; D. P. PAYNE; PEER PEDERSEN; JAMES R.**
24  **PETERSON; SUSAN J. PILLER; JOHN C. POPE; PHILLIP B.**
    **ROONEY; STEVEN G. ROTHMEIER; BOB SIMPSON; BRUCE D.**
25  **TOBECKSEN; ALEXANDER B. TROWBRIDGE; WILLIAM**
    **TRUBECK; INVESTMENT COMMITTEE OF THE WASTE;**
26  **MANAGEMENT RETIREMENT SAVINGS PLAN; WASTE**
    **MANAGEMENT, INC. BOARD OF DIRECTORS; AND DOES 1-30**

27                              Defendants.

28

    **SECOND AMENDED COMPLAINT**

1

2

3

# TABLE OF CONTENTS

4

CLASS ACTION COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

    Plaintiff William S. Harris . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

    Plaintiff Reginald E. Howard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    Plaintiff Peter M. Thornton, Sr. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    Defendant Old Waste Fiduciaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

        Defendant Waste Management Holdings, Inc. ("Old Waste") . . . . . -6-

        Defendant Waste Management, Inc. Profit Sharing and Savings Plan
        Administrative Committee ("Old Waste Administrative Committee")7-

        Defendants Individual Trustee Members of the Old Waste Plan
        Administrative Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

            Defendant James E. Koenig . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

            Defendant Herbert A. Getz . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

            Defendant Bruce D. Tobecksen . . . . . . . . . . . . . . . . . . . . . . . . -9-

            Defendant Joseph M. Holsten . . . . . . . . . . . . . . . . . . . . . . . . . -9-

            Defendant Edward C. Kalebich . . . . . . . . . . . . . . . . . . . . . . . . -10-

            Defendant Don Chappel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

28

Defendant J. Steven Bergerson . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Defendant Thomas R. Frank  . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Defendant Peter H. Huizenga . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Defendant William P. Hulligan . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Defendant John J. Machota  . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Defendant D. P. Payne . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Defendant Old Waste Board of Directors . . . . . . . . . . . . . . . . . . . -13-

Defendant Individual Members of the Old Waste
Board of Directors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13-

Defendant Dean L. Buntrock  . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Defendant Phillip B. Rooney . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Defendant Robert S. Miller . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Defendant John C. Pope  . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Defendant James R. Peterson  . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Defendant H. Jesse Arnelle . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Defendant James Edwards  . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Defendant Donald F. Flynn . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

Defendant Roderick M. Hills  . . . . . . . . . . . . . . . . . . . . . . . . . -16-

Defendant Steven G. Rothmeier . . . . . . . . . . . . . . . . . . . . . . . . -16-

Defendant Alexander B. Trowbridge . . . . . . . . . . . . . . . . . . . . -17-

Defendant Peer Pedersen . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Defendant Jerry E. Dempsey  . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Defendant Howard H. Baker, Jr. . . . . . . . . . . . . . . . . . . . . . . . -17-

Defendant Dr. Pastora San Juan Cafferty . . . . . . . . . . . . . . -18-

Defendant Paul M. Montrone . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Defendants DOES 1-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Defendant New Waste Fiduciaries . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Defendant Waste Management Retirement Savings Plan
("New Waste Plan") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Defendant Investment Committee of the Waste Management Retirement
Savings Plan ("New Waste Plan Investment Committee") . . . . . . . -19-

The Defendant Individual Members of the New Waste Plan Investment
Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Defendant Robert Dees, Jr. . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Defendant Patricia McCann . . . . . . . . . . . . . . . . . . . . . . . . -19-

Defendant Susan J. Piller . . . . . . . . . . . . . . . . . . . . . . . . . -20-

Defendant Ron Jones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

Defendant Bob Simpson . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

Defendant William Trubeck . . . . . . . . . . . . . . . . . . . . . . . . -20-

Defendant State Street Bank and Trust Company
("State Street Bank" or the "New Waste Plan Trustee") . . . . . . . . . -20-

Defendants DOES 16-30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

A.   The History of the Old Waste Plan and the New Waste Plan . . . . . -21-

B.   Old Waste's Accounting Irregularities Artificially Inflated the Price of
Old Waste Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

C.   The Old Waste Plan Fiduciaries, in Violation of Their Fiduciary
Obligations, Caused and/or Permitted the Old Waste Plan to Make New
Investments in Company Stock When They Knew or Should Have

Known that Old Waste's Accounting Books and Records Failed to Report Its True Financial Condition, that the Prices at which the Old Waste Plan Was Acquiring Company Stock Were Greater than Fair Market Value, and that New Investments in Company Stock Were Not Prudent  . -31-

D.    Old Waste Reveals the Accounting Irregularities and Restates Its Financial Reports for More than Five Years . . . . . . . . . . . . . . . . . . . -35-

E.    Old Waste Merges with USA Waste Without Conducting Adequate Due Diligence of USA Waste and the Merger . . . . . . . . . . . . . . . . . . . . . . . -37-

F.    New Waste Fails to Achieve the Operating Synergies Projected in the Joint Proxy/Prospectus and Restates Its Financial Statements, Resulting in Plan Losses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -39-

G.    Old Waste Plan Trustees Chappel and Holsten and Old Waste Plan Fiduciary Miller Breached Their Fiduciary Duty to the Old Waste Plan by Failing to Disclose to its Trustees and Participants That Old Waste Had Not Conducted Adequate Due Diligence of USA Waste Prior to the Merger and by Permitting the Plan and Participants to Approve the Merger Without Conducting an Adequate Review of the Proposed Merger to Assure That it Was in the Best Interest of the Plan Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-

H.    In the Illinois Securities Litigation, the New Waste Fiduciaries Failed to Pursue the Fiduciary Breach Claims of the Old Waste Plan or Protect the Claims of the Old Waste Plan and its Participants Arising Out of the Acquisition of Old Waste Shares . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-

I.    In the Texas Securities Litigation, the New Waste Fiduciaries Failed to Pursue the Fiduciary Breach Claims of the Old Waste Plan or Protect the Claims of the Old Waste Plan and its Participants Arising Out of the Merger between Old Waste and the New Waste Subsidiary . . . . . . -47-

COUNT ONE

Claim for Relief under ERISA §404 Against the Individual Trustee Members of the Old Waste Administrative Committee, including Koenig, Tobecksen and Getz, and the Old Waste Administrative Committee, for Breach of Fiduciary Duty in Administering the Old Waste Plan
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -50-

COUNT TWO

Claim for Relief under ERISA §406 Against the Individual Trustee Members
of the Old Waste Administrative Committee, including Koenig, Tobecksen, and
Getz, the Old Waste Administrative Committee, and Old Waste for Prohibited
Transactions in Connection with the Exchange of Company Stock Between Old
Waste and the Old Waste Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -53-

**COUNT THREE**

Claim for Relief under ERISA §404 Against Old Waste, the Old
Waste Board, and the Individual Members of the Old Waste Board,
for Breach of Fiduciary Duty in Administering the Old Waste Plan . . . . . -54-

**COUNT FOUR**

Claim for Relief under ERISA §404 Against State Street Bank
for Breach of Fiduciary Duty in Connection with
the Settlements of the Illinois and Texas Securities Litigation . . . . . . . . . -56-

**COUNT FIVE**

Claim for Relief under ERISA §404 Against the New Waste Plan
Investment Committee and its Individual Members for Breach of
Fiduciary Duty in Monitoring the Performance of State Street Bank
in the Illinois and Texas Securities Litigation Settlements . . . . . . . . . . . . . -59-

**COUNT SIX**

Claim for Relief under ERISA §406 Against Defendant State Street
Bank and Old Waste for Engaging in Prohibited Transactions in Connection
with the Settlement of the Illinois and Texas Securities Litigation . . . . . . . -60-

**COUNT SEVEN**

Claim for Relief under ERISA §405 against All Defendants
(Co-fiduciary liability) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -61-

**CLASS ACTION ALLEGATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -62-

1
2
3
## CLASS ACTION COMPLAINT

4  Plaintiffs William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr. allege the

5  following on information and belief:

6
## NATURE OF THE ACTION
7
8  1.  This is a class action brought on behalf of the Waste Management Profit Sharing and

9  Savings Plan (the "Old Waste Plan" or "Plan") and its participants and beneficiaries for whose

10  accounts common stock of the Plan's sponsor ("Company Stock") was acquired from January 1,

11  1990 to January 1, 1999 ("Class Period"). Plaintiffs seek to recover Old Waste Plan losses resulting

12
   from (i) breaches of fiduciary obligations by the Old Waste Plan fiduciaries, and (ii) breaches of
13
14  fiduciary obligations by subsequent Plan fiduciaries in purporting to release certain claims against

15  former Old Waste Plan fiduciaries in subsequent litigation. (The Plan and its successor plans,

16  including the Waste Management Retirement Savings Plan ("New Waste Plan") are, collectively,

17
   the "Plans"). During the Class Period the Plan sponsor was known as Waste Management, Inc., and
18
19  for a time as WMX Technologies, Inc. It has since been renamed Waste Management Holdings,

20  Inc., and is a defendant in this suit. A different entity, now the parent company of Waste

21  Management Holdings, Inc., had its name changed to Waste Management, Inc. subsequent to the

22  1998 merger described *infra*. To avoid confusion, the former company, originally known as Waste

23
   Management, Inc. will be referred to as "Old Waste". The latter company, which is now known as
24
25  Waste Management, Inc. and is not a defendant, will be referred to as "New Waste".

26  2.  Beginning January 1, 1990 and continuing until February 24, 1998, Old Waste, with

27  the knowledge of some or all of the fiduciaries of the Old Waste Plan, engaged in pervasive

28  accounting irregularities which resulted in the misstatement of Old Waste's financial condition by

materially overstating its net income, thereby artificially inflating its stock price.   The undisclosed

material financial information was concealed from the Old Waste Plan participants by Old Waste's

senior management and Plan fiduciaries.

3.      From January 1, 1990 until January 1, 1999, the Old Waste Plan fiduciaries offered

as an investment option for participants the Waste Management, Inc., Stock Fund ("**Waste**

**Management Stock Fund**"), which was invested primarily in Company Stock.

4.      Old Waste also sponsored an Employee Stock Ownership Plan, which was also a

pension plan pursuant to § 3(2) of ERISA, 29 U.S.C. § 1002(2).   The Employee Stock Ownership

Plan invested primarily in Company Stock. The Employee Stock Ownership Plan expired in May

1998.  In June 1998, its assets, including roughly two million shares of Company Stock, valued at

approximately $50 million, were transferred into the Old Waste Plan, where they were held in a

newly created fund named the"ESOP Fund".

5.      The Waste Management Stock Fund and the ESOP Fund are collectively referred to

as the "Company Stock Funds."

6.      Between January 1, 1990 and February 24, 1998, the Trustees and fiduciaries of the

Old Waste Plan invested no less than $121,649,873 in Company Stock for the Waste Management

Stock Fund.   Because the price of the Company Stock acquired by the Old Waste Plan Trustees and

fiduciaries  was artificially inflated, the trustees and fiduciaries caused the Old Waste Plan to pay

more than fair market value for the Company Stock.

7.      In February 1998, Old Waste announced that it was restating its financial statements

for 1991 and prior periods, including the periods 1992 through 1996, and the first three quarters of

1997 (the "Restatement").   In the Restatement, Old Waste admitted that from prior to 1992 and

1    continuing through the first three quarters of 1997 it had materially overstated its reported pre-tax

2    earnings by a total of $1.43 billion.

3    8.    Five months after the Restatement, Old Waste merged with a subsidiary of USA

4    Waste Services, Inc. (the "**Merger**").    Prior to the Merger, Old Waste Plan fiduciaries failed to

5

6    conduct adequate "due diligence" of USA Waste Services, Inc. and the Merger to determine whether

7    continued investment in, and offering of, the Waste Management Stock Fund was prudent for the

8    Plan, including whether the projected annual cost savings of at least $800 million through operating

9

10   synergies and enhanced efficiencies was realistic.

11   9.    Plaintiffs' claims arise from the Old Waste Plan fiduciaries' failure to act solely in

12   the interest of Plan participants and beneficiaries and from their failure to exercise the required care,

13   skill, prudence and diligence in administering the Plan and investing Plan assets. Plaintiffs allege

14   that James E. Koenig, a Chief Financial Officer of Old Waste ("CFO"), and other Old Waste Plan

15   Trustees and fiduciaries who knew or should have known Old Waste's books and records and

16

17   financial statements materially misstated Old Waste's financial condition and inflated its stock price,

18   as fiduciaries and Trustees of the Old Waste Plan and members of the Old Waste Plan

19   Administrative Committee, violated their fiduciary obligations to the Plan by failing to conduct

20   adequate fiduciary reviews to determine whether Company Stock was a prudent investment for the

21   Plan, by permitting the Old Waste Plan to continue to offer unit shares of the Waste Management

22

23   Stock Fund at inflated prices and by continuing to cause the Plan to acquire shares of Company

24   Stock at inflated prices exceeding fair market value.

25   10.    Old Waste, and its Board of Directors, which were Named Fiduciaries of the Old

26   Waste Plan, the Audit Committee of the Board of Directors, the Chairman of the Board and Chief

27   Executive Officer, and others, all of Old Waste, while they knew or should have known that Old

28

SECOND AMENDED COMPLAINT                                                                    -3-

Waste's books and records and financial statements materially misstated its financial condition, breached their fiduciary obligations to the Old Waste Plan by failing to properly monitor the Plan thereby permitting the Plan to continue to offer unit shares of the Waste Management Stock Fund as an investment option for new Plan investments and to acquire shares of Company Stock for the Plan at prices that exceeded fair market value.

