**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
WILLIAM S. HARRIS, et al.,       :
                                 :
          Plaintiffs,            :
                                 :
     v.                          :    Civil Action No. 02-618 (GK)
                                 :
JAMES E. KOENIG, et al.,         :
                                 :
          Defendants.            :
```

<u>MEMORANDUM OPINION</u>

Plaintiffs, William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr., are former employees of Waste Management Holdings, Inc. ("Old Waste" or "the Company")[1] and participants in the Waste Management Profit Sharing and Savings Plan ("Old Waste Plan" or "Plan"). They bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., on behalf of the approximately 30,000 Plan participants seeking to recoup losses suffered by the Plan related to the purchase of Old Waste common stock ("Company Stock") between January 1, 1990 and July 15, 2002 at prices "artificially inflated" by material undisclosed information about Old Waste's "true financial condition." Third Am. Compl. ¶ 1. Plaintiffs allege three separate claims periods -- (1) January 1, 1990 through

---

[1] "At all relevant times, Old Waste operated in the District of Columbia and provided, through its subsidiaries, integrated solid waste and hazardous waste management services, energy recovery services, and environmental technologies, engineering and consulting services." Third Am. Compl. ¶ 20.

February 24, 1998 ("First Claim Period"); (2) July 15, 1999 through December 1, 1999 ("Second Claim Period"); and (3) February 7, 2002 through July 15, 2002 ("Third Claim Period") -- and separate ERISA violations during each of those periods.  Id.

Defendants are the "Old Waste Fiduciaries," which include Old Waste (the Plan's sponsor); the Old Waste executives who allegedly administered the Old Waste Plan, including the Waste Management, Inc. Profit Sharing and Savings Plan Investment Committee ("Old Waste Investment Committee"); the individual Trustee Members of the Old Waste Investment Committee;[2] the Waste Management, Inc. Profit Sharing and Savings Plan Administrative Committee ("Old Waste Administrative Committee"); the individual Trustee Members of the Old Waste Administrative Committee;[3] the Old Waste Board of

---

[2] The individual Trustee Members of the Old Waste Investment Committee include James E. Koenig, Herbert A. Getz, Bruce D. Tobecksen, Joseph M. Holsten, Edward C. Kalebich, Thomas R. Frank, and Peter H. Huizenga.

[3] The individual Trustee Members of the Old Waste Administrative Committee include J. Steven Bergerson, William P. Hulligan, John J. Machota, and D.P. Payne.

Directors; the individual Members of the Old Waste Board of Directors;[4] and DOES 1-15.[5]

Defendants are also the "New Waste Fiduciaries," which include the Waste Management Retirement Savings Plan ("New Waste Plan"); and the New Waste executives who allegedly administered the New Waste Plan, including the Investment Committee of the Waste Management Retirement Savings Plan ("New Waste Investment Committee"); the individual Trustee Members of the New Waste Investment Committee;[6] the State Street Bank and Trust Company ("State Street"); and DOES 16-30.[7]

This matter is before the Court on Defendants' Omnibus Motion to Dismiss the Third Amended Complaint [**#186**] ("Defs.' Omnibus Mot.") and State Street Bank and Trust Company's Motion to Dismiss

---

[4] The individual Members of the Old Waste Board of Directors include Dean L. Buntrock, Phillip B. Rooney, Robert S. Miller, John C. Pope, James R. Peterson, H. Jesse Arnelle, James Edwards, Donald F. Flynn, Roderick M. Hills, Steven G. Rothmeier, Alexander B. Trowbridge, Peer Pederson, Jerry E. Dempsey, Howard H. Baker, Jr., Dr. Pastora San Juan Cafferty, and Paul M. Montrone.

[5] DOES 1-15 are fiduciaries of the Old Waste Plan whose exact identities will, according to Plaintiffs, be ascertained through discovery.

[6] The individual Trustee Members of the New Waste Investment Committee include Patricia McCann, Susan J. Piller, Ron Jones, Bob Simpson, and Don Chappel.

[7] DOES 16-30 are fiduciaries of the New Waste Plan whose exact identities will, according to Plaintiffs, be ascertained through discovery.

the Third Amended Complaint [**#183**] ("State Street's Mot.").[8]  Upon

consideration of the Motions, Oppositions, Replies, and the entire

record herein, and for the reasons stated below, Defendants'

Omnibus Motion to Dismiss is **granted in part** and **denied in part** and

State Street's Motion to Dismiss is **denied**.

I.    **BACKGROUND**[9]

    A.    **Factual History**

    The Old Waste Plan is an "individual account" or "defined

contribution" employee pension plan.  See Defs.' Ex. 22 (1999

Summary Plan Description) at 25.  An individual account or defined

contribution plan is "one where employees and employers may

contribute to the plan, and the employer's contribution is fixed

and the employee receives whatever level of benefits the amount

contributed on his behalf will provide."  Hughes Aircraft Co. v.

Jacobson, 525 U.S. 432, 439 (1999) (internal quotations omitted).

See 29 U.S.C. § 1002(34) (an individual account or defined

contribution plan "provides for an individual account for each

---

[8]    State Street joined in the Omnibus Motion, in part, and
filed its own separate Motion presenting additional grounds for
dismissal.

[9] For purposes of ruling on a motion to dismiss, the factual
allegations of the complaint must be presumed true and liberally
construed in favor of the plaintiff.  Shear v. Nat'l Rifle Ass'n of
Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).   Therefore, the facts
set forth herein are taken from Plaintiffs' Third Amended Complaint
or from the undisputed facts presented in the parties' briefs.

participant and for benefits based solely upon the amount contributed to the participant's account").

Old Waste Plan participants may invest in any of the Plan's ten investment options, including the Waste Management Inc., Stock Fund which is invested primarily in Company Stock ("Stock Fund") as well as cash.  See Defs.' Omnibus Mot., Ex. 22 (1999 Summary Plan Description at 3, 11).  See Third Am. Compl. ¶ 40.

On January 16, 1998, Old Waste and Waste Services, Inc., merged to become New Waste.  On January 1, 1999, the Old Waste Plan was merged with the USA Waste Services, Inc. Employee's Savings Plan to become the Waste Management Retirement Savings Plan ("New Waste Plan").  On the same date, State Street was appointed to serve as the Trustee of the New Waste Plan.  Effective February 1, 1999, the New Waste Investment Committee appointed State Street to serve as the Investment Manager for Company Stock assets.  See Third Am. Compl. ¶¶ 47, 50.  Pursuant to the terms of the Investment Manager Agreement between State Street and the New Waste Investment Committee, State Street had "full discretionary authority to manage Company Stock assets."  Id. ¶ 50.

The State Street appointments were made after the July 24, 1998 filing of the Complaint in the Illinois Securities Litigation, discussed infra.

### 1.   The Illinois Securities Litigation

On October 10, 1997, Old Waste announced in a press release that the prior reports of its earnings from continuing operations for the third quarter of 1996 were overstated.  See id. ¶ 88.  It also cautioned "that earnings for the third quarter of 1997 were expected to be below analysts' expectations and that [Old Waste's] fourth Quarter 1997 results might be reduced by a charge to income that could be material to its results of operations for the year." See id.

By December 18, 1997, various purchasers of Old Waste securities had filed fourteen securities fraud class actions in the United States District Court for the Northern District of Illinois ("Illinois district court") alleging, in relevant part, that Old Waste, certain of its officers and directors and its auditor, Arthur Andersen, LLP, had violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.  See In re Waste Mgmt., Inc. Sec. Litig., CA 97-7709 (N.D. Ill.) ("Illinois Securities Litigation").

On February 24, 1998, Old Waste announced that it was restating its financial statements for 1991 and prior periods, including the periods 1992 through 1996, and the first three quarters of 1997 ("Restatement").  It also admitted that prior to 1992 and continuing through the first three quarters of 1997, it

had materially overstated its reported income by $1.43 billion. See Third Am. Compl. ¶ 89.

On July 24, 1998, the Illinois Securities Litigation plaintiffs filed a consolidated amended complaint claiming that the Old Waste Fiduciaries "had engaged in potential breaches of fiduciary obligations with respect to the Old Waste Plan by causing it to acquire shares of Old Waste Stock between January 1, 1990 [and] February 24, 1998, when they knew that such stock was not a prudent Plan investment because its price exceeded fair market value." Id. ¶ 110.

As already noted, on January 1, 1999, State Street Bank was appointed Trustee of the New Waste Plan, after its merger with the Old Waste Plan, and on February 1, 1999, State Street was appointed Investment Manager for Company Stock assets.

On July 15, 1999, the Illinois district court entered a Preliminary Approval Order approving a proposed settlement and provisionally certifying a class, for settlement purposes only, of all persons (other than defendants and their affiliates) who had acquired Company Stock between November 3, 1994 and February 24, 1998. See id. ¶ 111. Pursuant to the Preliminary Approval Order, "a Notice of Pendency and Proposed Settlement of Class Action, dated July 20, 1999 (the 'Illinois Notice'), was sent to [all] members of the [Illinois settlement class], including the Plan and its fiduciaries." Id. The Illinois Notice described the scope of

the release that would be given by members of the Illinois settlement class in exchange for the settlement consideration, and advised class members of their right to object to or opt out of the proposed settlement by September 2, 1999.  See id.

On September 17, 1999, the Illinois district court entered a Final Judgment and Order of Dismissal endorsing the proposed settlement ("Illinois Securities Settlement").  See id. ¶ 116.

### 2.   The Texas Securities Litigation

On July 6, 1999, New Waste "issued a press release reporting a $250 million projected revenue shortfall for the second quarter of 1999 and sharply lower earnings." Id. ¶ 102.  On November 9, 1999, after a subsequent review of its books and records, New Waste announced after-tax charges and adjustments of $1.23 billion.  See id. ¶ 105.