11.    Plaintiffs further allege that the Old Waste Plan fiduciaries, including Defendant Donald Chappel, at the time Old Waste's Acting CFO following the resignation of Defendant Koenig as CFO, breached their ERISA fiduciary obligations by failing to conduct an adequate fiduciary review to determine whether the Merger was prudent and in the best interest of the Old Waste Plan, by concealing from the Old Waste Plan and its participants the facts of Old Waste's lack of due diligence which was material to the decision whether the Plan  and its participants should approve the Merger, and by causing the Plan and its participants to approve or acquiesce in the Merger, which presented a substantial risk of loss to the Old Waste Plan and its participants whose accounts were invested in unit shares of the Waste Management Stock Fund.

12.    Plaintiffs further allege that Plan fiduciaries breached their fiduciary duties by purportedly releasing, in class action securities litigation before federal courts in Illinois and Texas, the Old Waste Plan's claims against its own fiduciaries for the fiduciary breaches detailed in this complaint, without obtaining additional consideration for the Plan and its participants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

13.     This action is brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.*, as amended, which provides for exclusive federal jurisdiction over these claims. The Old Waste Plan and the successor plans were each a "pension plan" within the meaning of §3(2) of ERISA, 29 U.S.C. §1002(3) and the Plaintiffs are "participants" within the meaning of §3(7) of ERISA, 29 U.S.C. §1002(7), who are empowered under §502 of ERISA, 29 U.S.C. §1132 to bring the present action on behalf of the Old Waste Plan and its successor plans to obtain relief under §§502 and 409 of ERISA, 29 U.S.C. §§1132 and 1109.

14.     This Court has subject matter jurisdiction over this action pursuant to §502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).

15.     The Plaintiff William S. Harris resides in the District of Columbia and venue is proper in the District of Columbia pursuant to §502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), because Defendant Old Waste does business and may be found in the District of Columbia.

**PARTIES**

16.     **Plaintiff William S. Harris.**  Plaintiff William S. Harris was an employee of Defendant Old Waste from June 28, 1984 into late 1999. He worked as a truck driver for Old Waste in the District of Columbia. He was a participant of the Plans no later than September 30, 1992 until the present time, and through the Old Waste Plan was invested in the Waste Management Stock Fund. He is authorized pursuant to §502(a)(2) and (3) of ERISA, 29 U.S.C. §1132(a)(2) and (3) to obtain appropriate relief on behalf of the Plan under §409 of ERISA, 29 U.S.C. §1109 and to obtain other appropriate equitable relief. He is a resident of the District of Columbia.

17.     **Plaintiff Reginald E. Howard.**  Plaintiff Reginald E. Howard was an employee of Defendant Old Waste from November 1989 to November 1999. He worked as a truck driver for

Old Waste in the District of Columbia. He was a participant of the Old Waste Plan and through the

Old Waste Plan was invested in the Waste Management Stock Fund. He is authorized pursuant to

§502(a)(2) and (3) of ERISA, 29 U.S.C. §1132(a)(2) and (3) to obtain appropriate relief on behalf

of the plan under §409 of ERISA, 29 U.S.C. §1109 and to obtain other appropriate equitable relief.

He is a resident of the State of Virginia.

18.    **Plaintiff Peter M. Thornton, Sr.** Plaintiff Peter M. Thornton, Sr. was an employee

of Old Waste and Service Disposal, a waste disposal company acquired by Old Waste, for 14 years,

from June 24, 1985, through January 1, 1999, when he retired from Old Waste. He worked as a

truck driver for Old Waste in the Virginia Beach, VA, area. He was a participant of the Old Waste

Plan and through the Old Waste Plan was invested in the Waste Management Stock Fund. He was

a participant in both the Waste Management Stock Fund and the ESOP Fund. He is authorized

pursuant to §502(a)(2) and (3) of ERISA, 29 U.S.C. §1132(a)(2) and (3) to obtain appropriate relief

on behalf of the plan under §409 of ERISA, 29 U.S.C. §1109 and to obtain other appropriate

equitable relief. He is a resident of the State of North Carolina.

### A. Defendant Old Waste Fiduciaries

19.    **Defendant Waste Management Holdings, Inc. ("Old Waste").** Defendant Old

Waste is a Delaware Corporation with principal place of business in Houston, Texas. At all relevant

times, Old Waste operated in the District of Columbia and provided, through its subsidiaries,

integrated solid waste and hazardous waste management services, energy recovery services, and

environmental technologies, engineering and consulting services. During the Class Period until July

16,1998, Defendant Old Waste was a corporation whose securities were publicly traded on the New

York Stock Exchange. On March 11, 1998, two weeks after Old Waste's announcement and

restatement of its prior period financial statements, Old Waste formally announced a merger

1   agreement with USA Waste Services, Inc. ("USA Waste").  Pursuant to the Merger agreement, Old

2   Waste merged with a subsidiary of USA Waste on July 16, 1998.  The Old Waste Plan Fiduciaries

3
    exchanged the Plan's Old Waste common stock for New Waste common stock in accordance with
4
5   the terms of the Merger agreement.  Following the Merger of Old Waste and the USA Waste

6   subsidiary, the merged entity was renamed  Waste Management Holdings, Inc. After the effective

7   time of the Merger, USA Waste was renamed Waste Management, Inc. ("New Waste").

8
            20.     **Defendant Waste Management, Inc. Profit Sharing and Savings Plan**
9
    **Administrative Committee ("Old Waste Administrative Committee").**  The Defendant Old
10
11  Waste Administrative Committee was identified in the Old Waste Plan Document as the

12  "administrator" and a "Named Fiduciary" of the Old Waste Plan and had complete control over Plan

13  administration.  The Administrative Committee, which under the Plan Document consisted of three

14
    or more members, was appointed by the Board of Directors of Old Waste.  Pursuant to the Old Waste
15
16  Plan Document, as long as there were three or more individual Old Waste Plan Trustees, the

17  individual Old Waste Plan Trustees constituted the Administrative Committee.

18          21.     **Defendants Individual Trustee Members of the Old Waste Plan Administrative**

19  **Committee.**    At all times relevant to the complaint, Old Waste, by action of its Board of Directors,

20
    appointed three or more Old Waste Plan Trustees ("Old Waste Plan Trustee(s)") pursuant to the
21
22  terms of the Waste Management, Inc. Profit Sharing and Savings Trust (the "Trust Agreement")

23  established by Old Waste to implement the provisions of the Plan Document and to fund the benefits

24  provided thereunder.  The Old Waste Plan Administrative Committee was composed at relevant

25  times of the following Old Waste Plan Trustees (collectively the "Individual Trustee Members of

26
    the Administrative Committee"):
27

28

SECOND AMENDED COMPLAINT                                                              -7-

A.     **Defendant James E. Koenig.**  Beginning no later than 1990 and continuing until October 31, 1997, Defendant Koenig was an Old Waste Plan Trustee, member of the Old Waste Plan Administrative Committee, and a Named Fiduciary of the Old Waste Plan. Defendant James E. Koenig was employed by Old Waste from 1977 until October 31, 1997. Defendant Koenig was a Vice President of Old Waste from May 1992, Treasurer of Old Waste from 1986 and its Chief Financial Officer ("CFO") from 1989 until his resignation from Old Waste on October 31, 1997.  At all times relevant hereto, Defendant Koenig served on the Management Committee of Old Waste and participated in the accounting irregularities engaged in by members of Old Waste's management, which caused Old Waste's income to be overstated for the years 1990 through third quarter of 1997 and artificially inflated the value of Company Stock acquired by the Old Waste Plan.

B.     **Defendant Herbert A. Getz.**  Defendant Herbert A. Getz was an Old Waste Plan Trustee, member of the Old Waste Plan Administrative Committee, and a Named Fiduciary of the Savings Plan in 1997.  He resigned as Old Waste Plan Trustee in 1998. Defendant Getz served as the Secretary of Old Waste from January 1988 through the Merger date.  Defendant Getz was Vice President from May 1990 and Senior Vice President from May 1995 of Old Waste.  He also served as Old Waste General Counsel from August 1992 through the Merger.  Getz participated in the accounting irregularities engaged in by members of Old Waste's management, which caused Old Waste's income to be overstated for the years 1990 through the third quarter of 1997 and artificially inflated the value of Company Stock acquired by the Old Waste Plan through at least February 24, 1998.

C.     **Defendant Bruce D. Tobecksen.**  Defendant Bruce D. Tobecksen was an Old Waste Plan Trustee, a member of the Old Waste Plan Administrative Committee, and a Named Fiduciary of the Savings Plan beginning no later than 1990. Defendant Tobecksen remained an Old Waste Plan Trustee until October 31, 1997.  Defendant Tobecksen was the vice president of finance for Old Waste until December 1997, when he was asked to leave Old Waste.  Defendant Tobecksen participated in the accounting irregularities engaged in by members of Old Waste's management, which caused Old Waste's income to be overstated for the years 1990 through third quarter of 1997 and artificially inflated the value of Company Stock acquired by the Old Waste Plan through at least February 24, 1998.

D.     **Defendant Joseph M. Holsten.**  Defendant Joseph M. Holsten was an Old Waste Plan Trustee, member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Old Waste Plan beginning in 1994.  Defendant Holsten resigned as Old Waste Plan Trustee on October 15, 1998.  From February 1997 through no earlier than the Merger date, Defendant Holsten served as Old Waste Executive Vice–President and Chief Operating Officer.  From July 1995 through February 1997 he served as CEO of Waste Management International, a major subsidiary. From October 1993 through July 1995, he was Executive Vice-President and CFO of Waste Management North America, another subsidiary.  Holsten knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

E.      **Defendant Edward C. Kalebich.**  Defendant Edward C. Kalebich was an Old Waste Plan Trustee, a member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan beginning in 1996 and remained an Old Waste Plan Trustee until January 1, 1999.  Kalebich knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

F.      **Defendant Don Chappel.**  Beginning in 1994 Defendant Don Chappel was appointed an Old Waste Plan Trustee, a member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan and remained an Old Waste Plan Trustee through at least January 1, 1999.  Defendant Chappel was Old Waste's Acting CFO from October 1997, through at least July 16, 1998, the date of the Merger.  Prior to becoming Acting CFO, Defendant Chappel reported to Old Waste's prior CFO.  Defendant Chappel served as a member of Old Waste's Executive Committee during the Class Period.  Defendant Chappel served as Old Waste's Vice President-Financial Services from November 1996 and as Vice President and Controller (North American operations) from August 1995. Subsequent to the July 1998 Merger of Old Waste with the subsidiary of USA Waste Services, Inc., Defendant Chappel became the Senior Vice-President–Operations and Administration and later CFO of New Waste.  Chappel knew or should have known that Old Waste's  management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

G.     **Defendant J. Steven Bergerson.**  Defendant J. Steven Bergerson was a Member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan on January 1, 1993.  Bergerson knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

H.     **Defendant Thomas R. Frank.**  Defendant Thomas R. Frank was an Old Waste Plan Trustee, a member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan beginning in 1990. Defendant Frank resigned as Old Waste Plan Trustee in 1998.  Frank knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

I.     **Defendant Peter H. Huizenga.**  Defendant Peter H. Huizenga was an Old Waste Plan Trustee, a member of the Old Waste Plan Administrative Committee, and a Named Fiduciary of the Savings Plan beginning no later than December 31, 1983. Defendant Huizenga remained an Old Waste Plan Trustee until July 8, 1997. Defendant Huizenga also served as a Director of Old Waste from 1968 through May 9, 1997.   Huizenga knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

J.      **Defendant William P. Hulligan.**  Defendant William P. Hulligan was a Member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan on January 1, 1993.  Hulligan knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

K.      **Defendant John J. Machota.**  Defendant John J. Machota was a Member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan on January 1, 1993.  Machota knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

L.      **Defendant D. P. Payne.**  Defendant D. P. Payne was a Member of the Old Waste Plan Administrative Committee and a Named Fiduciary of the Savings Plan on January 1, 1993.  Payne knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

22.     **Defendant Old Waste Board of Directors.**  The Old Waste Board of Directors (the "Old Waste Board"), as a result of its appointment and oversight of the Old Waste Plan Trustees and the Old Waste Plan Administrative Committee owed fiduciary duties to the Plan.

23.     **Defendant Individual Members of the Old Waste Board of Directors.**  The following defendants, including Defendant Huizenga, by reason of their membership on the Old

1

2

3

4

Waste Board of Directors during the Class Period (the "Individual Board Members") and as a result of the Old Waste Board's appointment and oversight of the Old Waste Plan Trustees and the Old Waste Plan Committees owed fiduciary duties to the Plan:

5

6

7

8

9

10

11

12

13

14

15

      A.     **Defendant Dean L. Buntrock.**  Defendant Dean L. Buntrock served as a Director and the Chairman of the Board of Old Waste from 1968 through July 13, 1997. He also served as the company's Chief Executive Officer from 1968 through 1996 and from February 17, 1997, through July 17, 1997. Defendant Buntrock served on the Management Committee of Old Waste and participated in the accounting irregularities engaged in by members of Old Waste's management, which caused Old Waste's income to be overstated for the years 1990 through third quarter of 1997 and artificially inflated the value of Company Stock acquired by the Old Waste Plan.