On July 7, 1999, the first of over thirty securities class action complaints was filed against New Waste and certain of its officers and directors in In re Waste Mgmt., Inc. Sec. Litig., H-99-2183 (S.D. Texas), in the United States District Court for the Southern District of Texas ("Texas district court") ("Texas Securities Litigation").  See id. ¶ 125.  According to Plaintiffs, the complaint placed State Street on notice that "senior management of New Waste had engaged in alleged securities violations in connection with the [July 1998] Merger as a result of public representations they made regarding New Waste's competitive

position, its cash flow from operations and the successful integration of Old Waste and USA Waste." Id. ¶ 125.

On July 14, 2000, the plaintiffs in the Texas Securities Litigation filed their amended consolidated class action complaint. According to Plaintiffs, that filing placed State Street on notice that former Old Waste fiduciaries had engaged in potential breaches of fiduciary duties with respect to the Old Waste Plan including "concealing from other Old Waste Plan Committees and participants the fact that Old Waste had not done adequate due diligence of the proposed corporate Merger, [had] not conduct[ed] a prudency review of the proposed Merger themselves, and caus[ed] the Plan to acquiesce in the Merger, which was not in the best interest[s] of the Plan and its participants." Id. ¶ 127.

On February 7, 2002, the Texas district court entered a Preliminary Approval Order approving a proposed settlement, and provisionally certifying a class, for settlement purposes only, of all persons (other than defendants and their affiliates) who had acquired Company Stock between June 11, 1998 and November 9, 1999. See id. ¶ 128. Pursuant to the Preliminary Approval Order, "a Notice of Proposed Class Action Settlement (the 'Texas Notice') was sent to members of the [Texas settlement class], including the Plan and its fiduciaries[.]" Id. The Texas Notice described the scope of the release that would be given by members of the Texas settlement class in exchange for the settlement consideration,

advised class members of their right to object to or opt out of the proposed settlement by April 19, 2002.  It also required a class member to submit a Proof of Claim and Release on or before July 15, 2002 in order for a class member to participate in the settlement. See id.

On April 29, 2002, the Texas district court entered a Final Judgment and Order endorsing the proposed settlement ("Texas Securities Settlement").  On July 15, 2002, State Street submitted a Proof of Claim and Release on behalf of the Plan.  See id. ¶ 140.

**B.   The ERISA Litigation in the District of Columbia**

On April 1, 2002, Plaintiffs filed the instant action in this Court.

**1.   The Illinois Motion to Enforce**

On June 7, 2002, Old Waste filed a motion to enforce the Illinois Securities Settlement in the Illinois district court.  In the motion, it argued that Plaintiffs in the instant action were barred from prosecuting any ERISA claims relating to or arising out of Old Waste's February 24, 1998 Restatement because (1) the Old Waste Plan had released all claims relating to the Restatement on behalf of itself and Plan participants; and (2) the Old Waste Plan and its participants were barred by the Illinois Securities Settlement from asserting any released claims in this or any other action.  See Defs.' Omnibus Mot. Ex. 11.  On December 3, 2002, this Court granted Defendants' motion for a stay of proceedings in the

instant action pending a ruling by the Illinois district court on their motion to enforce.

On March 11, 2003, the Illinois district court denied Defendants' motion to enforce on the ground that the alleged class period in the instant action spans a broader period than the November 3, 1994 through February 24, 1998 period at issue in the Illinois Securities Litigation.  It explained that although it could have interpreted and applied the relevant terms of the Old Waste Plan "in order to determine whether a release from liability for securities law violations encompasses potential ERISA liability," its resolution of that matter would not relieve this Court of its obligation to make that same assessment, "because the time span of the D.C. suit exceeds that covered by" the Illinois Securities Settlement.  Defs.' Omnibus Mot., Ex. 12 at 2-3.

### 2.   The Texas Settlement Proceedings

On April 19, 2002, Plaintiff Harris, who was not a member of the Texas settlement class, objected to the proposed settlement of the Texas Securities Litigation on the ground that the New Waste Plan's decision to participate in the settlement constituted a breach of ERISA-imposed duties.  On April 29, 2002, Harris filed a motion to intervene, which the Texas district court denied.  See Defs.' Ex. 14.  Following the Texas district court's approval of the Texas Securities Settlement, Harris filed a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment.

Thereafter, "counsel for Lead Plaintiff and counsel for Harris, after arm's-length negotiations regarding issues relating to Harris's objection, . . . reached a Stipulation of Settlement Modifying Plan of Allocation," which the Texas district court approved ("Texas Amending Order"). Defs.' Omnibus Mot., Ex. 16 at 4. Under the Texas Amending Order, the original Plan of Allocation entered in connection with the Texas Securities Settlement was modified "so that $4.5 million (less Harris's Counsel's attorneys fees, costs and expenses) [was] set aside from the Net Settlement Fund and . . . allocated to the Waste Management Retirement Savings Plan [the New Waste Plan], such allocation being in addition to the approximately $2 million that the participants of the Plan would otherwise be entitled to receive under the Plan of Allocation." Id. at 5-6.

### 3. Plaintiffs' Claims in the Instant Litigation

On April 26, 2002, Plaintiffs in the instant action filed their First Amended Complaint. On October 24, 2003, they filed their Second Amended Complaint. On November 12, 2003, they filed their Substitute Second Amended Complaint. On February 7, 2005, they filed their Third (and final) Amended Complaint.

The conduct alleged in the first five Counts of the Third Amended Complaint occurred during the First Claim Period (January 1, 1990 through February 24, 1998) and arose out of alleged accounting irregularities engaged in by the Old Waste Fiduciaries.

According to Plaintiffs, during the First Claim Period, the Old Waste Fiduciaries caused or allowed the Old Waste Plan to acquire approximately $128 million worth of unit shares in the Stock Fund, which is invested primarily in Company Stock.  They argue that the Old Waste Fiduciaries "knew or should have known that [Company Stock] was an imprudent pension plan investment because the Old Waste Fiduciaries participated in, knew of, or should have known of Old Waste's massive and widespread accounting irregularities during the First Claim Period, which caused [Company Stock] to be significantly overvalued.  When the full extent of Old Waste's earnings misstatements was revealed, the Plan lost tens of millions of dollars on its investment in the Stock Fund."  Pls.' Opp'n to Defs.' Omnibus Mot. at 3-4.

In Count I, Plaintiffs claim that the Old Waste Investment Committee and its individual Trustee Members breached their fiduciary duties of loyalty and prudence under ERISA Section 404, 29 U.S.C. § 1104, by (1) failing to conduct an adequate fiduciary review to determine whether the Stock Fund was a prudent investment; (2) causing the Old Waste Plan to maintain the Stock Fund as a Plan investment when they knew the unit shares were inflated in value and not a prudent investment; (3) causing the Old Waste Plan to make new investments in unit shares of the Stock Fund when they knew the unit shares were inflated in value and not a prudent investment; and (4) failing to take steps to prevent losses

in the Stock Fund resulting from the investment of Plan participants' contributions to the Stock Fund.

In Count II, Plaintiffs claim that the Old Waste Administrative Committee and its individual Trustee Members breached their fiduciary duty of loyalty under ERISA Section 404 by (1) failing to adequately inform Plan participants of the true risks of investing in the Stock Fund; (2) conveying inaccurate information about the risks associated with investing in the Stock Fund; (3) concealing from Plan participants facts regarding Old Waste's true financial condition; and (4) failing to disclose to Plan participants that purchases of unit shares in the Stock Fund and of Company Stock by the Stock Fund were at inflated prices.

In Count III, Plaintiffs allege that, to the extent Old Waste, the Old Waste Committees, and their individual Trustee Members contributed shares of Company Stock to the Old Waste Plan which were artificially inflated in value, the Plan acquired such shares for more than fair market value, and therefore, such contributions constituted prohibited exchanges of stock between the Plan and Old Waste, a party in interest with respect to the Plan, in violation of ERISA Section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).

In Count IV, Plaintiffs maintain that Old Waste, the Old Waste Board of Directors, and its individual Members breached their fiduciary duties of loyalty and prudence under ERISA Section 404 by (1) failing to adequately monitor the performance of the Old Waste

Committees; (2) failing to prevent the Old Waste Investment Committee from offering the Stock Fund as an investment option when they knew or should have known that it was not a prudent investment because Old Waste's financial statements did not report Old Waste's true financial condition; (3) failing to prevent the Old Waste Plan from engaging in prohibited transactions under ERISA involving Company Stock and unit shares of the Stock Fund; and (4) failing to provide the individual Trustee Members of the Old Waste Committees with accurate information regarding Old Waste's accounting irregularities.

In Count V, Plaintiffs contend that the Old Waste Fiduciaries further breached their fiduciary obligations under ERISA Sections 405(a)(2) and (3), 29 U.S.C. §§ 1105(a)(2) and (3), by enabling their co-fiduciaries to commit violations of ERISA as described in Counts I-IV and, with knowledge of such breaches, failing to make reasonable efforts to remedy them.

The next four Counts (VI-IX) of the Third Amended Complaint allege fiduciary breaches occurring in the Second Claim Period (July 15, 1999 through December 1, 1999) against Old Waste and the New Waste Fiduciaries, which include State Street. According to Plaintiffs, during the Second Claim Period, these Defendants "caused or permitted the Old Waste Plan to participate in the settlement of a securities class action in Illinois federal court that, according to Defendants, released all of the Plan's claims,

including ERISA claims, arising from acquisitions of [Company Stock] during part of the First Claim Period.  In so doing, Old Waste and the New Waste Fiduciaries breached their duties of loyalty and prudence and engaged in a prohibited transaction under ERISA by failing to conduct an adequate review and evaluation of the fairness of the Illinois settlement to the Old Waste Plan in light of the Plan's unique ERISA claims and the fact that the vast majority of the Plan's purchase transactions in the [Stock Fund] were not open-market transactions covered by the securities claims."  Pls.' Opp'n to Defs.' Omnibus Mot. at 3.