16

17

18

19

20

21

22

23

24

25

26

27

28

      B.     **Defendant Phillip B. Rooney.**  Defendant Rooney served as a director of Old Waste since 1981, President from November 1984, and Chief Executive Officer from June 1996 until February 18, 1997, when he resigned from the Board and from his positions as an officer of Old Waste. Defendant Rooney also served as Old Waste's Chief Operating Officer from 1984 through 1996. Until his resignation Rooney served on the Management Committee of Old Waste and participated in the accounting irregularities engaged in by members of Old Waste's management, which caused Old Waste's income to be overstated for the years 1990 through the third quarter of 1997 and artificially inflated the value of Company Stock acquired by the Old Waste Plan through February 28, 1998.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.      **Defendant Robert S. Miller.**   Defendant Robert S. Miller served as a director of Old Waste from May 17, 1997, through the Merger, whereupon he became a director of New Waste.   He was elected Chairman of the Board  and named Acting Chief Executive Officer of Old Waste in October 1997.   On March 10, 1998, Mr. Miller was named Chief Executive Officer of Old Waste.  Miller knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

D.      **Defendant John C. Pope.**   Defendant John C. Pope served as a director of Old Waste beginning November 1997 continuing through the Merger date, whereupon he became of director of New Waste.  Pope knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

E.      **Defendant James R. Peterson.**   Defendant James R. Peterson served as a director of Old Waste from 1980 and at times relevant to the Complaint and was a member and Chairman of the Old Waste Audit Committee from 1993 through at least 1997.  Peterson, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

SECOND AMENDED COMPLAINT

-14-

F.    **Defendant H. Jesse Arnelle.**    H. Jesse Arnelle served as a director of Old Waste from 1992 and at times relevant to the Complaint and was a member of the Old Waste Audit Committee from 1993 through at least March 28, 1998.  Arnelle, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

G.    **Defendant James Edwards.**    Dr. James Edwards served as a director of Old Waste from 1995 and at times relevant to the Complaint and was a member of the Old Waste Audit Committee from 1996 through at least March 28, 1998.  Edwards, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

H.    **Defendant Donald F. Flynn.**    Donald F. Flynn served as a director of Old Waste beginning in 1981 and at times relevant to the Complaint and was a member of the Old Waste Audit Committee from 1994 through at least March 28, 1998. Flynn, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

I.    **Defendant Roderick M. Hills.**    Roderick M. Hills served as a director of Old Waste from November 1997 through the Merger, whereupon he became a director

of New Waste.  Hills was Chairman of the Audit Committee of the Old Waste Board of Directors no later than March 28, 1998.  Hills, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

J.      **Defendant Steven G. Rothmeier.**      Steven G. Rothmeier served as a director of Old Waste beginning in March 1997 and at times relevant to the Complaint and was a member of the Old Waste Audit Committee from 1997 through at least March 28, 1998.  Rothmeier, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

K.      **Defendant Alexander B. Trowbridge.**  Alexander B. Trowbridge served as a director of Old Waste since 1985 and at times relevant to the Complaint and was a member of the Old Waste Audit Committee from 1993 through at least March 28, 1998.  Trowbridge, as a member of the Audit Committee, knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

L.      **Defendant Peer Pedersen.**   Peer Pedersen served as a director of Old Waste beginning in 1979 and continuing through at least March 28, 1998.  Pedersen knew or should have known that Old Waste's management engaged in accounting

irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

M.    **Defendant Jerry E. Dempsey.**    Defendant Jerry E. Dempsey, served as a director of Old Waste beginning in 1984, and continuing through at least March 28, 1998. Dempsey knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

N.    **Defendant Howard H. Baker, Jr.**    Defendant Howard H. Baker, Jr., served as a director of Old Waste from 1989 through May 9, 1997.  Baker knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

O.    **Defendant Dr. Pastora San Juan Cafferty.**    Dr. Pastora San Juan Cafferty served as a director of Old Waste from July 1994 through at least March 28, 1998. Cafferty knew or should have known that Old Waste's management engaged in accounting irregularities, which caused Old Waste's income to be overstated and artificially inflated the value of Company Stock the Old Waste Plan acquired through at least February 24, 1998.

P.    **Defendant Paul M. Montrone.**    Paul M. Montrone served as a director of Old Waste from January 1997 through the Merger date, whereupon he became a director of New Waste. Montrone knew or should have known that Old Waste's management

1   engaged in accounting irregularities, which caused Old Waste's income to be

2   overstated and artificially inflated the value of Company Stock the Old Waste Plan

3

4   acquired through at least February 24, 1998.

5   24. **Defendants DOES 1-15** are fiduciaries of the Old Waste Plan, whose exact identities

6   will be ascertained through discovery.

7   25.   Defendants Old Waste, the Old Waste Administrative Committee, the Individual

8   Trustee Members of the Administrative Committee, the Old Waste Board, and the Individual Board

9
    Members, and any Does 1-15 whose identities are ascertained through discovery are collectively and
10

11  individually referred to as the **"Old Waste Fiduciaries."**

12                    **B. Defendant New Waste Fiduciaries**

13  26.   **Defendant Waste Management Retirement Savings Plan ("New Waste Plan").**

14
    The New Waste Plan is a pension plan under ERISA § 3(2), 29 U.S.C. §1002(2), maintained for the
15

16  employees of New Waste and its subsidiaries. The New Waste Plan is the successor Plan to the Old

17  Waste Plan. The Old Waste Plan was merged into the New Waste Plan in January 1999, four and

18  one-half months after the Merger of Old Waste and USA Waste. The New Waste Plan is named as

19  a nominal defendant in order to facilitate the requested relief, which would flow to the New Waste

20
    Plan to be allocated to the accounts of participants of the Old Waste Plan who invested in Company
21

22  Stock during the Class Period and suffered losses as a result of the Merger.

23  27.   **Defendant Investment Committee of the Waste Management Retirement Savings**

24  **Plan ("New Waste Plan Investment Committee").**   Defendant New Waste Plan Investment

25  Committee was a fiduciary and charged under the Plan Document and Trust Agreement with

26
    responsibility for Company Stock investments. The Investment Committee appointed State Street
27

28  Bank and Trust Company the Investment Manager and fiduciary of certain New Waste Plan assets.

SECOND AMENDED COMPLAINT                                                              -18-



28.     **The Defendant Individual Members of the New Waste Plan Investment Committee.**  The New Waste Plan Investment Committee had the following members:

A.     **Defendant Robert Dees, Jr.**  Defendant Robert Dees, Jr. ("Dees") became a fiduciary and member of the New Waste Plan Investment Committee no later than 2001.

B.     **Defendant Patricia McCann.**  Defendant Patricia McCann ("McCann") became a fiduciary and member of the New Waste Plan Investment Committee no later than 2001.

C.     **Defendant Susan J. Piller.**     Defendant Susan J. Piller ("Piller") became a fiduciary and member of the New Waste Plan Investment Committee on January 1, 1999.   Piller has been Senior Vice President – Employee Relations of USA Waste since May 1996.

D.     **Defendant Ron Jones.**     Defendant Ron Jones ("Jones") became a fiduciary and member of the New Waste Plan Investment Committee no later than January 1, 1999.  Jones was a Vice-President and the Treasurer of USA Waste beginning June 1995 continuing at least through December 31, 2000.

E.     **Defendant Bob Simpson.**  Defendant Bob Simpson ("Simpson") became a fiduciary and member of the New Waste Plan Investment Committee no later than 2001.

F.     **Defendant William Trubeck.**  Defendant William Trubeck ("Trubeck") became a fiduciary and member of the New Waste Plan Investment Committee no later than 2001.

1    Collectively and individually, the individual members of the New Waste Plan Investment Committee

2    are referred to as the "Individual Members of the New Waste Plan Investment Committee".

3        29.    **Defendant State Street Bank and Trust Company ("State Street Bank" or the**

4    **"New Waste Plan Trustee").**    Defendant State Street Bank was appointed as Trustee of the New

5    Waste Plan, pursuant to the Master Trust Agreement entered into between State Street Bank and New

6    Waste on January 1, 1999.  State Street Bank was also appointed as the Investment Manager and

7    fiduciary of certain Trust assets of the New Waste Plan, including its Company Stock investments,

8    effective February 1, 1999.

9        30.    **Defendants DOES 16-30** are fiduciaries of the New Waste Plan, whose exact

10   identities will be ascertained through discovery.

11       31.    Defendants State Street Bank, Dees, McCann, Piller, Jones, Simpson, Trubeck, the

12   New Waste Plan Investment Committee, the Individual Members of the New Waste Plan Investment

13   Committee, the New Waste Plan, and any Does 16-30 whose identities are ascertained through

14   discovery, are collectively and individually referred to as the **"New Waste Fiduciaries"**.

15                              **FACTUAL BACKGROUND**

16   **A. The History of the Old Waste Plan and the New Waste Plan**

17       32.    The Old Waste Plan was, at all relevant times, a "pension plan" within the meaning

18   of §3(2) of ERISA, 29 U.S.C. §1002(2).  The Plan was adopted by the Board of Directors of Old

19   Waste on April 27, 1981, effective as of January 1, 1981.

20       33.    The Plan Document, which governed the Old Waste Plan, identified as Named

21   Fiduciaries of the Plan, within the meaning of §402(a)(2) of ERISA, 29 U.S.C. §1102(a)(2) the Old

22   Waste Plan Administrative Committee and Old Waste.  The Old Waste Plan Administrative

23   Committee also served as the administrator of the Plan. In addition, at all times relevant hereto, the

SECOND AMENDED COMPLAINT                                                          -20-

1    Old Waste Plan Trustees served as members of the Old Waste Plan Administrative Committee.

2    Under the Plan Document, the Old Waste Plan Trustees were also Named Fiduciaries of the Plan.

3
4          34.    The Plan Document stated that the Old Waste Plan was to be qualified under §401(k)

5    of the Internal Revenue Code. This permitted the Plan to be funded in part by employees designating

6    a portion of their salaries, which portion was to be contributed by Old Waste into the Plan. Pursuant

7    to §401(k), the employees could reduce their taxable wages and an additional "matching" employer

8    contribution could be made to the Old Waste Plan by Old Waste in cash or partly or wholly in

9    property, including Company Stock.
10

11         35.    From no later than January 1, 1987, the Old Waste Plan fiduciaries offered plan

12   participants the Waste Management Stock Fund as an investment option, and, from June 1998, the

13   ESOP Fund. Under the Plan Document these Company Stock Funds were to be invested primarily

14   in Company Stock. The Old Waste Plan Trustees, however, in their discretion were authorized to

15   invest assets of the Company Stock Funds in property other than Company Stock.
16

17         36.    As of December 31, 1990 the Plan reported on the Form 5500, which all pension

18   plans are required to file annually with the Department of Labor, 21,407 current and former Old

19   Waste employees as participants. In 1990 $43,892,712 in participant and matching contributions

20   were invested in the Waste Management Stock Fund. In 1991 $12,952,941 in additional participant

21
22   and matching contributions were invested in the Waste Management Stock Fund. In 1992

23   $14,386,603 in additional participant and matching contributions were invested in the Waste

24   Management Stock Fund. In 1993 $14,056,922 in additional participant and matching contributions

25   were invested in the Waste Management Stock Fund. In 1994 $10,091,571 in additional participant

26
27   and matching contributions were invested in the Waste Management Stock Fund. In 1995

28   $11,396,671 in additional participant and matching contributions were invested in the Waste

SECOND AMENDED COMPLAINT                                                                    -21-

1   Management Stock Fund. In 1996 $7,970,261 in additional participant and matching contributions

2   were invested in the Waste Management Stock Fund. In 1997 $6,902,192 in additional participant

3   and matching contributions were invested in the Waste Management Stock Fund.

4

5       37.     As of December 31, 1997, the Plan reported on its annual Form 5500 that the number

6   of current and former employees of Old Waste and its subsidiaries participating in the Old Waste Plan

7   had grown to 33,036. On that date the Old Waste Plan through the Waste Management Stock Fund

8   held 2,366,032 shares of Company Stock with a market value of $65,065,880.

9       38.     The Old Waste Plan Trustees administered the Plan's assets together with income

10  therefrom. Pursuant to the Trust Agreement, the Defendant Old Waste Plan Trustees had the

11  authority, *inter alia*, to receive and hold all contributions paid to the Plan, including Company Stock;

12  to invest and reinvest the assets of the trust fund; to compromise, contest, arbitrate, settle or abandon

13  claims on demand; and to begin, maintain or defend any litigation in the administration of the Plan.

14

15      39.     Pursuant to the Plan Document and the Trust Agreement, the Old Waste Plan Trustees

16  were also obligated to discharge their duties in conformance with §404(a) of ERISA.

17

18      40.     Old Waste, through its Board of Directors or the Executive Committee thereof, had

19  the authority under the Plan Document and the Trust Agreement to appoint and remove Trustees and

20  members of the Old Waste Plan Administrative Committee.

21

22      41.     Old Waste, through its Board of Directors or the Executive Committee thereof, was

23  obligated to monitor the Old Waste fiduciaries. Old Waste was also obligated to review at reasonable

24  intervals the performance of the Trustees and the Administrative Committee to assure that their

25  performance complied with Plan terms, met statutory standards, and protected the rights and interests

26  of the Old Waste Plan.

27

28

SECOND AMENDED COMPLAINT                                                                    -22-

42.   Effective January 1, 1999, the Old Waste Plan was merged into the USA Waste Services, Inc. Employee's Savings Plan. (There were 27,096 plan participants when the Plans merged.) The merged plan was then renamed the Waste Management Retirement Savings Plan. A month later, the assets of the Old Waste Plan were transferred to the merged Plan's trustee, State Street Bank, appointed by New Waste, pursuant to the Master Trust Agreement entered into between State Street Bank and New Waste on January 1, 1999.

43.   Under the New Waste Plan Document, the New Waste Board of Directors had the authority to appoint an Administrative Committee to consist of not less than three persons to serve as administrator and Named Fiduciary of the New Waste Plan. The New Waste Plan Administrative Committee had final and binding discretionary authority to control and manage the operation and administration of the Plan, including authority to take such action as may be needed to carry out the orderly administration of the New Waste Plan as well as the authority to allocate fiduciary responsibilities among its members and to designate other persons to carry out fiduciary responsibilities.

44.   Under the New Waste Plan Document the New Waste Board of Directors also had the authority to appoint an Investment Committee, to review the investment performance of the assets held in the New Waste Plan's Trust Fund, to establish the investment policy for the New Waste Plan Trustee – State Street Bank – and to direct investment of the Trust Fund assets. The New Waste Plan Investment Committee also had the authority to direct the New Waste Plan Trustee with regard to the investment of assets and to appoint, review the performance of, and dismiss Investment Managers who had the authority over some or all of the New Waste Plan assets.