In Count VI, Plaintiffs claim that State Street breached its fiduciary duties of loyalty and prudence under ERISA Section 404 by failing to adequately investigate and preserve the fiduciary breach claims alleged in Counts I through V. According to Plaintiffs, "[i]nstead of protecting those potential ERISA claims, which might have been asserted against the former fiduciaries of the Plan, State Street Bank caused the claims to be released in the Illinois Securities Litigation without investigating the value or viability of those claims, without determining whether the settlement was fair to the Plan and without obtaining consideration for the release of the Plan's unique ERISA claims."  Pls.' Opp'n to State Street's Mot. at 15.

In Count VII, Plaintiffs allege that Old Waste and State Street, by approving the Plan's participation in the Illinois

Securities Settlement, caused the New Waste Plan to engage in a prohibited exchange with Old Waste of securities and ERISA claims that the Plan had against Old Waste and its officers and directors, all of whom were parties in interest with respect to the Plan, in violation of ERISA Section 406(a)(1)(A). They claim that Old Waste is also liable for this violation because it was the party in interest which engaged in the prohibited exchange with the pension plan it sponsored.

In Count VIII, Plaintiffs claim that the New Waste Investment Committee and its individual Trustee Members breached their fiduciary duties of prudence and loyalty under ERISA Section 404 by failing to adequately monitor the performance of State Street in connection with its decision to have the Plan participate in the Illinois Securities Settlement.

In Count IX, Plaintiffs contend that State Street, Old Waste, the New Waste Investment Committee, and its individual Trustee Members further breached their fiduciary obligations under ERISA Sections 405(a)(2) and (3) by enabling their co-fiduciaries to commit violations of ERISA as described in Counts VI-VIII and, with knowledge of such breaches, failing to make reasonable efforts to remedy such breaches.

In Count X of the Third Amended Complaint, Plaintiffs allege fiduciary breaches occurring in the Third Claim Period (February 7, 2002 through July 15, 2002) against State Street. According to

Plaintiffs, State Street breached its fiduciary duty of care and loyalty under ERISA Section 404 by approving the Plan's participation in the Texas Securities Settlement.  According to Plaintiffs, State Street failed to conduct an adequate review of potential fiduciary breach claims that might have been asserted against the Old Waste Fiduciaries and released such claims in the Texas Securities Settlement without obtaining adequate consideration.

Plaintiffs seek (1) certification of this action as a class action; (2) judgment in their favor for breach of fiduciary duty and/or co-fiduciary breach of duty against all Defendants; (3) an order requiring Defendants to restore to the New Waste Plan all losses occasioned by their breach of fiduciary duty and/or co-fiduciary breach of duty; (4) an order for appropriate relief to correct the prohibited transactions Defendants engaged in; (5) an order for appropriate relief to enjoin the acts and practices of Defendants alleged herein which violate ERISA; and (6) reasonable attorneys' fees and costs.

On March 31, 2005, Defendants filed the instant Omnibus Motion to Dismiss.  On that same day, State Street filed the instant Motion to Dismiss.

## II.  STANDARD OF REVIEW

"A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely

granted.    For   the   purposes   of   such   a   motion,   the   factual allegations   of   the   complaint   must   be   taken   as   true,   and   <u>any</u> ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." <u>Doe v. United States Dep't of   Justice</u>,   753   F.2d   1092,   1102   (D.C.   Cir.   1985)   (internal citations omitted) (emphasis in original).

To survive a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1974 (2007).   "[O]nce a claim has been stated adequately,   it   may   be   supported   by   showing   any   set   of   facts consistent with the allegations in the complaint." <u>Id.</u> at 1969.

Under   the   standard   set   out   in   <u>Twombly</u>,   a   "court   deciding   a motion to dismiss must not make any judgment about the probability of the plaintiff's success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from   the   facts   alleged." <u>Aktieselskabet AF 21. November 2001 v. Fame   Jeans   Inc.</u>,   525   F.3d   8,   17   (D.C.   Cir.   2008)   (internal quotation marks and citations omitted).

## III.  ANALYSIS

### A.   Plaintiffs Have Stated a Valid Claim under ERISA Section 502(a)(2) for Plan-Wide Relief

Plaintiffs' Third Amended Complaint states that this action was brought "pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to obtain appropriate relief on behalf of the plan," Third Am. Compl. ¶ 17, and seeks a judgment that will "restore to the New Waste Plan all losses occasioned by [Defendants'] breaches of fiduciary duties." Id. ¶ 211(3).

Defendants contend that, despite Plaintiffs' contrary claims, this suit concerns individualized relief for the particularized harm suffered by a subset of Plan participants and does not seek to vindicate the rights or interests of the Plan as a whole. See Defs.' Omnibus Mot. at 42. Defendants specifically cite to Plaintiffs' request for relief to be "allocated to the accounts of participants of the Old Waste Plan who invested in Company Stock during the Class Period." Third Am. Compl. ¶ 30. According to Defendants, "[b]ecause [Plaintiffs] seek relief only on behalf of those participants who elected to invest in the Stock Fund, and because Plaintiffs' requested relief would result in no benefit for those Plan participants who did not elect to invest in the Stock Fund, Plaintiffs are not seeking Plan-wide relief. Accordingly, ERISA § 502(a)(2) provides them with no basis to bring their claims." Defs.' Omnibus Mot. at 46.

ERISA Section 502(a)(2) provides that "[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [ERISA Section 409]." 29 U.S.C. § 1132(a)(2).  ERISA Section 409 states, in relevant part, that a fiduciary who breaches ERISA duties is "personally liable to make good to such plan any losses to the plan resulting from each such breach[.]"  29 U.S.C. § 1109(a).  In Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985), the Supreme Court interpreted the language of Section 409 to permit only those actions in which the sought-after recovery benefits the plan as a whole, as distinguished from those which benefit an individual beneficiary.[10]  Therefore, any recovery for a violation of Sections 409 and 502(a)(2) "must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries." Horan v. Kaiser Steel Ret. Plan, 947 F.2d 1412, 1418 (9th Cir. 1991) (citing Russell, 473 U.S. at 140); Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 863 (7th Cir. 1997) (same); see Kuper v. Iovenko, 66 F.3d 1447, 1452-53 (6th Cir. 1995) (same); Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1988) (same).

---

[10] See Russell, 473 U.S. at 140 ("[R]ecovery for a violation of § 409 inures to the benefit of the plan as a whole."); id. at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned . . . with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."); see also Varity Corp. v. Howe, 516 U.S. 489, 515 (1996) (noting that plaintiff could not proceed under ERISA Section 502(a)(2) because "that provision, tied to § 409, does not provide a remedy for individual beneficiaries").

For the following reasons, the Court concludes that Plaintiffs are suing on behalf of the Plan as a whole, and thus meet the requirements of ERISA Sections 409 and 502(a)(2). First, the entire Plan is in fact impacted by the alleged fiduciary and co-fiduciary breaches because all Plan beneficiaries have Company Stock. Plan beneficiaries acquire their assets either through their individual investments in the Stock Fund or through the Company's matching contributions, which consist primarily of Company Stock. Second, most of the Plan's assets are composed of Company Stock. Defendants allegedly retained Company Stock as an investment alternative even though they knew that the Company's financial status was not accurately reflected in its financial statements.[11] Thus, all Plan members would benefit if Plaintiffs

---

[11] Defendants cite <u>Milofsky v. Am. Airlines, Inc.</u>, 404 F.3d 338 (5th Cir. 2005) and <u>In re Schering-Plough Corp. ERISA Litig.</u>,387 F. Supp. 2d 392 (D.N.J. 2004) in support of their claim that Plaintiffs are seeking individual relief, rather than relief on behalf of the Plan. Both cases are distinguishable. In <u>Milofsky</u>, the plaintiffs did not seek relief on behalf of the plan, and there was no indication that the entire plan was impacted. In this case, Old Waste made matching contributions in the Stock Fund on behalf of every participant in the Old Waste Plan. <u>See In re Syncor ERISA Litig.</u>, 351 F.Supp.2d 970, 990 (C.D. Cal. 2004) (distinguishing <u>Milofsky</u> on this ground); <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 228 F.R.D. 541, 557-58 (S.D. Tex. 2005) (distinguishing <u>Milofsky</u> and finding that, under circumstances similar to those of the instant case, the relief sought would benefit the plan). As to <u>In re Schering-Plough Corp.</u>, the company, unlike Old Waste, did not make matching contributions to its plan in the form of company stock. <u>See In re Schering-Plough Corp. ERISA Litig.</u>, 387 F. Supp. 2d at 400 (noting that this is "critical" in assessing whether the relief sought would benefit the plan).

succeed on this claim.

Accordingly, Plaintiffs have stated a valid claim under ERISA

Section 502(a)(2) for Plan-wide relief.[12]

**B.   Plaintiffs' First Period Claims (Counts I-V) Are Time-Barred under ERISA Section 413**

Defendants move to dismiss Counts I - V of Plaintiffs' Third

Amended Complaint on the ground that Plaintiffs' First Period

claims, which are alleged to have occurred between January 1, 1990

and February 24, 1998, are time-barred.  The limitation period for

ERISA breach of fiduciary duty claims is governed by ERISA Section

413, 29 U.S.C. § 1113, which provides, in pertinent part:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
>
> (1)   six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2)   three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

---

[12] Because the instant action may be brought to recover Plan losses under ERISA Section 502(a)(2), it is unnecessary for the Court to address Defendants' argument that ERISA Section 502(a)(3) provides no basis for Plaintiffs to obtain the relief they seek.