45.   Effective February 1, 1999, the New Waste Plan Investment Committee appointed State Street Bank as the Investment Manager for Company Stock assets. Pursuant to the terms of the

SECOND AMENDED COMPLAINT                                                                  -23-

1   Investment Manager Agreement between State Street Bank and the New Waste Plan Investment
2
    Committee (the "Investment Manager Agreement"),  State Street Bank has the full discretionary
3
4   authority to manage Company Stock assets and the Company Stock Funds.  This discretionary
5   authority included the authority to purchase, sell, exchange, convert, trade and generally deal in
6   Company Stock and shares of the Company Stock Funds.

7        **B.    Old Waste's Accounting Irregularities Artificially Inflated the Price of Old
8             Waste Stock**

9        46.    Beginning as early as 1988, Old Waste inflated its earnings by employing "aggressive"
10  accounting practices which in material part violated Generally Accepted Accounting Principles
11
12  ("GAAP"). These accounting practices had the effect of artificially increasing Old Waste's reported
13  operating income, primarily by understating operating expenses and deferring current operating
14  expenses to future periods, in order to inflate its current period income.  As earnings growth became
15  more difficult for Old Waste in the late 1980s and early 1990s, Old Waste continued to make
16  adjustments to certain reserves (liabilities) by "borrowing" amounts from future quarters or by making
17
18  unsupported and  undisclosed changes in estimates to reduce operating expenses.

19       47.    Beginning in 1990, and continuing until February 24, 1998, in order to continue to
20  meet projected quarterly and annual revenues, net income and earnings goals, Old Waste used
21  improper accounting to inflate its operating income, primarily by deferring the recognition of current
22  period operating expenses into the future and by netting one-time gains against current and prior
23
24  period misstatements and current period operating expenses.  As a result, Old Waste's financial
25  statements during this period violated Generally Accepted Accounting Principles ("GAAP") and
26  materially overstated the income of Old Waste.
27
28

48.     Members of Old Waste's senior management and Executive Committee, including Defendants Koenig, Rooney, Buntrock, Tobecksen, and Getz, with the knowledge of the Old Waste Board and the members of the Board's Audit Committee, engaged in these improper accounting practices at the same time that these Individual Defendants and the Board owed fiduciary obligations under ERISA, to the Old Waste Plan, to act solely in the interest of the participants and beneficiaries of the Old Waste Plan and to exercise prudence with respect to the administration and operation of the Old Waste Plan.

49.     In 1993 and early 1994, Arthur Andersen ("Andersen"), Old Waste's auditor, began communicating with Old Waste's management regarding Old Waste's questionable accounting practices. Among other things, Andersen quantified current and prior period misstatements totaling $128 million and prepared Proposed Adjusting Journal Entries ("Proposed Adjusting Journal Entries"), which, had they been recorded by Old Waste, would have reduced net income before special items by at least 12%. Andersen also questioned a number of Old Waste's other accounting practices which may have involved additional Old Waste accounting misstatements. These included deferring costs of projects that should have been written off, carrying land values in excess of net realizable value, improperly recording purchase acquisition accruals in connection with the establishment of environmental remediation reserves (liabilities), reversing environmental remediation reserves (liabilities) to income, and making unsupported changes to the salvage values of Old Waste's waste vehicles and containers. Old Waste refused to record Andersen's Proposed Adjusting Journal Entries or correct accounting practices that gave rise to the likely misstatements.

50.     Andersen also proposed to Old Waste's management, including Defendants Buntrock, Koenig and Getz, that Old Waste engage over time in a number of "Action Steps" to adjust improper accounting practices in future periods. Andersen advised Buntrock, Koenig and Getz of minimum

steps Old Waste needed to take to correct the various accounting problems and likely misstatements identified by Andersen.  Among other things, Andersen proposed Action Steps to correct Deferred Project Costs;  Unamortized Land values (NRV); Deferred Systems Costs; Income Tax Reserves; Environmental Reserves; Depreciation/Salvage Values; Landfill Capitalized Interest; and Discount Rates.

51.     Defendants Buntrock, Koenig and Getz, after being advised of the proposed "Action Steps," agreed to implement the changes proposed by Old Waste's auditors in 1994, but did not correct any of the proposed adjustments and likely misstatements in the 1993 audit of Old Waste's financial statements.   As a result, Old Waste's 1993 financial statements materially overstated its 1993 income and inflated the price of Old Waste stock.

52.     The Audit Committee, which was then composed of Defendants Peterson, Arnelle, Flynn and Trowbridge, was advised of the Proposed Adjusting Journal Entries that Old Waste had refused to record and that  management had agreed to a "plan" to reduce the shortfalls over the next several years.

53.     In 1994, Old Waste continued to engage in the accounting practices that gave rise to the  Proposed Adjusting Journal Entries and the other known and likely misstatements in the prior year. In addition, Old Waste adopted a new, phased-in methodology for the capitalization of interest on landfill development costs which did not conform to GAAP.  As a result, during the 1994 audit, the Andersen engagement team again quantified current and prior period misstatements and prepared Proposed Adjusting Journal Entries of $163 million, which  represented 11.7% of Old Waste's pre-tax income on a pre-tax equivalent basis.

54.     On March 13, 1995, the Audit Committee met with the Andersen auditors to review the results of the 1994 audit.  The Andersen auditors reported to the Audit Committee, which was

1   then composed of Directors Peterson, Arnelle, Flynn and Trowbridge, that Old Waste's management

2   had not accepted the Proposed Adjusting Journal Entries Andersen recommended. The Andersen

3

4   auditors also complained to the Committee members that Old Waste had not enacted the "plan" to

5   change its accounting practices that Old Waste had agreed upon in the previous year.

6       55.   As a result of Old Waste's failure to accept Andersen's Proposed Adjusting Journal

7   Entries, Old Waste's 1994 financial statements materially overstated its 1994 income and inflated its

8   stock price.

9

10      56.   During 1995, Andersen continued to monitor whether Old Waste was implementing

11  the "Action Steps" that it had agreed to put into effect after the 1993 audit.  In many instances, Old

12  Waste failed to implement the "Action Steps" and continued to utilize accounting practices that did

13  not conform with GAAP.

14      57.   On December 31, 1995, Old Waste engaged in an exchange that resulted in a $160

15  million gain. In its 1995 financial statements, Old Waste used the gain to offset $160 million in

16

17  unrelated operating expenses and misstatements that, in most instances, had been the subject of

18  Proposed Adjusting Journal Entries in 1994 and earlier. The offset amount represented 10% of 1995

19  pre-tax income before special charges.  The effect of the $160 million netting, which management

20  did not disclose, was to mask the size of Old Waste's 1995 misstatements.

21

22      58.   The netting of these one-time gains to offset operating expenses and current or prior

23  year misstatements is not permitted under GAAP, and Andersen communicated strongly to Old

24  Waste's management that these practices were an area of "SEC [Securities and Exchange

25  Commission] exposure."

26      59.   On March 11, 1996, Andersen auditors met with the Audit Committee and reviewed

27  with them the results of the 1995 audit, including the netting issue.  The auditors also provided

28

SECOND AMENDED COMPLAINT                                                                      -27-

1    materials to the Audit Committee which showed that the "Action Steps" agreed to by Old Waste's

2    management in 1993 had not been fully implemented in the following two years.

3
4            60.    As a result of Old Waste's improper netting and other continuing accounting

5    irregularities, the financial statements of Old Waste for 1995 materially overstated Old Waste's

6    income in 1995 and inflated the per share price of Old Waste stock.

7            61.    In 1996, Old Waste continued many of the non-GAAP accounting practices to

8    continue manipulating its earnings and meet analysts' expectations.  For instance, in the second

9
10   quarter of 1996, one day before it released its earnings report, Old Waste reversed $29 million in

11   excess reserves for liabilities and asset valuations in order to enhance Old Waste's reported income.

12   As a result, Old Waste improperly overstated its second quarter earnings for 1996.

13           62.    In 1996 and early 1997, Andersen conducted its audit of Old Waste's 1996 financial

14   statements. Andersen quantified current and prior period misstatements of $105 million,

15
16   which equaled 7.2% of pre-tax income from continuing operations before special charges, and

17   prepared  Proposed Adjusting Journal Entries in that amount.

18           63.    Old Waste continued in 1996 to utilize netting procedures which violated GAAP and

19   offset current period expenses and prior period misstatements with over $85 million in gains realized

20   from the sale of two discontinued operations.  The effect of the netting along with other misclassified

21
22   items was to overstate income from continuing operations by 7%. Old Waste refused to reclassify the

23   improper netting as recommended by Andersen, which, if recorded, would have reduced pretax

24   earnings from continuing operations by nearly 6%.

25           64.    In 1996, Old Waste's management also inflated income by making unsupported

26   changes to its salvage values, improperly accounting for insurance recoveries and incorrectly applying

27   purchase acquisition accounting principles to its environmental remediation reserves (liabilities) in

28

order to reduce current period operating expenses.  As a result of both the improper netting and these known and likely misstatements, Old Waste reported operating income that was $114 million more (after tax) than its actual operating income.

65.     On March 10, 1997, Andersen presented the results of Andersen's 1996 audit to Old Waste's Audit Committee, which was then composed of Defendants Peterson, Arnelle, Edwards, Flynn and Trowbridge.  Among other things, Andersen informed the Audit Committee that gains from sales of discontinued operations were improperly recorded and that there was a difference of $81 million between Old Waste's reported income of $857 million and its actual income of $776 million from continuing operations.   The Audit Committee did not direct management to correct the accounting irregularities.

66.     As a result of Old Waste's improper netting and other accounting irregularities the financial statements of Old Waste for 1996 materially overstated Old Waste's income in 1996 and inflated the per share price of company stock.

67.     In 1997 Old Waste continued to engage in improper accounting practices which had the effect of overstating its net income for the first three quarters of 1997 by approximately $180 million.

68.     As a result of the above accounting irregularities the market price of Company Stock was artificially inflated beginning prior to 1991 and continuing until February 25, 1988.  Throughout this period, the price of Old Waste Stock prevailing on the exchanges did not represent its fair market value.

     **C.**   **The Old Waste Plan Fiduciaries, in Violation of Their Fiduciary Obligations, Caused and/or Permitted the Old Waste Plan to Make New Investments in Company Stock When They Knew or Should Have Known that Old Waste's Accounting Books and Records Failed to Report Its True Financial Condition, that the Prices at which the Old Waste Plan Was Acquiring Company Stock**

**Were Greater than Fair Market Value, and that New Investments in Company Stock Were Not Prudent**

69.     At all times relevant to this complaint, until they left Old and New Waste, Koenig and Tobecksen and the members of the Old Waste Administrative Committee knew or should have known that Old Waste's accounting books and records failed to report its true financial condition, that its stock price was inflated, and that the Waste Management Stock Fund was not a prudent new investment option for the Old Waste Plan. Despite their obligations as Old Waste Plan fiduciaries, Koenig and Tobecksen and the members of the Old Waste Administrative Committee failed to conduct an adequate fiduciary review to determine whether Company Stock was a prudent investment for the Plan, concealed from the Old Waste Plan and its  participants Old Waste's accounting irregularities and the fact that Old Waste stock prices were inflated in value, and caused the Plan to continue to offer the Waste Management Stock Fund as an investment option for Plan investments when Old Waste Stock was no longer a prudent investment.

70.     As a result of (i) the failure of Koenig and Tobecksen to conduct a fiduciary review and (ii) the concealment from Old Waste Plan participants that Old Waste failed to report its true financial condition on its accounting books and records and that the prevailing price of Old Waste stock on the national exchanges exceeded fair market value, the Old Waste Plan Trustees continued to acquire Old Waste stock for Plan accounts from January 1, 1990, through February 24, 1998 at prices exceeding fair market value that represented more than adequate consideration.

71.     Between 1990 and December 31, 1997, the Plan invested no less than $121,649,873 of new contributions and earnings in the Waste Management Stock Fund.

72.     At all times relevant to the complaint, Defendants Buntrock and Rooney were members of the Old Waste Board, which was a Named Fiduciary of the Plan with the authority to

1   appoint and remove the members of the Administrative Committee and the Old Waste Plan Trustees.

2   Defendants Old Waste; the members of the Old Waste Board, including the members of the Old

3
    Waste Audit Committee; and Rooney and Buntrock, as members of the appointing authority, had an
4
    ERISA fiduciary obligation to monitor the performance of the Administrative Committee and the Old
5
6   Waste Plan Trustees to ensure that their performance complied with the terms of the Plan Document

7   and ERISA and met the needs of the Plan. Among other things, this fiduciary duty included an

8   obligation to ensure that the Old Waste Plan Trustees discharged their duties under the Plan
9
    Document solely in the interest of Plan Participants and Beneficiaries and for the exclusive purpose
10
11  of providing benefits to Participants and Beneficiaries and with the care, skill, prudence and diligence

12  under the circumstances then prevailing that a prudent man in a like capacity and familiar with such

13  matters would use in the conduct of an enterprise of a like character and with like aims.

14
        73.    Defendants Rooney, in his capacity as a director and President of Old Waste, and
15
16  Buntrock, in his capacity as the Chairman of the Board and CEO of Old Waste, were aware that the

17  revenues and income of Old Waste were materially inflated by the accounting irregularities engaged

18  in by Old Waste's management, including Koenig, Rooney, Buntrock, Tobecksen, and Getz, and that,

19  as a result, the Company Stock acquired for the Waste Management Stock Fund was inflated in
20
    value.   Notwithstanding this knowledge, Defendants Rooney and  Buntrock concealed this
21
22  information from the Old Waste Plan Trustees and permitted  the Old Waste Plan Trustees, who

23  served as the Plan Administrative Committee in the period 1990 through July 1997, to continue to

24  offer the Waste Management Stock Fund as an investment option for the investment of new assets

25  of the Old Waste Plan when Old Waste stock was no longer a prudent investment because the
26
    financial statements did not disclose the true financial condition of Old Waste.  In the period 1990
27
28  through July 1997, Rooney and Buntrock also permitted the Plan to continue to acquire new shares

of Old Waste stock for the Waste Management Stock Fund at inflated prices exceeding fair market value that represented more than adequate consideration.