> ### 1. ERISA's three-year limitations period applies to Plaintiffs' First Period claims because Plaintiffs had "actual knowledge of the breach or violation"

Defendants argue that all of Plaintiffs' First Period claims are time-barred under ERISA's three-year limitations period because Plaintiffs had "actual knowledge of the breach or violation" as of February 24, 1998 (i.e., more than three years before they filed the instant action on April 1, 2002). In support of this claim, Defendants point out that Plaintiffs have acknowledged that "[t]he full extent of Old Waste's financial problems" was revealed on February 24, 1998 "at which time Old Waste issued a press release reporting [its] financial results for the fourth quarter and full year 1997, which disclosed special charges and adjustments to expenses in the fourth quarter, and restatements of prior period earnings for 1992 through 1996 and the first three quarters of 1997." Third Am. Compl. ¶ 89.

There is substantial case law from other circuits discussing the precise meaning of the phrase "actual knowledge" in Section 413(2).[13] While all the circuits differ somewhat in their detailed

---

[13]    In <u>Fink v. National Savings & Trust Co.</u>, 772 F.2d 951, 956-58 (D.C. Cir. 1985), our Court of Appeals considered an earlier and substantially different version of ERISA Section 413.  More recently, two judges in this District have had an opportunity to address the issue of "actual knowledge" under the present statute. <u>See</u> <u>Walker v. Pharmaceutical Research and Manufacturers of America</u>, 461 F. Supp.2d 52, 59-60 (D.D.C. 2006); <u>Larson v. Northrop Corp.</u>, 1992 WL 24970, *4 (D.D.C. Mar. 30, 1992), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 21 F.3d 1164 (D.C. Cir. 1994).

analyses of the phrase,[14] the Court concludes that the facts alleged in this case clearly establish, under any of the definitions of "actual knowledge," that Plaintiff did in fact have "actual knowledge" of sufficient facts to establish the existence of a violation of ERISA more than three years before they filed the instant action on April 1, 2002.

In the instant case, as Defendants correctly point out, as of February 24, 1998, the day Old Waste publicly announced its restatement of prior period earnings, Plaintiffs "had actual

---

[14] For example, in the Third and Fifth Circuits, "'actual knowledge of a breach or violation' requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists[.]" Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992); see Reich v. Lancaster, 55 F.3d 1034, 1057 (5th Cir. 1995) (adopting and applying the Third Circuit's definition of "actual knowledge").  Under this approach, sometimes referred to as the "legal claims" approach, it must established that a plaintiff actually knew not only of the events that occurred but also that those events supported a claim of breach of fiduciary duty or violation under ERISA.

In the Sixth, Seventh, Ninth, and Eleventh Circuits, "actual knowledge" requires knowledge only of the underlying facts that form the basis for the claim.  Under this approach, sometimes referred to as the "underlying facts" approach, "[t]he relevant knowledge for triggering the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation. Consequently, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality."  Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992) (emphasis in original); see Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003) ("'actual knowledge' requires only knowledge of all the relevant facts, not that the facts establish a cognizable legal claim under ERISA") (internal citations omitted); Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985) (same); Brock v. Nellis, 809 F.2d 753, 755 (11th Cir. 1987) (same).

knowledge of all of the essential facts necessary to bring their First Period claims." Defs.' Omnibus Mot. at 28. As of that date, Plaintiffs knew that "(a) they had acquired their shares of [Company Stock] through the Plan; (b) the price at which they had acquired their stock allegedly had been 'artificially inflated' by material undisclosed information about the Company's 'true financial condition' and widespread 'accounting irregularities;' (c) Plan fiduciaries either had failed to discover or to disclose such information to participants prior to February 24, 1998; and (d) [they] allegedly were damaged by the non-disclosures." Id. at 28-29. As Plaintiffs themselves admit, "[b]ased upon the information set out in the restated financial statements," it was clear that "the shares of Company Stock acquired by the predecessor Old Waste Plan between 1990 [and] February 24, 1998, had been acquired by the Old Waste Plan Committees and the Individual Old Waste Plan Trustees at inflated prices exceeding fair market value." Third Am. Compl. ¶ 109.

Plaintiffs' First Period claims are, therefore, time-barred under ERISA's three-year limitations period because Plaintiffs had "actual knowledge of the breach or violation" more than three years before they filed the instant action on April 1, 2002.[15]

_____

[15] Since the Court concludes that Plaintiffs' First Period claims are subject to ERISA's three-year limitations period because Plaintiffs had "actual knowledge of the breach or violation," it is unnecessary to address Defendants' alternative argument that those
(continued...)

### 2. Plaintiffs' allegations of "fraud or concealment" are insufficient to invoke ERISA's six-year limitations period

Plaintiffs claim that even if their First Period claims are time-barred under ERISA's three-year limitations period, that limitation period is tolled in cases such as this "where Plaintiffs have alleged 'fraudulent concealment.'" Pls.' Opp'n to Defs.' Omnibus Mot. at 53. "[T]he fraudulent concealment doctrine . . . requires that the defendant engage in <u>active concealment</u> -- it must undertake some 'trick or contrivance' to 'exclude suspicion and prevent inquiry.' Such concealment must rise to something 'more than merely a failure to disclose.'" <u>Larson</u>, 21 F.3d at 1174 (emphasis in original) (quoting <u>Shaefer v. Arkansas Med. Soc'y and Tr. of the Arkansas Med. Soc'y Pension Trust</u>, 853 F.2d 1487, 1491 (8th Cir. 1988) (internal citation omitted)). <u>See</u> <u>Shaefer</u>, 853 F.2d at 1492 ("failure to investigate adequately and relay warnings . . . does not rise to the level of active concealment, which is more than merely a failure to disclose") (citing <u>Hobson v. Wilson</u>, 737 F.2d 1, 33-34 & nn.102-03 (D.C. Cir. 1982)); <u>Martin</u>, 966 F.2d at 1094 ("Concealment by mere silence is not enough.") (internal quotation omitted).

---

[15] (...continued)
claims which are based on alleged breaches of fiduciary duty that occurred prior to April 1, 1996 are time-barred under ERISA's six-year limitations period.

Plaintiffs have failed to show fraud or concealment sufficient to invoke ERISA's six-year limitations period because they have pointed to no evidence showing that Defendants <u>actively</u> concealed "the true financial condition of the company as well as the fact that unit shares in the Stock Fund were inflated in value and no longer a prudent investment option for participants." Pls.' Opp'n to Defs.' Omnibus Mot. at 54 (internal citations omitted).

Plaintiffs claim that Defendants "fail[ed] to disclose information regarding Old Waste's true financial condition[,]" <u>id.</u> at 55, and "affirmatively misrepresented to participants the true value of their investments in the Stock Fund each time they provided participants with an account statement[] and thereby deflected suspicion and inquiries from participants regarding the fiduciaries' breaches alleged in the First Claim Period." <u>Id.</u>

As Defendants point out, however, "[b]ecause the Company initiated an investigation of the alleged 'accounting irregularities' and then, on February 24, 1998, publicly announced its restatement of prior period earnings and its reasons for the restatement, Plaintiffs have no basis to suggest that Plan fiduciaries 'took affirmative steps to hide [their] breach[es]' until the limitations period had run." Defs.' Omnibus Reply at 8 (quoting <u>Kurz v. Philadelphia Elec. Co.</u>, 96 F.3d 1544, 1552 (3d Cir. 1996)).

28

In addition, "allegations of fraudulent concealment . . . must meet the requirements of Fed. R. Civ. P. 9(b)."[16]  <u>Larson</u>, 21 F.3d at 1173 (internal citations omitted).  Rule 9(b) does not permit a plaintiff to rely, as do Plaintiffs in the instant case, on "wholly conclusory allegations of fraud, or contentions that [D]efendants 'knew or should have known' facts that were supposedly misrepresented or not disclosed.  Rather, it requires a plaintiff accusing a defendant of fraud to set forth specific facts that will support the accusation."  <u>Bender v. Rocky Mountain Drilling Assocs.</u>, 648 F.Supp. 330, 336 (D.D.C. 1986) (internal citation omitted); <u>see</u> Third Am. Compl. ¶¶ 79-87, 108-113, 129, 147, 166.

Thus, for the foregoing reasons, Plaintiffs' allegations of "fraud or concealment" are insufficient to invoke ERISA's six-year limitations period.[17]

---

[16]    Rule 9(b) requires that "in all averments of fraud ... the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).

[17]    Since the Court has concluded that Plaintiffs' allegations of "fraud or concealment" are insufficient to invoke ERISA's six-year limitations period, and thus that Plaintiffs' First Period claims are time-barred under ERISA Section 413, it is unnecessary for the Court to address Defendants' argument that Plaintiffs are estopped by the Illinois Securities Settlement from raising ERISA-based claims that arose during the Illinois Securities Litigation period (November 3, 1994 through February 24, 1998).

C.   **Plaintiffs Have Stated Viable Second Period Claims (Counts VI - IX)**

1.   **Plaintiffs' Second Period claims are not improper collateral attacks on the fairness and adequacy of the Illinois Securities Settlement**

Defendants argue that Plaintiffs' Second Period claims "must be dismissed as improper collateral attacks on the fairness of the Illinois Settlement and the adequacy of class representation." Defs.' Omnibus Mot. at 30.   According to Defendants, "Judge Andersen adopted a variety of procedures designed to protect the rights of unnamed class members -- including those of the Plan and, by extension, Plan participants -- and then made express findings regarding their adequacy." Id. at 31 (internal citations omitted).

As Plaintiffs point out, however, at this early stage of the case, "[t]here are at the very least factual disputes as to whether Plaintiffs and other Plan participants were represented adequately by either the lead plaintiffs or the Plan fiduciaries and received adequate notice that valuable ERISA claims were being released in the Illinois settlement."[18]   Pls.' Opp'n to Defs.' Omnibus Mot. at

---

[18]   Defendants argue that "the sweeping language of the Illinois Settlement demonstrates an absolute intent to settle and release all disputes that were or might have been raised in connection with the transactions, acts, and omissions related to that litigation . . . .   This, of course, includes any and all ERISA claims that could have been brought by the Plan against Defendants here."   Defs.' Omnibus Reply at 12.   The Illinois Securities Settlement, however, referenced neither the Plan, nor any ERISA claims.   See Defs.' Ex. 6.