74.   Beginning as early as March 1994, the members of Old Waste's Audit Committee, including Defendants Peterson, Arnelle, Flynn, Trowbridge, and later Edwards and Rothmeier, were advised by Andersen that Old Waste's management had refused to accept millions in Adjusting Journal Entries proposed by Andersen which would have reduced Old Waste's stated net income by millions of dollars and had failed to implement the "Action Steps" proposed by Andersen to change Old Waste's past improper accounting practices. Based upon information provided by Old Waste's auditors on March 14, 1994 and in subsequent meetings on March 13, 1995, March 11, 1996, and March 10, 1997, the members of the Audit Committee as well as the members of the Old Waste Board knew or should have known that the revenues and income of Old Waste were materially inflated by accounting irregularities engaged in by Old Waste's management, including Buntrock, Rooney, Koenig, Tobecksen, and Getz, and that, as a result, shares of Company Stock acquired for the Waste Management Stock Fund were inflated in value. Notwithstanding this knowledge, the Defendant Members of the Audit Committee and the Members of the Old Waste Board concealed this information from the Old Waste Plan Trustees, permitted the Old Waste Plan Trustees, between 1994 and February 25, 1998, to continue to offer the Waste Management Stock Fund as an investment option for the investment of new assets of the Plan when new shares of Common Stock were not a prudent investment because the financial statements did not report Old Waste's true financial condition. From 1994 to February 25, 1998, the Defendant Members of the Audit Committee permitted the Plan to continue to acquire new shares of Company Stock for the Waste Management Stock Fund at inflated prices that exceeded fair market value and represented more than adequate consideration.

75.     Prior to becoming an Old Waste Plan Trustee, Getz knew, as early as March 14, 1994, that Old Waste's management had refused to accept $128 million in Adjusting Journal Entries proposed by Andersen, and, in the years that followed, had failed to implement the "Action Steps" proposed by Andersen to change Old Waste's improper accounting practices.  As a result Getz knew or should have known that the prices of Company Stock were inflated and that the Waste Management Stock Fund was not a prudent investment option to offer to the nearly thirty thousand participants of the Old Waste Plan for new Plan investments because Old Waste's accounting books and records and financial statements did not report its true financial condition.  Despite his obligations as a fiduciary of the Old Waste Plan, Getz failed to conduct an adequate fiduciary review to determine whether Company Stock was a prudent investment for the Plan.  He also concealed from the Old Waste Plan Trustees and plan participants the accounting irregularities Old Waste engaged in and the fact that Old Waste stock was inflated in value, and caused the Plan to continue to offer the Waste Management Stock Fund as an investment option for new Plan assets when Company Stock was not a prudent investment because Old Waste's accounting books and records and financial statements did not report its true financial condition.

76.     As a result of Getz' failure to conduct a fiduciary review and the concealment from the Old Waste Plan Trustees and plan participants that the price of Company Stock prevailing on the national exchanges between 1997 and February 25, 1998 exceeded its fair market value, the Old Waste Plan continued to offer the Waste Management Stock Fund as an investment option for the investment of new Plan assets and the Plan continued to acquire new shares of Company Stock between 1997 and February 25, 1998 at inflated prices that exceeded fair market value and represented more than adequate consideration.

77.    Prior to the announcement of the restated financial statements on February 24, 1998, Old Waste concealed its true financial condition from the participants of the Old Waste Plan; thus, the Plaintiffs, despite exercising due diligence as participants in the Old Waste Plan, did not discover that the Old Waste Plan fiduciaries had breached their ERISA fiduciary obligations by acquiring Company Stock at inflated prices that exceeded fair market value.

**D.     Old Waste Reveals the Accounting Irregularities and Restates Its Financial Reports for More than Five Years**

78.    The accounting problems of Old Waste which Andersen had brought to the attention of, and complained about to Koenig, Buntrock and Getz as well as the members of Old Waste's Audit Committee, did not begin to be disclosed until the fourth quarter of 1997 and were not fully disclosed until the details revealed in the February 24, 1998, announcement came to rest in the marketplace. On about October 10, 1997, Old Waste announced in a press release that the prior reports of Old Waste's earnings from continuing operations for the third quarter of 1996 were overstated because they included amounts that were not earnings from continuing operations. The October 10, 1997 press release also cautioned that earnings for the third quarter of 1997 were expected to be below analysts' expectations and that Old Waste's fourth Quarter 1997 results might be reduced by a charge to income that could be material to its results of operations for the year.

79.    The full extent of Old Waste's financial problems was not revealed until after February 24, 1998, at which time Old Waste issued a press release reporting Old Waste's financial results for the fourth quarter and full year 1997, which disclosed special charges and adjustments to expenses in the fourth quarter, and restatements of prior period earnings for 1992 through 1996 and the first three quarters of 1997. The report also quantified the restatement for years prior to 1992 at $208.9 million but did not allocate that figure to individual years. The press release revealed that Old

Waste's reported income for all prior years had been overstated by a total of $1.4 billion.   The effect of the restatements was to reduce previously reported net income as follows:

| Year Ending | As Originally Reported * | As Restated* | Overstatement | Percent Overstated |
|---|---|---|---|---|
| prior to 1992 | | | $208.9 | |
| 12/31/92 | $850,036 | $739,686 | $110.3 | 14.9% |
| 12/31/93 | $452,776 | $288,707 | $164.0 | 56.8% |
| 12/31/94 | $784,381 | $627,508 | $156.9 | 25.0% |
| 12/31/95 | $603,899 | $340,097 | $263.8 | 77.6% |
| 12/31/96 | $192,085 | $(39,307) | $231.4 | 100+% |
| Qtrs1-3 1997 | $417,600 | $236,700 | $180.9 | 76% |

*in thousands

80.     The largest single accounting item restated by Old Waste that was concealed from the Old Waste Plan Trustees and plan  participants related to a $509 million  understatement by Old Waste of its depreciation of garbage trucks and dumpsters. With the knowledge of Buntrock, Rooney, Tobecksen and other members of management, Old Waste reduced the cost of tens of thousands of Company garbage trucks by inflating their salvage value by a fictitious amount which exceeded the true salvage value of the trucks.   Old Waste also understated the depreciation of nearly 1.5 million dumpsters, claiming inflated salvage values on the dumpsters without any expectation that the purported salvage value would be realized by Old Waste.

81.     The corrective "Action Steps" proposed by Andersen, beginning as early as February 11, 1994, related to the manner in which Old Waste treated  depreciation and salvage value, but the corrective steps were not implemented by Old Waste's management.  In 1994, defendant Tobecksen devised a new method to calculate  depreciation of the company's trucks. When told that the method

was flawed and overstated income, Koenig and Tobecksen let the error stand and grow and concealed it from Old Waste's auditors.

82.    In addition, Old Waste admitted in the announced restatements that it had overstated capitalized interest for landfills – thereby understating its interest expenses during the period covered by the restatements by over $210 million.  The understatement of interest expense resulted from Old Waste's overestimating the capacities and useful lives of its landfills.    In connection with Old Waste's 1993 audit, Andersen had proposed "Action Steps" to correct accounting irregularities associated with Old Waste's landfill capitalized interest.  These steps were not implemented by Old Waste's management.

> **E.    Old Waste Merges with USA Waste Without Conducting Adequate Due Diligence of USA Waste and the Merger**

83.    Beginning on or about October 1997, Old Waste began discussing the possibility of a merger with USA Waste.  USA Waste was a competitor about one-fifth the size of Old Waste.  The same week that Old Waste restated its financial statements, the companies reached a tentative agreement to merge.  On March 11, 1998, USA Waste and Old Waste issued a joint press release announcing that they had signed a definitive agreement to merge (the "Merger").

84.    In order to obtain the approval of the Merger from Old Waste shareholders, including the participants of the Old Waste Plan, Old Waste issued a number of misleading statements about the benefits of the Merger and concealed the fact that Old Waste had not done adequate due diligence to determine whether the Merger was in the best interest of Old Waste and its shareholders.

85.    Beginning on March 11, 1998, Old Waste issued a press release which stated that the companies expected to "achieve annual cost savings of at least $800 million through operating synergies and enhanced efficiencies."  The release further stated that Old Waste anticipated "the cost

1    savings coupled with expected growth to allow the combined company's operating earnings to grow

2    at a rate in excess of 20 percent for the next several years." The release forecast earnings per share

3
4    in a range of $2.90 to $3.05 as a result of the operating synergies expected to be realized from the

5    Merger.

6        86.    Two months later Old Waste issued a Joint Proxy Statement/Prospectus which was

7    filed with the SEC on June 11, 1998 (the "Joint Proxy/Prospectus"). The Joint Proxy/Prospectus

8    continued to misrepresent the anticipated cost savings that the companies expected to achieve through

9
10   the Merger, stating that "[t]he management of USA Waste and [Old] Waste Management have said

11   they expect that annualized synergies and cost savings of approximately $800 million pre-tax will be

12   realized from the Merger."

13       87.    The Joint Proxy/Prospectus also stated that USA Waste and Old Waste had in February

14   1998 tentatively agreed to merge and agreed that any merger transaction would be subject to a number

15
16   of conditions "including satisfactory completion of due diligence."    According to the Joint

17   Proxy/Prospectus, the Old Waste Board had met on March 9 and March 10 and discussed the merger

18   with USA Waste with senior management of Old Waste and Old Waste's financial accounting and

19   legal advisors. At those meetings Old Waste's senior management – which would have included

20   Defendants Chappel, Old Waste's Acting CFO and Holsten, Old Waste's COO – purportedly made

21
22   presentations to the Old Waste Board "concerning the Merger, Waste Management's legal, financial,

23   environmental and accounting 'due diligence' investigation of USA Waste ... and potential

24   operational and administrative synergies resulting from the Merger."

25       88.    Despite these assurances that Old Waste had conducted adequate "due diligence"

26   of the Merger and the cost savings that were likely to be achieved by the merged companies, Old

27
28

Waste did not conduct timely, substantive and adequate due diligence of the systems, accounting, and financial operations of USA Waste prior to consummating the Merger.

89.    Had Old Waste performed adequate and timely due diligence, the company would have learned, among other matters, that USA Waste's accounting practices were not in accordance with Generally Accepted Accounting Principles ("GAAP"), that USA Waste's accounting books and records and financial statements did not report its true financial condition, and that the planned corporate merger presented a significant risk of loss to Old Waste Plan participants whose assets were invested in the Company Stock Funds.

90.    The Merger went ahead on July 16, 1998 with the Old Waste Plan exchanging 4,043,072 shares of Old Waste stock, held in the accounts of roughly 22,600 participants, with a total value of $169,278,364, for 2,931,227 shares of USA Waste common stock.

**F.    New Waste Fails to Achieve the Operating Synergies Projected in the Joint Proxy/Prospectus and Restates Its Financial Statements, Resulting in Plan Losses.**

91.    Following the Merger, Old Waste and USA Waste immediately began to experience problems integrating the operations of the merged companies and achieving the operating synergies projected in the Joint Proxy/Prospectus. One of the major assumptions underlying the projections was that New Waste would realize substantial savings through the successful integration of the accounting, billing and management information systems of the larger and more centralized Old Waste with the smaller, more decentralized USA Waste systems. The projections also assumed that the merged entity would realize economies by consolidating facilities and routes, by increasing the use of disposal sites owned by the company and by implementing a new strategy of price increases.

92.    From the outset, the systems conversion did not progress as planned and New Waste was unsuccessful in effectively converting Old Waste's accounting and billing systems to the

SECOND AMENDED COMPLAINT

-38-

1   decentralized USA Waste structure.   As a result of these conversion problems, New Waste was

2   unable to generate reliable information to manage the business or upon which to make financial

3   projections. The inadequacies in these new systems led to delays in obtaining necessary financial

4   management information, which in turn led to delayed or erroneous billings of customers resulting

5   in lost revenue and increasing receivables.

6

7          93.   New Waste's new pricing strategy also proved unsuccessful, and by the second quarter

8   of 1999 resulted in New Waste estimating significant revenue and earnings shortfalls from previously

9   budgeted targets and publicly announced projections. On July 6, 1999, New Waste issued a press

10   release reporting a $250 million projected revenue shortfall for the second quarter of 1999 and sharply

11   lower earnings.  By the close of trading on the following day the per share price of New Waste stock

12   had fallen, from the day before,  from more than $53.50 to less than $34.  By August 3, 1999, after

13   the company announced its actual earnings in the second quarter would be even lower, the company's

14   stock closed at $22.50.

15

16          94.   By July 13, 1999, the Board appointed a three-member Executive Committee of

17   independent members of the Board to oversee the management of the company.

18

19          95.   By that date, the Board had also ordered the creation of an updated financial system

20   and ordered the deployment of personnel and resources to perform a detailed review of the company's

21   books and records.  More than 1,100 outside accountants were hired to conduct the review.

22

23          96.   After the close of trading on November 9, 1999, New Waste reported the results of the

24   review of its books and records and announced $1.23 billion in after tax charges and adjustments.

25   On November 10, the price of New Waste common stock on the New York Stock exchange closed

26   at $15.56.

27

28

SECOND AMENDED COMPLAINT                                                                -39-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

97.     The $15.56 closing price on November 10, 1999, represented a drop from the $42.19 per share at which New Waste stock was acquired in the Merger by the Old Waste Plan's Waste Management Stock Fund and ESOP Fund, a 73% decline in the value.

98.     This exchange of stock in the Merger resulted in a significant financial loss to the Old Waste Plan.  The exchange was made prior to the aforementioned July, August, and November 1999 disclosures of the deleterious effect of the corporate Merger on New Waste earnings.  Since the New Waste stock price fell to approximately 25% of what it had been prior to those disclosures, the value of Plan assets in New Waste stock experienced a similar decline.