49. Moreover, there are factual and legal disputes "as to whether the release even applies to Plaintiffs' ERISA claims." Id. at 51.

Thus, as Plaintiffs correctly argue, "[e]ven if Defendants could shoulder their burden of establishing this affirmative defense of release, they cannot do so through [the instant] motion to dismiss. Defendants must plead, and attempt to prove, after a full record has been made, that they were entitled to involuntarily release Plaintiffs' claims." Id. at 53 (internal citation omitted).

### 2. Count VI states a valid claim for relief against State Street for failing to investigate and preserve its potential ERISA claims in the Illinois Securities Litigation in violation of ERISA Section 404

In Count VI, Plaintiffs allege that State Street breached its fiduciary duty under ERISA Section 404 because it did not act prudently during settlement of the Illinois Securities Litigation. Specifically, Plaintiffs claim that State Street breached its fiduciary duties of loyalty and prudence by failing to adequately investigate and preserve the fiduciary breach of claims alleged in Counts I through V. Plaintiffs argue that State Street failed to protect potential ERISA claims by releasing them "without investigating the value or viability of those claims, without determining whether the settlement was fair to the Plan and without obtaining consideration for release of the Plan's unique ERISA claims." Pls.' Opp'n to State Street's Mot. at 15.

The duties of loyalty and prudence mandated in Section 404(a) of ERISA include the "duty to take reasonable steps to realize on claims held in trust." Donovan v. Bryans, 566 F. Supp. 1258, 1262 (E.D. Pa. 1983).  When, as in this case, a plan has potential claims against a third party, the "trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit . . . ."  McMahon v. McDowell, 794 F.2d 100, 112 (3d Cir. 1986).

Once State Street learned that Plan fiduciaries had caused the Plan to acquire Old Waste stock at inflated prices and were trying to obtain a release of all the Plan's claims against them without payment of any consideration, State Street had a duty to investigate whether there was any merit to the Plan's potential ERISA claims.  Depending on the result of that investigation, State Street then had the duty to pursue one of three courses of action: do nothing, object to the proposed settlement unless the Plan was given adequate consideration for release of those potential ERISA claims, or opt out of the Illinois Securities Litigation and file a separate ERISA action.

Plaintiffs allege that State Street did no investigation of any kind and therefore had no basis on which to take no action when it learned of the proposed settlement.[19]

In its Motion to Dismiss, State Street argues that these "potential" ERISA claims "are on their face weak" and have no "merit" because the Plan's acquisition of Old Waste stock "implicated issues of plan design rather than fiduciary discretion" for which the Old Waste Defendants could not be sued.  State Street Mot. at 5.  However, as noted, <u>infra</u>, in Section III.C.4, State Street, as Trustee, had a duty under Section 404(a) of ERISA to ignore the terms of the Plan document if it knew that investment in

---

[19]    The Department of Labor ("DOL"), in a ruling allowing fiduciaries to enter into settlements of plan claims against plan sponsors in securities class action litigation, where prudent, emphasized that the "fiduciary's decisions in authorizing a [securities] settlement are subject to the fiduciary responsibility provisions" under § 404(a) of ERISA . . . and require that such a decision be arrived at through a "prudent decision-making process" (<u>see</u> Prohibited Transaction Exemption 2003-39; Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, 68 Fed. Reg. 75,632 (Dec. 31, 2003) ("PTE 2003-39") at 75,635.  That decision includes consideration of:  (i) whether the "plan may [under ERISA] have another avenue of recovery not available to other shareholders," <u>id.</u> at 75,637, (ii) the "legal effect that a settlement agreement may have on all claims [including potential ERISA claims] that might be brought on behalf of the plan," <u>id.</u>, (iii) "the value of these additional claims," <u>id.</u> at 75,638, and (iv) "whether additional relief may be available for the ERISA claims before agreeing to a broad release," <u>id.</u> at 75,637.  Moreover, if after considering these factors the fiduciary determines that the settlement is not fair to the plan, the fiduciary should object to the settlement and, if possible, opt out.  <u>Id.</u> at 75,635-36.

unit shares of the Stock Fund were no longer a prudent investment.[20]

Finally, State Street asks for a ruling on the merits that its actions were not imprudent because the Complaint's allegations do not establish a "causal connection" between its actions and any loss.  In Section III.E., _infra_, the Court notes that it is not Plaintiffs' burden to plead causation, once they prove a breach of fiduciary duty by Defendants.  See Chao v. Trust Fund Advisors, 2004 WL 444029, at *6 (D.D.C. Jan. 20, 2004).  Moreover, any "causal connection between breach and loss, like breach itself, is a fact-intensive inquiry . . ." to be decided at trial.  Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 919 (8th Cir. 1994).

------

[20]    In language that is particularly applicable to this case, the Department cautioned that,

> a fiduciary should understand, in advance of signing, the legal effect that a settlement agreement may have on all claims that might be brought by or on behalf of the plan. . . .  It is not uncommon for the same transactions to give rise to both ERISA and securities fraud claims.  The plan, and by extension, the participants and beneficiaries of the plan, are entitled to the same recovery as other shareholders in the securities fraud settlement.  However, the participants and beneficiaries may have another avenue of recovery not available to other shareholders.  They are authorized, under ERISA, . . . to bring suit to make the plan whole for all losses caused by a breach of fiduciary duty. . . .  [P]lan fiduciaries should consider whether additional relief may be available for the ERISA claims before agreeing to a broad release.

PTE 2003-39, 68 Fed. Reg. 75,632.

For all these reasons, the Court concludes that Count VI states a valid cause of action against State Street for failing to adequately investigate and protect its potential ERISA claims in the Illinois Securities Ligitation.

### 3. Count VII states a valid claim for relief against State Street and Old Waste for engaging in a prohibited transaction in violation of ERISA Section 406

In Count VII, Plaintiffs allege that Old Waste and State Street, by approving the Old Waste Plan's participation in the Illinois Securities Settlement, caused the New Waste Plan to engage in a prohibited exchange with Old Waste of securities and ERISA claims that the Old Waste Plan had against Old Waste and its officers and directors, all of whom were parties in interest with respect to the Plan, in violation of ERISA Section 406(a)(1)(A). Plaintiffs claim that Old Waste is also liable for this violation because it was the party in interest that engaged in the prohibited exchange (the release of a chose in action) with the Old Waste pension Plan it sponsored.

ERISA Section 406(a)(1) "categorically bar[s] certain transactions deemed likely to injure the pension plan." Harris Trust & Sav. Bank. v. Salomon Smith Barney, Inc., 530 U.S. 238, 242 (2000) (internal quotation omitted). It provides, in relevant part, that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . .

35

exchange . . . of any property between the plan and a party in interest."  29 U.S.C. § 1106(a)(1)(A).

Defendants move to dismiss Count VII on two grounds.  First, they claim that their participation in the Illinois Securities Settlement is not a prohibited transaction.  <u>See</u> Defs.' Omnibus Mot. at 37.  Specifically, they argue that "[i]t is indisputable that the Plan's original decision to offer [Company Stock] as an investment option under the Plan is not prohibited by ERISA § 407 and § 408(e).  <u>See</u> 29 U.S.C. §§ 1107, 1108(e).  The same statutory framework that permits investment in 'qualifying employer securities,' and that exempts a plan's acquisition of such securities for 'adequate consideration,' necessarily includes the authority to settle claims relating to such investments."  <u>Id.</u> at 38.

Defendants seek to rely on a DoL Advisory Opinion Letter, No. 95-26A, 1995 WL 614557.  However, it does not support their position.  According to the DoL Advisory Opinion, "the settlement of [a] lawsuit would be an exchange of property (a chose in action) between such Plans and parties in interest as described in section 406(a)(1)(A)."  DoL Opinion Letter at 2.  Thus, as Plaintiffs contend, it is a prohibited exchange of property under ERISA Section 406 for State Street, a Plan fiduciary, to enter into the Illinois Securities Settlement on behalf of the New Waste Plan against Old Waste, the Plan sponsor and a party in interest, unless

36

the transaction is exempted from the proscriptions of ERISA Section 406.

Second, Defendants claim that, even if the Court finds that their participation in the Illinois Securities Settlement is a prohibited transaction, such participation is retroactively exempted from ERISA's restrictions on prohibited transactions by PTE 2003-39, 68 Fed. Reg. 75,632.

To qualify for PTE 2003-39, Defendants must show, among other things, that before approving the settlement, the Plan fiduciaries engaged in a "prudent decision-making process" which included considering "whether additional relief may be available for the ERISA claims before agreeing to a broad release." Id. at 75,636, 75,637. Defendants also must show that "the settlement is reasonable in light of the plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone," id. at 75,636, 75,639, and that "the terms and conditions of the transaction are no less favorable to the plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances." Id. at 75,639.

Plaintiffs respond that Defendants are not covered by PTE 2003-39 because the challenged settlement is not reasonable. To meet this reasonableness standard, Defendants must show that before approving the challenged settlement, the Plan fiduciaries "consider[ed] whether additional relief may be available for the

37

ERISA claims[.]"  Id. at 75,637.  If, as Plaintiffs allege in the Third Amended Complaint, State Street approved the challenged settlement without giving proper consideration to "the availability of additional relief," the settlement is not reasonable and PTE 2003-39 does not retroactively exempt the transaction from the proscriptions of ERISA Section 406.  These factual issues can only be resolved at trial after full discovery.