**G.     Old Waste Plan Trustees Chappel and Holsten and Old Waste Plan Fiduciary Miller Breached Their Fiduciary Duty to the Old Waste Plan by Failing to Disclose to its Trustees and Participants That Old Waste Had Not Conducted Adequate Due Diligence of USA Waste Prior to the Merger and by Permitting the Plan and Participants to Approve the Merger Without Conducting an Adequate Review of the Proposed Merger to Assure That it Was in the Best Interest of the Plan Participants**

99.     Defendants Chappel and Holsten, as Old Waste Plan Trustees, and Defendant Miller, as an Appointing Fiduciary, had a fiduciary duty under ERISA to discharge their duties to the Plan solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

100.    The proposed merger of Old Waste into New Waste would be a critically important corporate event which raised substantial and legitimate risks.  Such an event required the Old Waste Fiduciaries to re-evaluate the investment policies of the Old Waste Plan in light of the proposed Merger. Fiduciaries of company stock pension plans, such as the Old Waste fiduciaries, have a responsibility, when the sponsoring company proposes merging into another company, especially a

company one fifth the size of Old Waste, such as USA Waste, to scrutinize the planned merger to be sure the merger will be favorable to the company stock and the plan.

101.    Defendant Holsten was aware of the Merger risks and informed Defendant Miller prior to the Merger that the operating synergies projected in the Joint Proxy/Prospectus could not be achieved.

102.    Defendants Chappel and Holsten, who were Old Waste Plan Trustees and members of the Old Waste Plan's Administrative Committee, and Defendant Miller, who, as a member of the Old Waste Board, appointed the Old Waste Plan Trustees, and therefore had a duty to monitor the appointed Trustees with respect to their performance as plan fiduciaries, notwithstanding their knowledge that Old Waste had not conducted adequate due diligence of USA Waste before agreeing to the Merger, failed to disclose that fact to other appointing fiduciaries, other Old Waste Plan Trustees, and plan participants. By failing to act on the information available to them and concealing these material facts regarding the Merger from other fiduciaries and participants, Defendants Chappel and Holsten breached their fiduciary duties, causing Plan losses, and were responsible for the Old Waste Plan Fiduciaries' failure to conduct an adequate review of the Merger and for the Plan's acquiescence in the Merger, which was not in the best interest of the Plan and its participants.

**H.     In the Illinois Securities Litigation, the New Waste Fiduciaries Failed to Pursue the Fiduciary Breach Claims of the Old Waste Plan or Protect the Claims of the Old Waste Plan and its Participants Arising Out of the Acquisition of Old Waste Shares**

103.    After the full extent of Old Waste's accounting problems was revealed, the New Waste Fiduciaries, including State Street Bank, failed to take appropriate actions to protect the interests of the Old Waste Plan and its participants.

104.     Based upon the information set out in the restated financial statements, the New Waste Fiduciaries, knew or should have known, that the shares of Company Stock acquired by the predecessor Old Waste Plan between 1990 through February 24, 1998, had been acquired by the Old Waste Administrative Committee and the Individual Old Waste Plan Trustees at inflated prices exceeding fair market value.

105.     On July 24, 1998, the Consolidated Amended Complaint for Violations of the Securities and Exchange Act of 1934 was filed in In Re Waste Management, Inc., Securities Litigation, No. 97 C 7709, in the United States District Court for the Northern District of Illinois, Eastern Division (the "Illinois Securities Complaint").     That complaint placed the New Waste Fiduciaries on notice that former Old Waste fiduciaries, including Koenig, Rooney and Buntrock, had engaged in potential breaches of fiduciary obligations with respect to the Old Waste Plan by causing it to acquire shares of Old Waste Stock during the Class Period when they knew that such stock was not a prudent Plan investment because its price exceeded fair market value.

106.     On July 19, 2001 the Securities and Exchange Commission issued an Order Instituting Public Administrative Proceedings, Making Findings and Imposing Sanctions Pursuant to Rule 102(e) of the Commission's Rules of Practice in In the Matter of Arthur Andersen LLP, SEC Administrative Proceeding File No. 3-10513 (the "SEC Administrative Order and Findings").     The SEC Administrative Order and Findings placed the New Waste Fiduciaries on notice that former Old Waste fiduciaries, including Koenig, Rooney, Getz and Buntrock, had engaged in potential breaches of fiduciary obligations with respect to the Old Waste Plan by causing the Plan to acquire Old Waste Stock during the Class Period when they knew that it was not a prudent Plan investment because its price exceeded the fair market value.

SECOND AMENDED COMPLAINT                                                                    -42-

107.     After learning of the financial restatements, the allegations in the Illinois Securities Litigation and the findings in the SEC Administrative Order and Findings, the New Waste Fiduciaries failed to take appropriate steps to protect the interests of the Old Waste Plan and its participants and to pursue fiduciary breach claims against the former fiduciaries of the Old Waste Plan.

108.     Despite actual notice of the serious allegations in the Illinois Securities Litigation, the SEC Administrative Order and Findings, and the financial restatements, the New Waste Fiduciaries failed to review and investigate the facts and allegations set forth in the Old Waste financial restatements, the Illinois Securities Litigation and the SEC Administrative Order and Findings to determine whether former fiduciaries of the Old Waste Plan, which was merged into the New Waste Plan effective January 1, 1999, had breached their fiduciary obligations or to determine whether New Waste Fiduciaries could assert ERISA claims against Old Waste Plan fiduciaries on behalf of the Old Waste Plan and its participants.

109.     Instead, the New Waste Fiduciaries, including State Street Bank, caused or permitted the New Waste Plan to participate in, and not to opt out of, the Illinois Securities Litigation.  They also caused or permitted, claims to be submitted on behalf of the Old Waste Plan in that proceeding for damages suffered by the Old Waste Plan as a result of open market purchases of Old Waste stock made between November 3, 1994 and February 24, 1998 (the "Illinois Securities Settlement"). Pursuant to the Final Judgment and Order of Dismissal (the "Final Order") approved by the Illinois federal court on September 17, 1999, the New Waste Fiduciaries participated in the settlement by submitting a Proof of Claim and Release.  Under the terms of the Final Order, the release which the New Waste Fiduciaries caused to be executed released "every claim or cause of action, whether arising under any state, federal, or common law rule, that has been, or might have been, or could be

1    asserted against any of the Released Parties," which included Defendants Old Waste, Dean L.

2    Buntrock, Phillip Rooney, and James Koenig, a former Old Waste Plan Trustee.

3
4        110.    The Old Waste Plan purchased, at a cost of $51 million, 1,787,943 shares of Company

5    Stock at inflated prices during the class period of the Illinois Securities Litigation.  Yet in exchange

6    for the broad release of claims executed in the Illinois Securities Settlement related to these

7    considerable purchases, the Plan received less than $87,000.  This amount was based solely on the

8    calculation of its share of the settlement of its securities claims for losses due to violation of federal

9    securities law.

10
11       111.    The Lead Plaintiffs in the Illinois Securities Litigation were not participants or

12   beneficiaries of the Old Waste Plan and neither had standing nor were empowered under §502 of

13   ERISA, 29 U.S.C. §1132, to bring a civil action to obtain relief under §409 of ERISA, 29 U.S.C.

14   §1109 to recover losses resulting from a breach of fiduciary duty.   The Complaint in the Illinois

15   Securities Litigation did not assert any claims of fiduciary breach under ERISA and the Lead

16   Plaintiff's interests were not aligned with the interests of the Old Waste Plan and its participants,

17
18   which had separate and distinct ERISA claims that were not asserted in that litigation.

19       112.    Defendant Old Waste has contended that as a result of the release approved by State

20   Street Bank and other New Waste Fiduciaries in the Illinois Securities Litigation to settle claims of

21   securities laws violations, Plaintiffs Harris and Howard, and presumably Plaintiff Thornton, Sr. who

22
23   joins the Second Amended Complaint, are barred from bringing the present ERISA fiduciary breach

24   claims against the Old Waste Fiduciaries.

25       113.    The New Waste Fiduciaries, including the New Waste Investment Committee and

26   State Street Bank, failed to act prudently to protect the interests of the Old Waste Plan and its

27
28   participants in executing the release in the Illinois Securities Litigation which was so broad that it is

SECOND AMENDED COMPLAINT                                                                            -44-

alleged to release all the Old Waste Plan's potential fiduciary breach claims against the Old Waste

Fiduciaries. Moreover, defendant State Street Bank executed the release without investigating the

value or viability of those claims and without obtaining consideration additional to what ordinary

shareholders received.

114.    At the time the alleged release of the Old Waste Fiduciaries was approved by the New

Waste Fiduciaries, Defendant New Waste, which was a New Waste Plan sponsor, owned over fifty

percent of Old Waste, and therefore Old Waste was a party-in-interest with respect to the New Waste

Plan within the meaning of §3(14)(G) of ERISA, 29 U.S.C. §1002(14)(G). Prior to submitting a

claim in the Illinois Securities Litigation and executing the release, which among other things

purportedly released Old Waste for all ERISA fiduciary breaches, neither the New Waste Fiduciaries,

Old Waste, nor New Waste obtained a prohibited transaction exemption from the Secretary of Labor

under §408(a), 29 U.S.C. §1108(a), permitting the New Waste Fiduciaries to exchange the Old Waste

Plan's claims against Old Waste for federal securities law violations and breach of ERISA fiduciary

duties, for settlement payments.

**I.     In the Texas Securities Litigation, the New Waste Fiduciaries Failed to Pursue the Fiduciary Breach Claims of the Old Waste Plan or Protect the Claims of the Old Waste  Plan and its Participants Arising Out of the Merger between Old Waste and the New Waste Subsidiary**

115.    After the full extent of Old Waste's problems and limitations were revealed following

the Merger, the New Waste Fiduciaries failed to take appropriate actions to protect the interests of

the Old Waste Plan and its participants.

116.    Based upon the information presented in the restated financial statements, the New

Waste Fiduciaries, including State Street Bank and the Individual Members of the New Waste

Investment Committee — Defendants Dees, Piller, Simpson, Jones, Trubeck and McCann — knew

1   or should have known, that the management of Old Waste had failed to conduct adequate due

2   diligence of the proposed Merger.

3   117.    On July 7, 1999, the first of over 30 securities class action complaints was filed against

4   New Waste and certain of its officers and directors in Perkins v. Waste Management, et al., Case No.

5   H-99-2183, United States District Court for the Southern District of Texas, Houston Division (the

6   "Texas Securities Litigation"). The complaint placed the New Waste Fiduciaries on notice that senior

7   management of New Waste had engaged in alleged securities violations in connection with the

8   Merger as a result of public representations they made regarding New Waste's competitive position,

9   its cash flow from operations and the successful integration of Old Waste and USA Waste.

10   118.    On June 21, 2000 the SEC issued an Order Instituting Proceedings Pursuant to §21c

11   of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order

12   In the Matter of Waste Management, Inc, Administrative Proceeding File No. 3-10238 ("The SEC

13   Cease and Desist Order").    The Cease and Desist Order raised serious allegations of securities

14   violations by New Waste following the Merger.

15   119.    On July 14, 2000, an Amended Consolidated Class Action Complaint was filed in the

16   Texas Securities Litigation (the "Consolidated Securities Complaint").    The Complaint placed the

17   New Waste Fiduciaries on notice that former Old Waste Fiduciaries, including Defendants Chappel

18   and Holsten, had engaged in potential breaches of fiduciary duties with respect to the Old Waste Plan.

19   These breaches included: concealing from other Old Waste Plan Trustees and participants the fact that

20   Old Waste had not done adequate due diligence of the proposed corporate Merger, not conducting

21   a prudency review of the proposed Merger themselves, and causing the Plan to acquiesce in the

22   Merger, which was not in the best interest of the Plan and its participants.

120.    Despite actual notice of the serious allegations in the Consolidated Securities

Complaint, the SEC Cease and Desist Order, and the charges and adjustments taken by New Waste

in November 1999,  the New Waste Fiduciaries failed to review and investigate the facts and

allegations set forth in the Texas Securities Litigation and the SEC Administrative Cease and Desist

Order to determine whether former Old Waste Plan fiduciaries had breached their fiduciary

obligations and whether the New Waste Fiduciaries could assert ERISA claims against the Old Waste

Fiduciaries with respect to their actions and omissions in connection with the corporate Merger.

121.    Instead, the New Waste Fiduciaries, including State Street Bank, chose to participate

in the settlement of the Texas Securities Litigation and to submit a securities claim on behalf of the

participants of the Old Waste and New Waste Plans.  The settlement concerned purchase and sale of

Waste Management securities between June 11, 1998 and November 9, 1999. Pursuant to the January

29, 2002 First Amended Stipulation of Settlement ("Stipulation of Settlement"), by participating in

the settlement, the New Waste Plan fiduciaries were obligated to execute a Proof of Claim and

Release on behalf of the Old Waste Plan and its participants.  The Release released:

> . . .each and every Claim or Unknown Claim, whether arising under any federal, state,
> or foreign statutory or common law rule, that has been, or might have been, or could
> be asserted against any of the Releasees at any time by or on behalf of any Class
> member, in any capacity, in the Action or in any court, tribunal, or other forum of
> competent jurisdiction, arising out of or related, directly or indirectly, to the purchase,
> acquisition, exchange, retention, transfer or sale of , or investment decision involving,
> any Waste Management security, including without limitation any Claims or
> Unknown Claims arising out of or relating to:
>
> > (8)    any actions or omissions by any of the Releasees in connection
> > with the Merger of WMX [Old Waste] with and into a wholly-
> > owned subsidiary of USA Waste. . .