Defendants also rely on the "fairness" findings by Judge Anderson in the Illinois Securities Litigation to demonstrate that the Plan's participation in that settlement was not a prohibited transaction under ERISA Section 406(a)(1)(A).  All his findings related to the fairness and reasonableness of the settlement as to the members of the securities class, and as to their claims under the securities laws.  As Plaintiffs accurately note, he made no findings as to members of any ERISA class, or ERISA claims which were supposedly being released in the Settlement Agreement on behalf of the members of the securities class.

Thus, for the foregoing reasons, Count VII states a valid claim for relief against State Street and Old Waste for engaging in a prohibited transaction in violation of ERISA Section 406.

### 4.   Plaintiffs' Second Period claims against State Street state valid claims for relief

State Street argues that Plaintiffs fail to allege that it acted imprudently to the detriment of the Plan in connection with the Illinois Securities Settlement, and thus, that Plaintiffs'

Second Period claims should be dismissed.  Specifically, State Street claims that "the 'potential' ERISA claims that plaintiffs fault [it] for releasing in the Illinois Settlement were not viable to begin with" because "all of the allegations about company stock in the Plan implicate issues of plan design rather than fiduciary discretion, and none of the defendants named in Counts 1-5 can properly be sued for breach of ERISA fiduciary duties in connection with investments in company stock funds during the First Claim Period."  State Street's Mot. at 5, 6.

According to State Street, the decision of the Old Waste Fiduciaries to offer the Stock Fund as an investment option does not implicate fiduciary duties because the Plan required the establishment and maintenance of the Stock Fund and precluded the elimination of that Fund.  See Defs.' Omnibus Mot. at 56 (citing Defs.' Omnibus Mot., Ex. 21, §§ 5.2(b)(i), 9.3(b)(i)).

However, this does "'not ipso facto relieve [Defendants] of their fiduciary obligations.'"  In re Polaroid Erisa Litig., 362 F.Supp.2d 461, 474 (S.D.N.Y. 2005) (quoting Rankin v. Rots, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003)).  The Old Waste Fiduciaries had discretionary authority over the Stock Fund.  "By force of statute, [the Old Waste Fiduciaries] had the fiduciary responsibility to disregard the Plan and eliminate [the Stock Fund] if the circumstances warranted."  In re Polaroid Erisa Litig., 362 F.Supp.2d at 474 (citing 29 U.S.C. § 1104(a)(1)(D)).  As such, to

the extent the Stock Fund was an imprudent investment, as alleged by Plaintiffs, the Old Waste Fiduciaries possessed the authority as a matter of law to exclude the Stock Fund as an investment option, regardless of the Plan's dictates.  See id. at 474-75.

In addition, the Plan does not require that the assets in the Stock Fund be invested exclusively in Company Stock.  Rather, it provides that the Stock Fund is to "consist primarily of shares of common stock of the Company," Defs.' Omnibus Mot., Ex. 21, § 5.2(b)(i) (emphasis added).  It also provides that the Stock Fund "shall be invested at the discretion of the Investment Committee." Id. § 5.2(a).  Such language allows the Old Waste Fiduciaries considerable discretion regarding the extent to which the Stock Fund is invested in Company Stock.  See In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 670 (S.D. Tex. 2003) ("'primarily' means 'for the most part,' not 'all,' and [] the leeway provides the plan fiduciaries with considerable discretion"); In re Sprint Corp. ERISA Litig., 388 F. Supp. 2d 1207, 1220 (D. Kan. 2004) (same); In re McKesson HBOC, Inc., ERISA Litig., 2002 WL 31431588, at *4-5 (N.D. Cal.) (same).

Moreover, the fact that the Plan document directed the Old Waste Fiduciaries to invest "primarily" in Company Stock did not require them to continue to invest in such stock if they knew it

was no longer a prudent investment, as alleged by Plaintiffs.[21]  See 29 U.S.C. § 1104(a)(1)(D) (a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA).  See also Cokenour v. Household Int'l, Inc., 2004 WL 725973, at *5 (N.D. Ill.) ("No section in ERISA [can] be read to require fiduciaries to make investments for a plan if the fiduciary has information that shows that the investment is a poor one."); Hill v. Bellsouth

_____

[21] Defendants claim that Plaintiffs fail to plead facts sufficient to rebut the so-called ESOP presumption (Employee Stock Ownership Plan presumption) articulated in Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995) and adopted by Kuper, 66 F.3d at 1459, that an ESOP fiduciary is entitled to a presumption that its decision to remain invested in company stock was reasonable.  See State Street's Reply at 8.

Even if our Circuit were to adopt the ESOP presumption, which it has not, its application at the motion to dismiss stage would be premature.  See In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d at 534, n.3 ("[a] determination as to whether an ESOP fiduciary breached its fiduciary duty should not be made on a motion to dismiss, but only after discovery develops a factual record"); Stein v. Smith, 270 F.Supp.2d 157, 171-72 (D. Mass. 2003) (plaintiffs need not plead facts rebutting the ESOP presumption); In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig., 312 F.Supp.2d 1165, 1180 (D. Minn. 2004) (declining to apply ESOP presumption on a motion to dismiss); In re Elect. Data Sys. Corp. ERISA Litig., 305 F.Supp.2d 658, 670 (E.D. Tex. 2004) (same); Pa. Fed'n v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan, 2004 WL 228685 at *7 (E.D. Pa.) (same); Rankin, 278 F.Supp.2d at 879) (declining to rely on the ESOP presumption because whether the defendants breached their fiduciary obligations required the development of the facts of the case, and plaintiff stated a claim in that respect); In re Ikon Office Solutions, Inc. Sec. Litig., 86 F.Supp.2d 481, 492 (E.D. Pa. 2000) (denying motion to dismiss because "it would be premature to dismiss [the complaint] without giving plaintiffs an opportunity to overcome the presumption"); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-14 (2002) (presumptions are evidentiary standards that should not be applied to motions to dismiss).

<u>Corp.</u>, 313 F. Supp. 2d 1361, 1367 (N.D. Ga. 2004) (same) (citing
<u>Herman v. NationsBank Trust Co.</u>, 126 F.3d 1354, 1369 (11th Cir.
1997); <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 284
F.Supp.2d at 549; <u>Moench</u>, 62 F.3d at 567 (defendants were required
to exercise discretionary judgment as to investment decisions and
such decisions were subject to ERISA's fiduciary standards because
the plan directed only that funds would be invested 'primarily' in
the employer's stock); <u>Kuper</u>, 66 F.3d at 1457 (same); <u>Cent. States,</u>
<u>Southeast and Southwest Areas Pension Fund v. Cent. Transp., Inc.</u>,
472 U.S. 559, 568 (1985) ("trust documents cannot excuse trustees
from their duties under ERISA").

State Street also claims that "plaintiffs allege no facts from
which it is possible to infer that the Illinois settlement did not
adequately and fairly compensate the Plan" and that, therefore, the
Plan has not suffered "any meaningful prejudice."  State Street's
Mot. at 6, 7.  As discussed <u>supra</u>, however, PTE 2003-39 requires
Defendants to show that, among other things, before approving the
settlement, the Old Waste Fiduciaries engaged in a "prudent
decision-making process" which included considering "whether
additional relief may be available for the ERISA claims before
agreeing to a broad release."  PTE 2003-39 at 75,636, 75,637.  In
light of PTE 2003-39, Plaintiffs are correct that if, as alleged in
the Third Amended Complaint, State Street approved a broad release
in the Illinois Securities Litigation which included ERISA claims

without giving proper consideration to "whether additional relief may be available for the ERISA claims," it clearly breached its fiduciary obligations under ERISA and Plaintiffs' Second Period claims against State Street state valid claims for relief.

> **5.   Count VIII states a valid cause of action against New Waste Investment Committee and its individual members for failing to adequately monitor State Street's decision to participate in the Illinois Securities Litigation**

In Count VIII, Plaintiffs contend that the New Waste Plan Investment Committee and its individual members violated Section 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. § 1104(a)(1)(A) and (B), by failing to "discharge their duties with respect to the [New Waste] Plan solely in the interest of the participants and their beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan and with the care, skill, prudence and diligence" that a "prudent man . . . would use." Third Am. Compl. ¶ 188.

Specifically, Plaintiffs allege that because the New Waste Plan Investment Committee and its individual members appointed State Street to be the Trustee of that Plan and the Investment Manager of the Stock Plan, they possessed a duty to "periodically review [State Street's] performance." Pls.' Opp'n to Defs. Omnibus Mot. at 33-34.   They further allege that the New Waste Plan Investment Committee and its individual members failed to discharge

this duty because they did not "adequately monitor" State Street in its decision to have the New Waste Plan participate in the settlement of the Illinois Securities Litigation.  Third Am. Compl. ¶ 188.

Plaintiffs state that the New Waste Plan Investment Committee and its individual members "knew or should have known that State Street Bank's actions in this regard constituted an ERISA-prohibited transaction, breached fiduciary duties, and were not in the Plan's interest."  Id.  Plaintiffs state that the New Waste Plan Investment Committee and its individual members "failed to undertake any review or oversight of State Street's conduct or decision-making" in the Illinois Securities Litigation.  Pls.' Opp'n to Defs.' Omnibus Mot. at 34 (emphasis in original).

While not denying this factual allegation, Defendants argue that it is an "improper collateral attack[] on the fairness of the Illinois Settlement and the adequacy of class representation." Defs.' Omnibus Mot. at 30. They argue that Judge Andersen employed the proper "safeguards" in approving of the settlement as fair and adequate.  Id. at 31.  Specifically, he "adopted a variety of procedures designed to protect the rights of unnamed class members . . . and then made express findings regarding their adequacy." Id.[22]  He also determined that "a full opportunity had been offered

---

[22]     It should be noted that Judge Anderson found the Settlement to be fair and reasonable to "shareholders."

to members of the Class to object to the proposed Settlement, to participate in the hearing thereon, or to opt out." Id. (quoting Defs.' Omnibus Mot., Ex. 6, ¶ 15.