122.    The term "Releasee" as defined in the Stipulation of Settlement means "Waste

Management and all of its predecessors and present and former parents, subsidiaries and affiliates,

1    and each of their respective past and present directors, officers, employees, partners, principals,

2    agents, attorneys, advisors," which includes, among others, Defendants Old Waste, Donald Chappel,

3

4    Joseph Holsten and the Trustee members of the Old Waste Plan Administrative Committee.

5        123.    The Lead Plaintiffs in the Texas Securities Litigation were not participants or

6    beneficiaries of the Old Waste Plan and neither had standing nor were empowered under §502 of

7    ERISA, 29 U.S.C. §1132, to bring a civil action to obtain relief under §409 of ERISA, 29 U.S.C.

8    §1109, to recover losses resulting from a breach of fiduciary duty.  The Complaint in the Texas

9
     Securities Litigation did not assert any ERISA fiduciary breach claims and the Lead Plaintiff's
10

11   interests were not aligned with the interests of the Old Waste Plan and its participants, who have

12   separate and distinct ERISA claims that were not asserted in that litigation.

13       124.    By executing the release in the Texas Securities Litigation, the New Waste Fiduciaries

14   failed to act prudently to protect the interests of the Old Waste Plan and its participants.  The Release

15
     is so broad that it purports to release all the Old Waste Plan's potential fiduciary breach claims against
16

17   its fiduciaries, yet it was executed without investigating the fiduciary breach claims that were

18   purportedly being released and without obtaining additional consideration.

19       125.    Defendant New Waste, which is a sponsor of the New Waste Plan, owns over fifty

20   percent of Old Waste, and therefore Old Waste is a party-in-interest with respect to the New Waste

21
     Plan with in the meaning of §3(14)(G) of ERISA, 29 U.S.C. §1002(14)(G). Neither the New Waste
22

23   Fiduciaries  nor Old Waste obtained a prohibited transaction exemption from the Secretary of Labor

24   under §408(a), 29 U.S.C. §1108(a), permitting the New Waste Fiduciaries to exchange the Old Waste

25   Plan's securities and ERISA fiduciary breach claims against Old Waste for settlement  payments in

26   the Texas Securities Litigation.

27

28                                      **COUNT ONE**

1

2

3

**Claim for Relief under ERISA §404 Against the Individual
Trustee Members of the Old Waste Administrative Committee, including
Koenig, Tobecksen and Getz, and the Old Waste Administrative Committee,
for Breach of Fiduciary Duty in Administering the Old Waste Plan**

4

126.   All previous averments are incorporated herein.

5

6

127.   Defendants Old Waste Administrative Committee and the Individual Trustee Members

7

of the Old Waste Administrative Committee, including Koenig, Tobecksen and Getz, failed to

8

discharge their duties with respect to the Old Waste Plan solely in the interest of the participants and

9

their beneficiaries and for the exclusive purpose of providing benefits to participants and their

10

beneficiaries and defraying reasonable expenses of administering the Plan and with the care, skill,

11

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

12

13

capacity and familiar with such matters would use in the conduct of an enterprise of a like character

14

and with like aims, in violation of §404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §1104(a)(1)(A) and

15

(B), by, among other things:

16

17

A.      Failing to conduct an adequate fiduciary review to determine whether

Company Stock was a prudent investment when they knew or should have known that

18

shares of Company Stock were inflated in price because the financial statements did

19

20

not report the true financial condition of Old Waste;

21

B.      Causing the Old Waste Plan to continue to offer the Waste Management Stock

22

Fund as an investment option for the investment of new Plan assets when they knew

23

24

or should have known that new shares of Company Stock were inflated in price and

25

were not a prudent Plan investment because Old Waste's financial statements did not

26

report its true financial condition;

27

28

C.       Causing the Old Waste Plan to continue to acquire shares of Company Stock for the Waste Management Stock Fund at prices exceeding fair market value and representing more than adequate consideration;

D.       Failing to adequately inform Plan participants and beneficiaries with respect to the Waste Management Stock Fund and the true risk of such an investment option in light of the facts known to Koenig, Tobecksen and Getz regarding Old Waste's true financial condition;

E.       Concealing from the Old Waste Plan's participants and beneficiaries material facts regarding Old Waste's true financial condition, which prevented Plan participants from exercising independent control over investments in the Waste Management Stock Fund; and

F.       Failing to disclose to Plan participants and beneficiaries that additional shares of Company Stock were being acquired for the Waste Management Stock Fund at inflated values because Old Waste's financial statements did not report its true financial condition and the price of Old Waste Stock prevailing on the national exchanges exceeded its fair market value.

128.     As a proximate result of these fiduciary breaches, the Old Waste Plan suffered substantial financial losses.

129.     Neither plaintiffs nor the class seek individual damages under this or any other Count relating to individual losses stemming from individual purchases of Old Waste Stock during the class period of the Illinois securities litigation (November 3, 1994 to February 24, 1998).  They only seek to have their Plan made whole for Plan losses resulting from Plan purchases of Company Stock for the Waste Management Stock Fund.

SECOND AMENDED COMPLAINT                                                                    -50-

130.     Neither plaintiffs nor the class seek relief of any kind under this Count for losses which stemmed from the Plan's purchase, acquisition, sale, or exchange of Old Waste Stock during the Texas securities litigation class period (June 11, 1998 to November 9, 1999) and were related to the "Merger".

## COUNT TWO

**Claim for Relief under ERISA §406 Against the Individual
Trustee Members of the Old Waste Administrative Committee, including
Koenig, Tobecksen, and Getz, the Old Waste Administrative Committee, and Old
Waste for Prohibited Transactions in Connection with the Exchange of Company
Stock Between Old Waste and the Old Waste Plan**

131.     All previous averments are incorporated herein.

132.     Defendants Old Waste Administrative Committee, the Individual Trustee Members of the Old Waste Administrative Committee, including Koenig, Tobecksen and Getz, and Old Waste caused the Old Waste Plan to engage in transactions that such Defendants knew or should have known constituted a direct or indirect sale or exchange of Company Stock between the Plan and Old Waste, a party-in-interest with respect to the Plan, in violation of §406(a)(1)(A) of ERISA, 29 U.S.C. §1106(a)(1)(A).     These transactions were in connection with their actions and omissions in authorizing the Old Waste Plan to continue to offer the Waste Management Stock Fund as an investment option and permitting the Plan to invest in Company Stock when they knew or should have known that Old Waste's financial statements did not report its true financial condition and that, as a result, the price at which Old Waste exchanged shares of Company Stock with the Old Waste Plan exceeded fair market value.  Because these transactions occurred at prices exceeding fair market value, the Old Waste Plan gave more than adequate consideration for such shares and the prohibited transactions are not exempt under the provisions of §408(e)(1) of ERISA, 29 U.S.C. §1108(e)(1).

133.    Defendant Old Waste is liable as a fiduciary and party-in-interest for participating in the prohibited transactions.

134.    At such time as the accounting irregularities at Old Waste began and for the period that they continued (from 1990 through February 24, 1998), Company Stock remained inflated in value and Old Waste and the members of the Old Waste Administrative Committee and Old Waste continued to engage in prohibited transactions by causing shares of Company Stock to be exchanged with the Old Waste Plan for more than adequate consideration.

135.    Because the exchange of Company Stock by the Old Waste Plan for more than adequate consideration was a prohibited transaction which was a "per se" violation of ERISA § 406(a)(1)(A), 29 U.S.C. §§ 1106(a)(1)(A), under ERISA §§ 409(a) and 502(a)(2) and (3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (3), the Court has the **equitable power to redress such violations by undoing the prohibited** transaction. In the present case, the appropriate remedy would be for the Court to restore to the Old Waste Plan the consideration which was given by the Old Waste Plan in exchange for shares of Company Stock at inflated prices.

136.    In addition, in order to fully restore the Old Waste Plan and its participants to the position they would have been in had the fiduciaries of the Old Waste Plan not engaged in the prohibited transactions alleged in this Complaint, the Old Waste Plan is entitled to recover the amount the contributions exchanged for Company Stock would have earned had such amounts been instead invested in suitable investment alternatives.

137.    Neither plaintiffs nor the class seek relief of any kind under this Count for losses which stemmed from the Old Waste Plan's purchase, acquisition, sale, or exchange of Old Waste Stock during the Texas securities litigation class period  (June 11, 1998 to November 9, 1999) and were related to the Merger.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT THREE

### Claim for Relief under ERISA §404 Against Old Waste, the Old Waste Board, and the Individual Members of the Old Waste Board, for Breach of Fiduciary Duty in Administering the Old Waste Plan

138.    All previous averments are incorporated herein.

139.    Defendants Old Waste, the Old Waste Board, and the Individual Old Waste Board Members, including Buntrock and Rooney, failed to discharge their duties with respect to the Plan solely in the interest of the participants and their beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of §404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §1104(a)(1)(A) and (B), by, among other things:

A.    Failing to adequately monitor the performance of the Trustee Members of the Old Waste Plan Administrative Committee, when they knew or should have known that the financial statements did not report Old Waste's true financial condition, to ensure that the Old Waste Plan Trustees' performance complied with the terms of the Plan Document and statutory standards, and met the needs of the Plan;

B.    Failing to prevent the Trustee Members of the Old Waste Plan Administrative Committee from offering the Waste Management Stock Fund as an investment option for new investment of participant accounts at a time when Defendants knew or should have known that new shares of Company Stock were inflated in price and were not a prudent investment for the Plan because Old Waste's financial statements did not report its true financial condition; and

1           C.     Failing to prevent the Old Waste Plan from acquiring Company Stock for Plan

2    participants accounts at inflated prices which they knew or should have known

3    exceeded fair market value and represented more than adequate consideration.

4

5        140.   As a proximate result of these breaches of fiduciary duty, the Plan suffered substantial

6    financial losses.

7        141.  Neither plaintiffs nor the class seek relief of any kind under this Count for losses which

8    stemmed from the Plan's purchase, acquisition, sale, or exchange of Old Waste Stock during the

9    Texas securities litigation class period (June 11, 1998 to November 9, 1999) and were related to the

10   Merger.

11

12   <div align="center">**COUNT FOUR**</div>

13

14   <div align="center">**Claim for Relief under ERISA §404 Against State Street Bank**<br>**for Breach of Fiduciary Duty in Connection with**<br>**the Settlements of the Illinois and Texas Securities Litigation**</div>

15

16       142.   All previous averments are incorporated herein.

17       143.   Defendant State Street Bank failed, in its fiduciary capacity, to discharge its ERISA

18   fiduciary duties solely in the interest of the participants and their beneficiaries and for the exclusive

19   purpose of providing benefits to participants and their beneficiaries and defraying reasonable

20   expenses of administering the New Waste Plan and with the care, skill, prudence, and diligence under

21   the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

22   matters would use in the conduct of an enterprise of a like character and with like aims, in violation

23

24   of §404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §1104(a)(1)(A) and (B), by, among other things:

25          A.     Failing to adequately review and investigate the facts and allegations set forth

26   in the Old Waste financial restatements, the Illinois Securities Litigation and the SEC

27   Administrative Order and Findings to determine whether fiduciaries of the Old Waste

28

Plan had breached their fiduciary duties and whether claims under ERISA could be asserted against the Old Waste Fiduciaries with respect to their actions and omissions in connection with their acquisition of shares of Old Waste stock at inflated prices that exceeded fair market value.

B.      Failing to take appropriate steps to protect the interests of the Plan and its participants by preserving fiduciary breach claims against the Old Waste Fiduciaries in connection with the acquisition of Old Waste shares at inflated prices;

C.      Submitting a Proof of Claim and overbroad Release in the Illinois Securities Litigation which purported to release potential ERISA fiduciary breach claims against Old Waste Plan fiduciaries in connection with the acquisition of Old Waste shares at inflated prices, without obtaining additional consideration;

D.      Permitting the Lead Plaintiff in the Illinois Securities Litigation to represent the interests of the Old Waste Plan, when that plaintiff neither had standing nor was empowered under ERISA to bring a civil action to obtain relief for breaches of fiduciary duty and had interests with respect to the class action securities claims that were not aligned with the interests of the Old Waste Plan and its participants, which had separate and distinct ERISA claims that were not asserted in the Illinois litigation;

E.      Causing the New Waste Plan to participate in the settlement of New Waste Plan claims in the Illinois Securities Litigation against parties-in-interest, which settlement was a prohibited transaction under ERISA;

F.      Failing to pursue fiduciary breach claims on behalf of the Old Waste Plan and its participants against the former fiduciaries of the Old Waste Plan in connection with the acquisition of Old Waste stock at inflated prices;

G.      Failing to review and investigate the facts and allegations set forth in the Texas Securities Litigation and the SEC Administrative Cease and Desist Order to determine whether former fiduciaries of the Old Waste Plan had breached their ERISA fiduciary obligations and whether the New Waste Fiduciaries could assert claims under ERISA against the Old Waste Plan fiduciaries with respect to their actions and omissions in connection with the Merger;

H.      Failing to take appropriate steps to protect the interests of the Old Waste Plan and its participants by preserving fiduciary breach claims against the Old Waste Plan fiduciaries in connection with the Merger;

I.      Failing to opt out of the Texas Securities Litigation.

J.      Agreeing to submit a Proof of Claim and overbroad Release in the Texas Securities Litigation which purports to release potential ERISA fiduciary breach claims against Old Waste Fiduciaries in connection with the Merger without obtaining additional consideration;

K.      Permitting the Lead Plaintiff in the Texas Securities Litigation to represent the interests of the Old Waste Plan, when that plaintiff neither had standing nor was empowered under ERISA to bring a civil action to obtain relief for breaches of fiduciary duty and had interests with respect to the class action securities claims that were not aligned with the interests of the Old Waste Plan and its participants, when the Plan and its participants had separate and distinct ERISA claims that were not asserted in the Texas litigation;

1

2        L.       Failing to pursue ERISA fiduciary breach claims on behalf of the Old Waste

3        Plan and its participants against the former fiduciaries of the Old Waste Plan in

4        connection with the Merger.