Finally, they argue that the New Waste Plan Investment Committee and its individual members "acted prudently by recusing themselves from matters related to the litigation and settlement of the Illinois Securities Litigation." Defs.' Omnibus Mot. at 34. They point out that Plaintiffs have not argued that the recusal decision was "imprudent or unreasonable." Defs.' Omnibus Reply at 32.

As Plaintiffs correctly state, the "monitoring duties of appointing fiduciaries under ERISA . . . are well established in the case law." Pls.' Opp'n to Defs.' Omnibus Mot. at 20. "The power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance." Liss v. Smith, 991 F. Supp. 278, 311 (S.D.N.Y. 1998); Chao, 2004 WL 444029, at *4 ("a fiduciary 'had a duty to monitor performance with reasonable diligence'") (quoting Whitfield v. Cohen, 682 F. Supp. 188, 196 (S.D.N.Y. 1998)); see also Baker v. Kingsley, 387 F.3d 649, 663-64 (7th Cir. 2004) (discussing the duty to monitor); In re Ford Motor Co. ERISA Litigation, 590 F. Supp. 2d 883, 919 (E.D.Mich. 2008) (finding that the Complaint adequately stated a claim for breach of the "fiduciary duty to monitor").

Defendants do not argue that neither New Waste Plan Investment

Committee nor its individual members had a duty to monitor its appointees. Instead, they argue that the settlement was fair and adequate, and even if it was not, the duty to monitor yields in the face of a fiduciary's obligation to be independent. While Defendants properly cite to <u>Leigh v. Engle</u>, 727 F.2d 113, 125, 132 (7th Cir. 1984), to support their claim that it may sometimes be prudent for a fiduciary to "step aside" in order to preserve its independence in the face of a potential conflict of interest, they provide no case law to support their assertion that the duty to monitor must yield to the obligation to be independent.

As noted, <u>supra</u>, in Sections III.C.1-3, Plaintiffs have stated valid claims for relief with regard to the Illinois Securities Settlement. At this stage of the litigation, there are factual disputes about whether the Settlement was fair and adequate.

Moreover, the question of what the prudent course of action was in this particular case is a factual one. At this early stage of the litigation, it is not proper to speculate about whether prudence required recusal or more intensive monitoring. As noted, <u>supra</u>, in Section III.C.1, 2, and 3, such factual issues can only be resolved at trial after full discovery.

For all these reasons, the Court concludes that Count VIII states a valid cause of action against New Waste Plan Investment Committee and its individual members for failing to adequately monitor State Street's decision to participate in the Illinois

Securities Settlement.

### 6.    Count IX states a valid claim for co-fiduciary breach

In Count IX, Plaintiffs contend that State Street, Old Waste, the New Waste Investment Committee and its individual Trustee Members further breached their fiduciary obligations under ERISA Sections 405(a)(2) and (3) by enabling their co-fiduciaries to commit violations of ERISA as described in Counts VI-VIII and, with knowledge of such breaches, failing to make reasonable efforts to remedy such breaches.

Defendants move to dismiss Count IX on four grounds.  First, they claim that because Plaintiffs "have failed to allege any principal breaches of fiduciary responsibility by any of the Defendants[,] . . . there can be no collateral claims of co-fiduciary liability."  Defs.' Omnibus Mot. at 62.  The Court, however, has already determined that the primary breaches alleged against Defendants in Counts VI-VIII should not be dismissed.

Second, Defendants claim that, "[i]n connection with the Illinois Securities Settlement, the [Old Waste] Plan released any claim it could have raised, whether known or unknown, relating directly or indirectly to 'any alleged act, misrepresentation, or omission occurring on or before February 24, 1998[,] regarding the financial condition, results of operations, financial statements, press releases, public filings, or other public disclosures of' Old Waste Management."  Defs.' Omnibus Mot. at 63 (internal citations

omitted).   According to Defendants, "[t]his includes any claim of co-fiduciary liability that the Plan might have asserted against [them] in this action."   Id.

However, neither the New Waste Plan Investment Committee nor State Street were among the settling Defendants or "Released Parties" in the Illinois Securities Settlement.   See Defs.' Omnibus Mot., Ex. 5, ¶ 2(l) (defining "Released Parties" as "each and every one of the following: [Old Waste] and all of its predecessors and present and former parents, subsidiaries, affiliates, directors, officers, employees, agents, attorneys, advisors, and representatives; Arthur Andersen & Co., Arthur Andersen LLP, all of their affiliated entities, and all of the present and former partners, employees, agents, attorneys, advisors, and representatives of Arthur Andersen & Co., Arthur Andersen LLP or any of their affiliated entities."), and ¶ 2(q) (defining "Settling Defendants" as "[Old Waste] and Arthur Andersen, LLP").   Thus, neither the New Waste Plan Investment Committee nor State Street is bound by the Illinois Securities Settlement.

Third, Defendants maintain that because the Illinois Securities Settlement provided fair compensation for the harms alleged, they breached no duties in permitting the Plan to participate in that Settlement, and Plaintiffs' co-fiduciary liability claims should be dismissed.   In support of this argument, Defendants point to the Illinois district court's finding that the

Settlement was "'in all respects fair, reasonable, and adequate to each of the Settling Parties and each Member' of the Illinois Settlement Class, including the Plan." Defs.' Omnibus Mot. at 63 (internal quotation omitted).

As discussed supra, however, the Illinois district court expressly declined to determine whether the Plan's fiduciaries properly accepted the Settlement because the two lawsuits covered different time periods. Moreover, at this early stage of the case, there are, at the very least, factual disputes as to whether Plaintiffs and other Plan participants were represented adequately in the Illinois litigation by either the lead plaintiffs or the Plan fiduciaries and whether they received adequate notice that ERISA claims were being released in the Settlement. Thus, Defendants cannot prevail on the affirmative defense of release through the instant Motion to Dismiss.

Fourth, Defendants argue that "ERISA § 405(a)(3) requires a co-fiduciary's actual knowledge of the principal breach. Consequently, allegations such as those raised here –- that a fiduciary 'should have known' -- are insufficient, and claims of 'actual knowledge' are belied by the allegations in Plaintiffs' own Complaint." Defs.' Omnibus Mot. at 64 (internal citations omitted).

Under ERISA Section 405(a)(3), a co-fiduciary is liable for the other fiduciary's breach of fiduciary duty when: "(1) the

co-fiduciary has actual knowledge of the other fiduciary's breach; (2) the co-fiduciary failed to make reasonable efforts to remedy the other fiduciary's breach; and (3) damages resulted therefrom."[23] In re Sprint Corp. ERISA Litig., 388 F. Supp. 2d at 1220 (internal citations omitted).  In this case, Section 405(a)(3) is satisfied insofar as Plaintiffs allege that State Street, Old Waste, the New Waste Investment Committee, and its individual Trustee Members did have actual knowledge of breaches of fiduciary duties by the other Defendants, yet failed to make reasonable efforts to remedy those other Defendants' breaches of fiduciary duties.  See Third Am. Compl. ¶ 192.

Accordingly, for all the foregoing reasons, Count IX states a valid claim for co-fiduciary liability against State Street, Old Waste, the New Waste Investment Committee, and its individual Trustee Members.

**D.   Count X States a Valid Claim for Fiduciary Breach against State Street**

Count X of the Third Amended Complaint alleges fiduciary breaches occurring during the Third Claim Period (February 7, 2002 through July 15, 2002) against State Street.  According to Plaintiffs, State Street failed to conduct an adequate review of potential fiduciary breach claims that might have been asserted

---

[23]   An additional necessary predicate for co-fiduciary liability under this subsection is that another fiduciary have committed a breach of fiduciary duty.

against the Old Waste Fiduciaries and released such claims in the
Texas Securities Settlement without obtaining adequate
consideration.

State Street moves to dismiss Count X on three grounds.
First, it argues that this Count is barred by the Texas Securities
Settlement. Specifically, State Street points out that "plaintiff
Harris, represented by the same counsel appearing for all
plaintiffs in this case, appeared in the Texas Securities
Litigation and objected to the adequacy of the settlement
specifically for Plan participants holding potential ERISA claims.
Plaintiff Harris and his lawyers ultimately reached a settlement
with the lead plaintiffs, pursuant to which the recovery for plan
participants was changed (to get the settlement concluded without
further delay) and pursuant to which Harris withdrew his objection
with prejudice." State Street's Mot. at 8 (emphasis in original).
According to State Street, "[h]aving withdrawn an objection to the
settlement in Texas, plaintiffs cannot now be heard to argue that
the final version of the Texas Settlement was not adequate for Plan
participants and that they can now sue State Street for not
pursuing claims that plaintiffs raised in Texas and then
abandoned." Id.

As Plaintiffs correctly point out, however, State Street was
not a party to the Texas Securities Settlement. See Defs.' Omnibus
Mot., Ex. 8, ¶ A.3 (defining "Releases" as "Waste Management and

51

all of its predecessors and present and former parents, subsidiaries and affiliates, and each of their respective past and present directors, officers, employees, partners, principals, agents, attorneys, advisors, consultants, representatives, accountants and auditors (including without limitation Arthur Andersen LLP and PricewaterhouseCoopers LLP), and the Individual Defendants and each of their heirs, executors, administrators and assigns."). Thus, the Texas Securities Settlement cannot bind Plaintiffs as to claims against State Street because it was a non-party to the Settlement and the litigation.[24]

Second, State Street maintains that "the obvious and dispositive problem with plaintiffs' alleged 'potential' ERISA claim[s] is that actions by corporate officers in the evaluation and pursuit of a corporate merger are not fiduciary acts for which a claim may be made under ERISA." State Street's Mot. at 9 (internal citations omitted). It argues, therefore, that the decisions it made in connection with the Merger are not subject to

_____

[24] Plaintiffs also argue that because "Plaintiff Harris may have effectuated a partial recovery from Old Waste in the Texas securities settlement does not prevent him from continuing to pursue the allegations in Count Ten to restore to the Old Waste Plan additional losses resulting from the acts and omissions of State Street, which is jointly and severally liable along with other fiduciaries of the Plan for its breaches." Pls.' Opp'n to State Street's Mot. at 27-28. As State Street points out, however, "the fiduciary breach alleged against State Street, about released claims, is distinct from the alleged fiduciary breaches by the other defendants. Because State Street and the released parties did different things, their exposure to liability could in no sense be 'joint and several.'" State Street's Reply at 16 n.8.