5                                        **COUNT FIVE**

6            **Claim for Relief under ERISA §404 Against the New Waste Plan**
             **Investment Committee and its Individual Members for Breach of**
7            **Fiduciary Duty in Monitoring  the Performance of State Street Bank**
                **in the Illinois and Texas Securities Litigation Settlements**
8

9        144.     All previous averments are incorporated herein.

10       145.     Under the terms of the Plan Document, the New Waste Plan Investment Committee

11   had the duty to monitor the performance of State Street Bank — the New Waste Plan's investment

12   manager and trustee — in the performance of its duties with respect to the New Waste Plan.

13

14       146.     Defendants New Waste Plan Investment Committee and its individual members, failed

15   to discharge their duties with respect to the Plan solely in the interest of the participants and their

16   beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries

17   and defraying reasonable expenses of administering the Plan and with the care, skill, prudence, and

18   diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

19   familiar with such matters would use in the conduct of an enterprise of a like character and with like

20   aims, in violation of §404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §1104(a)(1)(A) and (B), by, among

21

22   other things:

23       A.       Failing to adequately monitor the performance of the New Waste Plan Trustee

24               and investment manager, State Street Bank, in relation to its decision to have the Plan

25               participate in the settlement of the Illinois Securities Litigation — when they knew or

26               should have known that State Street Bank's actions in this regard constituted an

27

28

SECOND AMENDED COMPLAINT                                                                    -57-

ERISA-prohibited transaction, breached fiduciary duties, and were not in the Plan's best interest — to ensure that State Street Bank's performance complied with the terms of the Plan Document and statutory standards, and met the needs of the Plan; and

B.      Failing to adequately monitor the performance of the New Waste Plan Trustee and investment manager, State Street Bank, in relation to its decision to have the Plan participate in the settlement of the Texas Securities Litigation — when they knew or should have known that State Street Bank's actions in this regard constituted an ERISA-prohibited transaction, breached fiduciary duties, and were not in the Plan's best interest — to ensure that State Street Bank's performance complied with the terms of the Plan Document and statutory standards, and met the needs of the Plan.

147.    As a proximate result of these fiduciary breaches, the Plan suffered substantial financial losses.

## COUNT SIX

**Claim for Relief under ERISA §406 Against Defendant State Street
Bank and Old Waste for Engaging in Prohibited Transactions in Connection with
the Settlement of the Illinois and Texas Securities Litigation**

148.    All previous averments are incorporated herein.

149.    Defendant State Street Bank, in connection with its actions and omissions in authorizing the New Waste Plan to file a Proof of Claim and Release in the Illinois Securities Litigation and the Texas Securities Litigation and to settle claims against Old Waste, a party-in-interest within the meaning of §3(14)(G) of ERISA, 29 U.S.C. §1002(14)(G), caused the New Waste Plan to engage in transactions that Defendants knew or should have known constituted a direct or indirect exchange of property (release of a *chose in action*) between the New Waste Plan and Old

Waste in violation of §406(a)(1)(A) of ERISA, 29 U.S.C. §1106(a)(1)(A).  Because the State Street Bank did not obtain the approval of the Secretary of Labor for these transactions, the prohibited exchanges are not exempt under §408(a)(1) of ERISA, 29 U.S.C. §1108(a).

150.   As a proximate result of these prohibited transactions, the Plan suffered substantial financial losses.

## COUNT SEVEN

**Claim for Relief under ERISA §405 against All Defendants (Co-fiduciary liability)**

151.   All previous averments are incorporated herein.

152.   Defendants Koenig, Tobecksen, Getz, Rooney, Buntrock, Old Waste, the Old Waste Board, the Individual Members of the Old Waste Board, the Individual Trustee Members of the Old Waste Administrative Committee, the Old Waste Administrative Committee, the New Waste Investment Committee and its individual members, and State Street Bank, by failing to comply with their specific fiduciary responsibilities under §404(a)(1) of ERISA, 29 U.S.C. §1104(a)(1), enabled their co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, failed to make reasonable efforts to remedy the breach.  Accordingly, Defendants Koenig, Getz, Rooney, Buntrock, Old Waste, the Old Waste Board, the Individual Members of the Old Waste Board, the Individual Trustee Members of the Old Waste Administrative Committee, the Old Waste Administrative Committee, the New Waste Investment Committee and its individual members, and State Street Bank, are each liable for the others' violations pursuant to §405(a)(2) and (3) of ERISA, 29 U.S.C. §1105(a)(2) and (3).

153.   As a result of breaching their fiduciary responsibilities, obligations, and duties as described in Counts One through Six, Defendants have caused the Old Waste Plan to suffer financial

loss for which they are jointly and severally liable, pursuant to §409(a) of ERISA, 29 U.S.C. §1109(a).

## CLASS ACTION ALLEGATIONS

154. Plaintiffs Harris, Howard, and Thornton, Sr. bring this class action in their representative capacities as former participants in the Old Waste Plan, on behalf of a class defined as follows: All participants in the Old Waste Plan and their beneficiaries for whose accounts the fiduciaries of the Old Waste Plan acquired Company Stock for the Company Stock Funds from January 1, 1990 until January 1, 1999, excluding defendants and their beneficiaries.

155. Plaintiffs seek certification pursuant to Fed.R.Civ.P. 23(b)(1)(a), 23(b)(1)(b), 23(b)(2), and/or 23(b)(3).

156. There are more than 30,000 persons in the class. It is so numerous that joinder of all members is impracticable.

157. Questions of fact and law are common to the class. Such common questions include:

A. Whether Defendants Koenig, Getz, Tobecksen, Rooney, and Buntrock knew or should have known of and/or engaged in accounting irregularities at Old Waste that failed to report the true income and revenues of Old Waste during the Class Period;

B. Whether, as a result of accounting irregularities engaged in by Old Waste's management, the price of Company Stock acquired for participants accounts, in the period 1990 through February 24, 1998, reflected more than adequate consideration;

C. Whether the price of Company Stock prevailing on the New York Stock Exchange in the period 1990 through February 24, 1998, exceeded fair market value;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.     Whether the shares of Company Stock acquired for participant accounts by the Old Waste Plan in the period 1990 through February 24, 1998, were acquired for greater than adequate consideration because the price was artificially inflated;

E.     Whether Defendants Koenig, Getz, and Tobecksen, and the Individual Trustee Members of the Old Waste Administrative Committee breached their fiduciary obligations to the Old Waste Plan by causing the Plan to continue to offer the Waste Management Stock Fund as an investment option for new investment of participant accounts at a time when Getz, Tobecksen, and Koenig knew or should have known that the price of Old Waste stock was inflated and that new shares were not a prudent Plan investment because Old Waste's financial statements did not reflect its true financial condition;

F.     Whether Defendants Koenig, Tobecksen, and Getz breached their fiduciary obligations to the Old Waste Plan by failing to disclose that Old Waste's accounting records did not reflect its true financial condition and that the price of Company Stock prevailing on the New York Stock Exchange did not represent fair market value and by causing the Plan to acquire shares of Company Stock for participant accounts at prices that exceeded fair market value and represented more than adequate consideration;

G.     Whether Defendants Buntrock, Rooney, Old Waste, the Old Waste Board, and the Individual Members of the Old Waste Board breached their fiduciary obligations to the Old Waste Plan by failing to monitor the actions of the Trustee Members of the Old Waste Administrative Committee;

H.     Whether Defendants Buntrock, Rooney, Old Waste, the Individual Members of the Old Waste Board and the Old Waste Board breached their fiduciary obligations to the Old Waste Plan by failing to prevent the Trustee Members of the Old Waste Administrative Committee from offering the Waste Management Stock Fund as an investment option for the new investment of participant accounts at a time when Buntrock, Rooney, Old Waste, the Individual Members of the Old Waste Board and the Old Waste Board, knew or should have known that new shares of Company Stock were inflated in price and were not a prudent investment for the Plan because Old Waste's financial statements did not report its true financial condition;

I.     Whether Defendants Buntrock, Rooney, Old Waste, the Individual Members of the Old Waste Board, and the Old Waste Board breached their fiduciary obligations to the Old Waste Plan by failing to communicate the information to the Trustee Members of the Old Waste Administrative Committee that was needed for the proper performance of their  duties and by failing to prevent the Old Waste Plan from acquiring shares of Company Stock for participant accounts at inflated prices which Buntrock, Rooney, Old Waste, the Individual Members of the Old Waste Board and the Old Waste Board, knew or should have known exceeded fair market value and represented more than adequate consideration;

J.     Whether Defendants Koenig, Getz, Tobecksen, Rooney, Buntrock, Old Waste, the Old Waste Board, the Individual Members of the Old Waste Board, the Old Waste Administrative Committee and the Trustee Members of the Old Waste Administrative Committee, by failing to comply with their specific fiduciary responsibilities under §404(a)(1) of ERISA, 29 U.S.C. §1104(a)(1), enabled their co-fiduciaries to commit

ERISA violations and, with knowledge of such breaches, failed to make reasonable efforts to remedy the breach and are each liable for the others' violations pursuant to §405(a)(2) and (3) of ERISA, 29 U.S.C. §1105(a)(2) and (3).

K.      Whether the Old Waste Plan and its participants and their beneficiaries suffered losses as a result of fiduciary breaches by the Old Waste Fiduciaries.

L.      Whether the Individual Old Waste Plan Trustees and Members of the Old Waste Administrative Committee, including Chappel and Holsten, and the Old Waste Administrative Committee, breached their fiduciary obligations to the Old Waste Plan by (i) failing to conduct an adequate fiduciary review to determine whether the Merger was prudent and in the best interest of the Old Waste Plan, (ii) concealing from Old Waste fiduciaries the facts of Old Waste's lack of due diligence which were material to the decision of whether the Plan and its participants should approve the Merger, and (iii) causing the Plan to approve or acquiesce in the corporate Merger.

M.      Whether State Street Bank breached its ERISA fiduciary obligations by failing to determine whether Old Waste fiduciaries had breached their fiduciary duties and whether ERISA claims could be asserted against the Old Waste fiduciaries with respect to their actions and omissions in connection with their acquisition of Old Waste stock at inflated prices;

N.      Whether State Street Bank breached its ERISA fiduciary obligations by executing an overbroad release in the Illinois Securities Litigation, which purportedly released ERISA fiduciary breach claims against Old Waste Plan fiduciaries in connection with the acquisition of Old Waste shares, without obtaining additional consideration.

O.     Whether State Street Bank breached its ERISA fiduciary obligations by failing

to determine whether former Old Waste fiduciaries had breached their fiduciary duties

in connection with the Merger and by failing to take appropriate steps to protect and

preserve such claims.

158.     Plaintiffs claims are typical of the claims of the class.  Plaintiffs have no interests antagonistic to the claims of the class.

159.     Plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs are committed to the vigorous representation of the class and have retained competent counsel experienced in the prosecution of complex and class action litigation, including ERISA litigation. Counsel have agreed to advance the costs of the litigation contingent upon the outcome.

160.     Defendants have acted on grounds generally applicable to the Class, thereby justifying equitable relief for the class as a whole.

161.     Plaintiffs are unaware of any other pending litigation against the Defendants involving the breach of fiduciary duty claims asserted in this Class Action Complaint.

162.     Because of the nature of the claims, involving the liability of fiduciaries for their breach of duties commonly owed to all members of the class, no individual class member has an interest in individually controlling the prosecution of his or her claim.

163.     Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the class would create the possibility of inconsistent adjudications which would establish incompatible standards of conduct for the defendant fiduciaries with respect to their obligations under the Plans.

164.     The prosecution of separate actions by individual class members would create the possibility of inconsistent adjudications concerning the legal standards of conduct for fiduciaries

1  under these Plans, which could, as a practical matter, be dispositive of the interests of the other

2  members or could impede their ability to protect their interests.

3      165.    A class action is superior to other methods for the fair and efficient adjudication of

4

5  this controversy.

6      WHEREFORE, the Plaintiffs pray that this Court:

7  (1)  Certify this action as a class action brought pursuant to Fed.R.Civ.P. 23(b)(1)(a), 23(b)(1)(b),

8      23(b)(2), and/or 23(b)(3), certify Plaintiffs as the class representatives, and approve the

9

10     undersigned attorneys as attorneys for the class;

11 (2)  Grant judgment in Plaintiffs favor for breach of fiduciary duty and/or co-fiduciary breach of

12     duty against all Defendants;

13 (3)  Order the Defendants to restore to the New Waste Plan all losses occasioned by their breaches

14     of fiduciary duties, as herein alleged;

15

16 (4)  Order appropriate relief to correct the prohibited transactions the Defendants engaged in, as

17     alleged above;

18 (5)  Award Plaintiffs their reasonable attorneys' fees, costs and expenses; and

19 (6)  Grant such other equitable and legal relief as the Court deems just.

20     Dated: September 18, 2003

21

22                Respectfully submitted,

23

24     
       By:

25

26     J. Brian McTigue (D.C. Bar No. 475904)
       Bruce F. Rinaldi (D.C. Bar No.455187)
27     **McTIGUE LAW FIRM**
       5513 Connecticut Avenue, Suite 220
28     Washington, DC  20015

Tel: 202-364-6900
Fax: 202-364-9960


Ellen M. Doyle (admitted *pro hac vice*)
James A. Moore
**MALAKOFF DOYLE & FINBERG**
437 Grant Street
Pittsburgh, PA 15219
Tel: 412-281-8400
Fax: 412-281-3262


R. Dennis Osterman (D.C. Bar No. 951822)
**R. DENNIS OSTERMAN, PLLC**
1901 Pennsylvania Avenue, N.W.
Suite 1005
Washington, DC  20006
Tel:    (202) 861-4297
Fax:    (202) 463-2091


**COUNSEL FOR PLAINTIFFS WILLIAM S. HARRIS, REGINALD E. HOWARD, and PETER M. THORNTON, SR.**