ERISA's fiduciary requirements.

As discussed, <u>infra</u>, however, "[i]t is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings."   <u>In re Elec. Data Sys. Corp. "ERISA" Litig.</u>, 305 F.Supp.2d at 665.   In the instant case, it is not hard to imagine a set of facts that would justify a conclusion that State Street was performing fiduciary functions when it made decisions in connection with the July 1998 Merger.   Accordingly, State Street's argument regarding its fiduciary status is premature and, therefore, unpersuasive.

Third, State Street argues that the finding of the Texas district court in the Texas Securities Litigation that "substantial due diligence was performed . . . on behalf of Old Waste before the merger," Defs.' Omnibus Mot., Ex. G at 183, "completely undermine[s] the factual basis of liability asserted against State Street -- that viable ERISA claims about due diligence should have been apparent to State Street and were imprudently released, and that the Plan thereby suffered loss in the Texas settlement." State Street's Reply at 15.

As Plaintiffs point out, however, the Texas district court's finding was directed exclusively at the question of whether the allegations in the Texas Securities Litigation were adequate to "raise a strong inference of scienter to support claims of fraudulent misrepresentation" under the Public Securities

Litigation Reform Act.  Defs.' Ex. G at 184.  That finding did "not even address, much less conclusively establish, that the Plan did not have viable potential causes of action under ERISA not available to the plaintiffs in the Texas Securities Litigation against the Old Waste Fiduciaries for not conducting a prudency review of the proposed Merger or for causing the Plan to acquiesce in a Merger that was not in the best interest of the Plan and its participants, as Plaintiffs allege."  Pls.' Opp. to State Street's Mot. at 30 (internal quotations omitted).

Accordingly, for all the foregoing reasons, the Court concludes that Count X states a valid claim for fiduciary breach against State Street.

### E.   Plaintiffs Need Not Show an Identifiable Loss Resulting Directly from State Street's Allegedly Imprudent Actions

State Street moves to dismiss Counts VI - X on the ground that Plaintiffs have failed to plead facts which, if proven, would properly support a conclusion that the Plan incurred a loss as a result of its decision to secure recoveries by participating in the Illinois and Texas Securities Settlements.  See State Street's Mot. at 3-4.  As this Court has previously held, however, Plaintiffs need not plead causation.  See Chao v. Trust Fund Advisors, 2004 WL 444029, at *6 ("[O]nce [Plaintiffs] ha[ve] proven a breach of fiduciary duty and a prima facie case of loss to the plan, Defendants must then prove that the loss was not caused by their breach of fiduciary duty.") (citing Martin v. Feilin, 965 F.2d 660,

671 (8th Cir. 1992), and <u>Whitfield v. Lindemann</u>, 853 F.2d 1298, 1304-05 (5th Cir. 1988)); <u>Roth v. Sawyer-Cleator Lumber Co.</u>, 16 F.3d 915, 917 (8th Cir. 1994) (same); <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 284 F.Supp.2d at 579-80 (same), and cases cited therein.

Accordingly, because Plaintiffs have pled both fiduciary breach and injury, the Court will not dismiss Counts VI-X on the ground that they have failed to show an identifiable loss resulting directly from State Street's allegedly imprudent actions.[25]

**F.  It Is Premature for the Court to Rule as a Matter of Law Whether Old Waste Acted in a Fiduciary Capacity in Taking the Actions at Issue in This Case**

Defendants argue that Plaintiffs' First and Second Period fiduciary and co-fiduciary breach claims against Old Waste fail because Plaintiffs cannot show that Old Waste acted in a fiduciary capacity in taking the actions at issue in this case. Specifically, Defendants claim that "[t]he Plan documents [] demonstrate that [Old Waste] is not the Plan's named fiduciary, nor does the Plan allocate to [Old Waste] any fiduciary duties. Rather, at all times pertinent to the allegations raised in the Complaint, the Plan[] provide[s] for an Administrative Committee

_____

[25] Defendants cite <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336 (2005) in support of their argument that Counts VI - X should be dismissed on the ground that Plaintiffs cannot show that State Street directly caused a loss to the Plan.  <u>Dura Pharm., Inc.</u> is, however, inapposite, because it relates to the Securities Exchange Act of 1934, not ERISA.

and an Investment Committee, and specifically identifie[s] the duties and responsibilities of each.  [In addition,] [t]he Plan allocate[s] to [Old Waste] no authority or duty to appoint, remove, or monitor members of those Committees." Id.  Plaintiffs contend that "[a]lthough Old Waste was not named as a fiduciary in the governing plan documents, . . . Old Waste functioned as a fiduciary and . . . is liable under the principles of respondeat superior in any event."  Pls.' Opp'n to Defs.' Omnibus Mot. at 23.

"It cannot be seriously disputed that, under ERISA, [Old Waste] . . . is subject to ERISA's fiduciary standards only when it acts in a fiduciary capacity."  Sys. Council EM-3 v. AT&T Corp., 159 F.3d 1376, 1379 (D.C. Cir. 1998) (internal citation omitted).  "[W]hether [a party] is an ERISA fiduciary turns upon whether [that party] has discretionary authority or responsibility in the administration of a plan or regarding the disposition of plan assets."  Int'l Bhd. of Painters and Allied Trades Union and Indus. Pension Fund v. Duval, 925 F.Supp. 815, 828 (D.D.C. 1996) (citing 29 U.S.C. § 1002(21)(A).[26]  "Mere influence over a fiduciary's

---

[26] Under ERISA, a party is a fiduciary

to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any
(continued...)

decisions regarding a plan is not enough to constitute discretionary control, triggering ERISA liability." Int'l Bhd. of Painters and Allied Trades Union and Indus. Pension Fund, 925 F.Supp. at 828 (citing Fink, 772 F.2d at 958).

"Whether a [party] is a fiduciary is a fact-bound inquiry depending upon the degree of [the party's] discretion or control that is vested in the [party]." Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund, 925 F.Supp. at 828 (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 260 (1993) and Schloegel v. Boswell, 994 F.2d 266, 271 (5th Cir. 1993)); see Varity, 516 U.S. at 502-03 (emphasizing the fact-specific nature of ascertaining whether a plan administrator is acting in a fiduciary capacity). Moreover, "fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives." In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F.Supp.2d at 544 (internal quotation omitted). Thus, "[i]t is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings." In re Elec. Data Sys. Corp. "ERISA" Litig., 305 F.Supp.2d at 665. See Bell v. Executive Comm. of United Food & Commercial Workers Pension Plan For Employees, 191 F. Supp. 2d 10, 16 (D.D.C. 2002) (same).

---

[26](...continued)
discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Plaintiffs allege that Old Waste, "acting through the Old Waste Board," acted as a fiduciary with respect to the Plan because it was "charged with, responsibility for, and otherwise assumed the duty of appointing, monitoring, and, when and if necessary, removing other Plan fiduciaries, including, but not limited to, Members of the Old Waste Plan Committees, and the Trustees of the Old Waste Plan."   Third Am. Compl. ¶ 164.   Based on these allegations, Defendants could prevail "only if the Court could rule as a matter of law that [Old Waste] could never qualify as [a] fiduciar[y] under ERISA." Bell, 191 F. Supp. 2d at 16.   However, "'[d]etermining whether someone is a fiduciary is a very fact specific inquiry which is difficult to resolve on a motion to dismiss.'" Id. (quoting In re Fruehauf Trailer Corp., 250 B.R. 168, 204 (D. Del. 2000)).   Thus, at this stage, the Court cannot make such a ruling, for the Third Amended Complaint sufficiently pleads facts that could ultimately entitle Plaintiffs to relief against Old Waste.   Accordingly, the Court will not dismiss Plaintiffs' claims against Old Waste on this ground.[27]

---

[27] Defendants also argue that Plaintiffs' First Period fiduciary and co-fiduciary breach claims against the other Old Waste Fiduciaries fail because Plaintiffs have failed to show that they acted in a fiduciary capacity in taking the actions at issue in this case. See Defs.' Omnibus Mot. at 53-62. It is unnecessary to address these arguments, however, because, as discussed supra, those claims are time-barred under ERISA Section 413.

IV.   **CONCLUSION**

For the reasons stated, Defendants' Omnibus Motion to Dismiss the Third Amended Complaint is **granted in part** and **denied in part** and State Street Bank and Trust Company's Motion to Dismiss the Third Amended Complaint is **denied.**

An Order will issue with this Memorandum Opinion.[28]


March 12, 2009
/s/
GLADYS KESSLER
U.S. DISTRICT JUDGE

----

[28]     The parties are cautioned, in the strongest possible terms, to abide by the provisions of Fed. R. Civ. P. 59 and 60.  As the parties can observe, an enormous amount of research, analysis, time, and effort has gone into the present Opinion and accompanying Order.  It is now time to proceed to discovery and the merits of this case.  Parties shall under no circumstances file motions for reconsideration which merely repeat arguments made in the lengthy briefs they have submitted for these Motions, and which fail to meet the requirements of Fed. R. Civ. P. 59 and 60.  See New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995).  In the unlikely event that any party, after careful consideration, determines that such a motion is necessary, such motion shall not exceed 10 pages and shall be filed within ten days of the date of this Opinion; oppositions shall not exceed 10 pages and shall be filed within ten days of the motion, and replies shall not exceed 5 pages and shall be filed within five days of the oppositions.