# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILLIAM S. HARRIS, *et al.*,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 02-618 (GK/JMF)** |
| **JAMES E. KOENIG, *et al.*,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

This case has been referred to me by Judge Kessler to resolve several pending discovery motions: Motion to Compel Testimony, Sufficient Interrogatory Responses and Documents from State Street Bank [#272] ("MTC"); Motion to Compel 30(b)(1) Deposition of Denise Sisk [#285] ("MTC 30(b)(1)"); Motion to Compel Production of Documents from Defendant State Street Bank [#299] ("MTC Docs"); Motion to Compel Documents Responsive to Plaintiffs' Fourth Request for Production to State Street Bank [#310] ("Second MTC Docs "); Motion for Protective Order by State Street Bank [#326] ("Mot. for Protect. Order")[1]; and Motion to Determine the Sufficiency of State Street Bank's Answers and Objections to Plaintiffs' First Request for Admissions [#336] ("Mot. to Det. Sufficiency").

## I.      Background

### (a) The Defendants

The background of this almost decade-long case is detailed in several of Judge Kessler's opinions.  See, e.g., Harris v. Koenig, No. 02-CV-618, 2010 WL 2560038, at

---

[1] State Street Bank additionally filed Motion for Leave to File Supplemental Exhibit in Support of Motion for a Protective Order [#380].  In light of the determinations herein, that Motion will be denied as moot.

*1-3 (D.D.C. Jun. 10, 2010); <u>Harris v. Koenig</u>, 602 F. Supp. 2d 39, 42-44 (D.D.C. 2009). Plaintiffs are former employees of Waste Management Holdings, Inc. ("Old Waste") and participated in the Waste Management Profit Sharing and Savings Plan ("the Plan"). <u>Harris</u>, 602 F. Supp. 2d at 42 (citing Third Amended Complaint at ¶ 20). Defendants can be divided into two groups, which Judge Kessler has referred to as the "Old Waste Fiduciaries,"[2] and the "New Waste Fiduciaries."[3] <u>See</u> <u>Harris</u>, 602 F. Supp. 2d at 42-43. "This action arises from Old Waste's announcement on February 24, 1998 that it was restating several of its financial statements for periods between 1991 and 1997 and that, prior to 1992 and continuing through the first three quarters of 1997, it had materially overstated its reported income by $1.43 billion." <u>Harris</u>, 2010 WL 2560038, at *1.

(b) The Claims Asserted

The announcement led to the filing of a securities class action in the Northern District of Illinois, which settled under terms that included a release of Old Waste and its agents of liability for claims brought by members of that class. <u>Id.</u> In 1999, another securities class action complaint was filed after Old Waste merged with Waste Services, Inc. to become New Waste, and New Waste announced further after-tax charges and

---

[2] Old Waste Fiduciaries includes Old Waste; the Old Waste executives who allegedly administered the Old Waste Plan, including the Waste Management, Inc. Profit Sharing and Savings Plan Investment Committee; the individual Trustee Members of the Old Waste Investment Committee; the Waste Management, Inc. Profit Sharing and Savings Plan Administrative Committee; the individual Trustee Members of the Old Waste Administrative Committee; the Old Waste Board of Directors; the individual Members of the Old Waste Board of Directors; and DOES 1-15. <u>Id.</u>

[3] New Waste Fiduciaries includes the Waste Management Retirement Savings Plan; and the New Waste executives who allegedly administered the New Waste Plan, including the Investment Committee of the Waste Management Retirement Savings Plan; the individual Trustee Members of the New Waste Investment Committee; the State Street Bank and Trust Company; and DOES 16-30. <u>Id.</u> at 42-43.

adjustments of $1.23 billion. Id.  This case also settled. Id.

(c) The Claims in this Lawsuit

Shortly before that settlement, plaintiffs in the instant action filed their complaint alleging ten counts of ERISA violations based on the Plan's purchase of inflated shares and its release of claims in the two settlements. Id.  On March 12, 2009, Judge Kessler dismissed Counts I-V of plaintiffs' Third Amended Complaint as time-barred. Id. at 2 (citing Harris v. Koenig, 602 F. Supp. 2d 39, 52 (D.D.C. 2009)).  Plaintiffs then moved to file a Fourth Amended Complaint to allege new facts and a Substitute Fourth Amended Complaint to add Counts XIII and XIV, which allege Defendant State Street's violation of ERISA § 406(b)(2)[4] in the manner in which it agreed to settle the Illinois and Texas Litigations. Id. at 2.  Judge Kessler granted leave to amend the Complaint in order to re-assert Counts I-V and to add Counts XIII and XIV. Harris v. Koenig, 673 F. Supp. 2d 8, 12-15 (D.D.C. 2009).  Defendants then filed three motions to dismiss, which Judge Kessler granted in part and denied in part. Harris, 2010 WL 2560038, at *1.  Notably, the additional claims against State Street Bank & Trust Company ("SSBT") raised in the Fourth Amended Complaint, Count XIII and XIV, were dismissed.  Id.  The original claims against SSBT remain as follows:

(1) SSBT breached its fiduciary duty under ERISA § 404 by failing to adequately investigate and preserve the claims in Counts I-V in the Illinois Litigation and by causing the claims to be released (Count VI);

(2) Old Waste and SSBT engaged in prohibited exchanges of choses in action between the New Waste Plan and Old Waste in violation of ERISA § 406(a)(1)(A) by

_____

[4] All references to the United States Code are to the electronic versions in Westlaw or Lexis.

releasing claims in the Illinois Litigation (Count VII);

(3) the New Waste Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to adequately monitor SSBT's performance in the Illinois Litigation (Count VIII);

(4) SSBT, Old Waste, the New Waste Investment Committee, and any remaining Individual Defendants who are or were members of that Committee, breached their fiduciary duties under ERISA §§ 405(a)(2) and (a)(3) by enabling their co-fiduciaries to commit the ERISA violations described in Counts VI-VIII, and by failing to remedy them (Count IX); and

(5) SSBT breached its fiduciary duties under ERISA § 404 by failing to conduct an adequate review of the potential ERISA claims against the Old Waste Fiduciaries in the Texas Litigation, and by releasing them without adequate consideration (Count X).

Harris, 2010 WL 2560038, at *18-19.

(d) The Time Periods

Plaintiffs' claims against all defendants fall into the three relevant time periods, but the claims against SSBT occur in the last two time periods: July 15, 1999 to December 1, 1999 and February 7, 2002 to July 15, 2002. As Judge Kessler explained:

> On April 1, 2002, Plaintiffs filed the instant action in this Court, alleging ten counts of ERISA violations. The claims were divided into three periods. First, Plaintiffs alleged five ERISA violations related to the Plan's purchase of inflated shares of company stock in the first claim period between January 1, 1990 and February 24, 1998 (Counts I-V). Second, Plaintiffs alleged four ERISA violations related to the release of claims by the Plan's fiduciaries in the Illinois securities litigation in the second claim period between July 15, 1999 and December 1, 1999 (Counts VI-IX). Third, Plaintiffs alleged one ERISA violation in the third claim

4

period between February 7, 2002 and July 15, 2002 related to the release of claims by the New Waste Plan's trustee-Defendant State Street Bank and Trust Company-in the Texas securities litigation (Count X).

Harris, 2010 WL 2560038 at *1.

## II.     The Motion for a Protective Order is Granted

SSBT has moved for a protective order to limit plaintiffs' discovery to SSBT's work on behalf of the Plan as it relates to the Plan's participation in the Illinois and Texas settlements. Memorandum in Support of Mot. for Protect. Order ("Mot. for Protect. Order Memo") at 5. Further, SSBT wants discovery to be restricted to the following topics the parties agreed[5] to for the initial Rule 30(b)(6) deposition of SSBT:   (1) SSBT's responsibilities and duties as trustees of the Plan; (2) SSBT's evaluation of examination of Plan claims in connection with the facts alleged in the Illinois and Texas securities litigations; (3) SSBT's role and conduct with respect to the Plan in the Illinois and Texas securities litigations; (4) SSBT's responsibilities and duties as investment manager for the company stock fund; (5) the responsibilities, duties, and activities of Gary A. Smaldone in connection with the Plan's claims including the decision whether to opt out or participate in the Waste settlements; and (6) the responsibilities, duties, and activities of Alan Hawksley in connection with the Plan's claims including the decision whether to opt out or to participate in the Waste settlements.  See Mot. for Protect Order Memo at 4.

Plaintiffs protest that they have always reserved their right to seek the discovery they would now compel, despite their limited agreement to the scope of the Rule 30(b)(6) agreement. According to plaintiffs, the relevant time period for discovery from SSBT is from January 1, 1990 to July 15, 2002, even though SSBT only became trustee of the Plans effective January 1, 1999, and has produced documents starting from when it became trustee.  See Plaintiffs'

_____

[5] This agreement had been brokered by a court appointed mediator.

<u>Memorandum of Points and Authorities in Support of Motion to Compel Testimony, Sufficient Interrogatory Responses and Documents</u> ("MTC Memo") at 6.  Plaintiffs argue that there is conduct that occurred prior to January 1, 1999 that is relevant to SSBT's responsibilities and duties when it became trustee, because certain of the fiduciary breaches at issue occurred before January 1, 1999. <u>Id.</u> at 7.  Further, plaintiffs want discovery from SSBT regarding the first claims period (i.e., January 1, 1990 to February 24, 1998) because they need to "show the kind of case a prudent and diligent fiduciary could have developed against the Waste Management fiduciaries;" therefore, plaintiffs argue that the requested documents dating back to 1990 are relevant "because it was the time frame during which the fiduciaries of the Plan are claimed to have breached their duties." <u>Id.</u> at 6.

Plaintiffs also claim that certain documents preceding the January 1, 1999 date are relevant, including SSBT's policies, practices, and guidelines for determining how to value ERISA fiduciary breach claims, and SSBT's negotiations with Waste Management regarding assuming responsibility for the trusteeship of the Plan and investment management for the Company Stock Fund. <u>Id.</u> at 9.

Thus, the first and crucial question is the definition of the proper scope of discovery.

A.    <u>Legal Standard</u>

In general, a party is entitled to discover information if the information sought appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Additionally, a party may discover information that is not privileged and "is relevant to the claim or defense of any party." <u>Id.</u>  Relevance for discovery purposes is broadly construed.  <u>See, e.g.</u>, <u>Burlington Ins. Co. v. Okie Dokie, Inc.</u>, 368 F. Supp. 2d 83, 86 (D.D.C. 2005) (citations omitted).

Nevertheless, a court is bound by Rule 1 of the Federal Rules of Civil Procedure, which requires it to construe and administer the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; see also Covad Comm'ns Co. v. Revonet, Inc., 267 F.R.D. 14, 20 (D.D.C. 2010). A court is further bound by Rule 26(b)(2)(C)(iii), which requires it to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); see also Covad, 267 F.R.D. at 20.

B.    The Scope of Discovery

The scope of the discovery in this case is defined by the claims that remain, that deal with SSBT's decision to settle the Illinois and Texas litigations.

Judge Kessler has refined the scope of discovery by her order of April 20, 2009, in which she indicated that the factual issues to which discovery must be directed by reference to specific pages of her Memorandum Opinion of March 12, 2009. Order of April 20, 2009 at 1. That March opinion, now reported at 602 F. Supp. 2d 39, speaks to SSBT's potential liability concluding (1) that plaintiff had legitimate claims that SSBT may have breached its fiduciary duty under ERISA by releasing its claims without determining whether the settlement was fair to the Plan and without obtaining consideration for release of the Plan's unique claims; (2) that Old Waste and SSBT may have engaged in a prohibited transaction by SSBT's approving the settlement of the Illinois claims without giving proper consideration to the availability of additional relief; and (3) that SSBT may have breached its fiduciary duty by accepting the Texas Securities settlement without an adequate review of potential fiduciary breach claims against the

Old Waste fiduciaries.

Judge Kessler has therefore limited the scope of discovery to the actions or omissions of SSBT in its approval of the two settlements. Defendant's proposal to limit discovery to the topics agreed to as the proper scope of the Rule 30(b)(6) deposition is correct. Events and occurrences that happened before the starting date of the first period, July 1, 1999, and information pertaining to anything other than the SSBT decision to accept the two settlements are irrelevant. SSBT is therefore entitled to the protective order it seeks.

I now turn seriatim to each of the motions plaintiffs have filed.

### III.    Motion to Compel Testimony, Sufficient Interrogatory Responses and Documents from State Street Bank

Plaintiffs' first motion to compel provides a comprehensive overview of all of the discovery they want, but that, they claim, SSBT refuses to let them have. See MTC at 1. Plaintiffs seek to compel[6] SSBT to: (1) produce documents in response to Requests 1, 2, 19 and 20; (2) provide adequate and sufficient interrogatory responses to Interrogatories 3, 4, 5, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25; (3) conduct a full and complete search of its corporate files for documents and information which it, as a company, knew about what the fiduciaries of the Plan knew or should have known and did or did not do in connection with the wrongdoing alleged in the Illinois and Texas Securities litigation; and (4) make a Rule 30(b)(6) deponent available for deposition on the issues not covered in the first deposition and

---

[6] Plaintiffs also object to SSBT's initial disclosures because, instead of specifying the documents upon which it would rely for its defense, as Federal Rule of Civil Procedure 26(a)(1)(B)(ii) requires, SSBT responds that many of the documents upon which it intended to rely have already been produced as exhibits to its motion to dismiss. MTC Memo at 13. SSBT's response is insufficient. Given, however, SSBT's production of documents since filing its initial disclosures, I will require it to state unequivocally and in writing that it has now produced to plaintiffs all documents upon which it intends to rely for its defense.

six other topics proposed by plaintiffs. MTC Memo at 21-22.  I will address each issue in turn.

A.      SSBT's Responses to Document Requests 1, 2, 19 and 20

In Document Request 1, plaintiff sought all documents identified in SSBT's answers to plaintiffs' interrogatories, and SSBT said it would produce them. Id. at 9.  SSBT will produce all such documents to plaintiffs.

Document Request 2 sought documents pertaining to SSBT's initial and continued retention by the Plans, marketing information provided by SSBT to the Plans, agreements between SSBT and the Plans, acknowledgments by SSBT of its fiduciary status, and a specification of the trust assets.  I agree with SSBT that these documents are demonstrably irrelevant to the remaining claims that remain that deal with specific decisions to settle the lawsuits.  Those decisions have nothing to do with how SSBT marketed itself or what assets it otherwise managed.  Producing documents as to SSBT's fiduciary status when it does not deny that status, and when Judge Kessler has premised its liability on that status, is a waste of time.

Document Requests 19 and 20 demand documents available to SSBT about Waste Management's financial condition, research done on that topic, or about Waste Management's alleged financial defalcations.  Understandably, SSBT protests that it did not become a trustee until January 1, 1999 and that these requests cannot legitimately seek documents that antedate its becoming a trustee. See Opposition to Plaintiffs' Motion to Compel Testimony, Sufficient Interrogatory Responses and Documents [#331] ("Opp. to MTC") at 7.  More to the point, it points to the sworn testimony by its representative that SSBT did not rely on any such information before it decided to accept the proposed settlements.

If SSBT concedes that it did not rely on such information, then the contents of the requested documents are irrelevant.  Indeed, plaintiffs' demand for more information is hard to

understand.  They now have a concession that SSBT did not have any of the information specified in these two requests.  That concession permits them to argue that it is not disputed that SSBT did not investigate independently the allegations made about Waste Management before it accepted the settlements, and to assert that SSBT's failure to do so was a breach of its fiduciary duty.  Since they have that concession, one wonders why they don't quit while they are ahead.

B.      SSBT's Responses to Plaintiffs' First Set of Interrogatories

Plaintiffs seek to compel complete responses to their first set of interrogatories, claiming that SSBT failed to provide complete responses, including the identification of persons, dates and the pertinent documents. MTC Memo at 13.

To keep this Opinion from becoming even more tedious than it is, I have attached a chart that summarizes the interrogatories that plaintiffs claim SSBT did not answer adequately.

The interrogatories probe what, if anything, SSBT did and considered before it decided to accept the settlements.  The interrogatories go further, however, and indicate that if the answer is in the affirmative, SSBT is to specify the date of meetings (or other consideration of the matter), who participated in the consideration or attended the meetings held to consider the matter, the communications pertaining to it, and the documents created that evidenced the consideration.

SSBT provides a comprehensive response to interrogatory number 2 that explains its approach to securities litigation involving stock that it held for the plans it represented.  The answer also indicates that in response to interrogatory number 1 SSBT identified the three persons "principally involved with providing services to the Plan related to the Illinois and Texas Securities Litigation settlement." MTC Memo, App'x 7 at 4.

While the answer to 2 is comprehensive, SSBT ignores that the interrogatories have two parts.  The second part specifies that, if the answer is in the affirmative, the answer will provide

details as to how, when, and by whom the matter was considered, the communications pertaining to it, and the documents generated by the consideration process.  In my view, the how, when and by whom is the very heart of this lawsuit.  I will therefore insist that SSBT supplement its answers to provide the information plaintiffs legitimately seek.  To simplify matters and to bring all these disputes to an end, my chart shows the supplementation that I am requiring SSBT to provide.

Before I turn to other matters, I must dispose of SSBT's general objections that plaintiffs complain have impeded discovery.

1. *General Objections C, D, and E: SSBT objects to the definition of the relevant time period for documents from the First Claim Period, and prior to Jan. 1, 1999.*

I have granted SSBT's motion for a protective order, and therefore these objections are sustained.  I note here that the central premise of plaintiffs' resistance to SSBT's objection is that they are entitled to information prior to the period of July 15, 1999 to December 1, 1999 (the Second Claims Period), even though SSBT did not become a trustee of the Plan until January 1, 1999.  This is to establish what kind of a case a prudent fiduciary could have developed against Waste Management. MTC Memo at 6.  That, however, is the not a claim they have ever pled.  Their breach claim, as defined by Judge Kessler, is as to SSBT's accepting the settlements after it became a trustee in 1999.  That is the only claim at issue now.

2. *General Objection G: SSBT objects to producing documents that Plaintiffs already have or that are in the public domain.*

Plaintiffs argue that they are entitled to discovery of what information SSBT possessed in its own files, even if that information may also be available in the public domain, in order to determine what information SSBT had and either knew or could have known if a prudent

investigation had been conducted. Id. at 7.  SSBT indicates that it has agreed to produce documents relevant to this suit that were previously produced to plaintiffs in other litigation or are in the public domain. Opp. to MTC at 4.  That will suffice.

3. *General Objection I:  SSBT objects to producing documents beyond SSBT's immediate possession, custody or control.*

Plaintiffs are concerned that documents on activities that were outsourced or of SSBT's agents and lawyers were not fully searched and produced. MTC Memo at 8.  SSBT does not respond to this assertion, but indicates that, thanks to the work of the court appointed mediator, it will produce documents concerning the role of CitiStreet, "the State Street affiliate involved in the Waste Plan's participation in the Texas settlement."  Opp. to MTC at 4. Plaintiffs do not otherwise establish why there is any reason to believe that their concern is justified, and their unsupported "fear" does not warrant any further judicial action.

4. *General Objection J:  SSBT objects to producing documents Plaintiffs have already requested from other parties.*

Plaintiffs believe that they are entitled to those documents in SSBT's possession relevant to their requests, even if plaintiffs have already requested them or received them from other parties. MTC Memo at 7.  SSBT has agreed to produce documents that other parties in this matter may also produce. Opp. to MTC at 4.  Thus, I find that this issue is moot.

5. *General Objection H:  SSBT objects to Plaintiffs' interrogatories that call for information already available to plaintiff through SSBT's document production or other sources.*

According to plaintiffs, SSBT's interrogatory responses that direct plaintiffs to SBBT's document production generally or to information available elsewhere are not an adequate alternative to answering interrogatories.  I agree.  SSBT will produce and identify the documents

responsive to each request by stating to which request they refer (if it has not already done so), and will produce them irrespective of whether they are otherwise available.

C.     Further search of Corporate Files by SSBT

Plaintiffs want the Court to compel SSBT to conduct a further search of its corporate files for documents and information that it, as a company, knew about what the fiduciaries of the Plan knew or should have known, and did or did not do, in connection with the wrongdoing alleged in the Illinois and Texas Securities Litigation. MTC Memo at 21.  Plaintiffs argue that the number of custodians searched is too few; however, SSBT claims that only three individuals possess relevant knowledge, and that only their files have been searched for relevant documents. Id. at 2. Plaintiffs want the records of the Fiduciary Committee, insisting that SSBT's counsel's representation that this Committee played no role in the decision to participate in the two settlements has been contradicted by deposition testimony.  See Reply Brief in Support of Motion to Compel ("Reply MTC") [#334] at 2.  According to plaintiffs, this testimony tended to prove (1) that the Fiduciary Committee had the responsibility to evaluate the claims Waste Management could make; (2) that James Phalen, CEO of CitiStreet, would have been consulted if a decision other than filing a claim was contemplated; and (3) that Susan Daniels had the oversight for evaluating plan legal claims, that her file would contain decisions regarding litigation over employer securities and that she was a non-voting member of CitiStreet's Fiduciary Committee. Id.  Thus, plaintiffs want to compel a larger search for relevant information.

Plaintiffs claim that the list that they have developed for SSBT to search of the files of fewer than fifty custodians is reasonable, because everyone listed may well possess information about SSBT's policies and practices or about Waste Management. Id.  Plaintiffs point out that

their list includes (1) James Phelan, who, as just indicated, Jenkins testified would have been consulted; (2) two men (Smaldone and Parsons) who signed the releases settling the cases; and (3) three women (Daniels, Driscaoll and Sullivan) whom Sisk identified in her deposition as likely to "have file[s] containing information about employer securities and litigation." Id.

SSBT argues that expanding the search to include these additional thirty-five custodians, who had no involvement in the decision to participate in the settlements, is unreasonable. Opp. to MTC at 7. SSBT continues to insist that the Fiduciary Committee played no role whatsoever in the settlement decision. Nevertheless, SSBT has indicated that it will allow plaintiffs to search the files of 12 custodians on the list, if the burden of the cost is shifted to plaintiffs.

Plaintiffs' showing in favor of the massive search it seeks is as thin as yesterday's gruel. Testimony about a customary practice of consulting a certain person about a certain topic or the possibility that a certain person's files might contain certain information hardly makes untrue SSBT's counsel's representation that only three persons were involved in the decisions to settle and that the Fiduciary Committee played no role in that process. Nevertheless, I will order SSBT to (1) review the Fiduciary Committee's files and the files of its members in the periods from July 15, 1999 to December 1, 1999 and from February 7, 2002 to July 15, 2002 to see if there is any evidence that the Committee or its members have any documents whatsoever pertaining in any way to the two settlements and to (2) search the files of James Phalen, Greg Smaldone, Paul Parsons, Susan Daniels, Kelly Driscoll and Mary Anne Sullivan for the same time periods and the same purposes. SSBT will then file a supplemental statement under oath by the person who conduced that search of the result of the search. SSBT shall also keep a careful record of the time expended in performing this search, and depending upon its results, may move me to compel plaintiffs to pay those costs.

D.    Additional 30(b)(6) Deposition Testimony

Judge Kessler appointed a mediator to assist the parties with efficient discovery.  The mediator, when faced with an impasse regarding the scope of a noticed 30(b)(6) deposition, assisted the parties in narrowing the scope of the deposition; after which, the parties continued with the deposition in accordance with the narrowed scope.  Plaintiffs, however, maintained their objections and indicated that they were free to compel testimony on the remaining topics.  They have done so, and they seek to compel testimony on six additional topics. MTC Memo at 22.

These topics are generic for they would add to the deposition an exploration of policies, procedures, and practices pertaining to (1) the documents and services of the Stock Management Group and the Fiduciary Committee; (2) the representation of clients in legal proceedings and whether they should initiate, opt out or settle litigation; (3) the sharing of investment analysis; (4) reviewing and monitoring the Plan's investment in Waste stock. MTC Memo at 16-19.  They also want to ask about the bases for claims of privilege and "inquiries, complaints, concerns, litigation or red flags resulting in action or non-action" by either the Company Stock Management Group or Independent Fiduciary Committee. Id. at 17.

 Most of this has nothing to do with the proper scope of discovery as I have defined it, consistent with Judge Kessler's opinions and order.  The only topic that might have some bearing is SSBT's policies as to settling litigation.  As I read the parties' agreement as to the proper topics, they seem to me to include narrow questions as to what policies SSBT had in determining whether to participate in securities litigation on behalf of its clients when it became aware of litigation affecting the stock SSBT held on their behalf.  Indeed, SSBT's answer to interrogatory 2 discusses those policies.  With that brief clarification or addition, I will not enlarge the topics of the 30(b)(6) deposition.

I appreciate that I am adding only one topic, and that it may be wasteful to re-open a deposition solely to have the witness answer a handful of questions. In lieu thereof, SSBT will designate a person who will file sworn answers to the questions that follow. I expect that person will be able and prepared to, in the language of Rule 30(b)(6), "testify about information known or reasonably available to the organization." The questions are:

1. Do you know whether SSBT had policies and practices that pertained to whether SSBT would participate in litigation on behalf of its clients, including the Plan involved in this lawsuit?

2. If you are aware of such policies and practices, what do you understand them to be?

3. Did SSBT cause any such policies or practices to be memorialized in writing?

4. If so, can you produce a copy?

5. Did SSBT inform its employees of any such policies or practices?

6. Did SSBT offer mandatory or other training to its employees as to any such policies and practices?

7. Did SSBT refer or consult any such policies or practices before it considered participation in the Illinois and Texas litigations that are in issue in this lawsuit?

## IV. Motion to Compel 30(b)(1) Deposition of Denise Sisk

Plaintiffs filed their Motion to Compel Fed. R. Civ. P. 30(b)(1) Deposition of Denise Sisk [#285] because SSBT objected to the additional deposition of Denise Sisk. See MTC 30(b)(1) at 1. SSBT indicated that Sisk would not be subjected to an additional deposition, because she was the designated 30(b)(6) witness. Id. There is nothing precluding plaintiffs from taking a 30(b)(1) deposition of Sisk. SSBT's designation of her as its 30(b)(6) witness does not make Sisk off-limits to plaintiffs. She may be deposed as to her personal knowledge. Plaintiffs, however, should not confuse the two depositions. By deposing Sisk as a 30(b)(1) witness, plaintiffs will only acquire information about her personal knowledge. She is not speaking as a corporate

designee.  Further, plaintiffs, as discussed above, may not roam into shadowy zones of relevance in Sisk's deposition, but are limited to the scope of discovery provided for in this opinion and in Judge Kessler's order.

**V.     Motion to Compel Production of Documents from Defendant State Street Bank**

Plaintiffs' <u>Motion to Compel Production of Documents from Defendant State Street Bank</u> [#299] seeks to compel production of documents in response to request numbers 28, 31, 32, and 33 in their second request for documents, request numbers 34, 35, 37, 38, 39, 40, and 41 in their third request for production of documents, and request number 24 from their amended first set of document requests. MTC Docs at 1.  Further, plaintiffs reassert their arguments against SSBT's general objections, as discussed in their first motion to compel.  <u>See Plaintiffs' Memorandum of Points and Authorities in Support of Second Motion to Compel Documents</u> ("MTC Docs Memo") at 4.  My ruling on those objections will apply to this motion as well.  <u>See</u> *supra*.

A.     <u>Second Request for Production of Documents</u>

Request 31 seeks all documents used by SSBT to advertise or promote its business, while 32 seeks documents pertaining to the negotiations that led to SSBT's being hired as investment manager for the Plan.  Request 35[7] seeks documents regarding the origin and purpose of the Company Stock Management Group.  SSBT has already agreed to produce documents related to negotiations with Waste about becoming a trustee that discuss settlement of securities claims and any "pitch materials" provided to Waste Management. Opp. to MTC at 4.  That is a more than sufficient response to these requests, which strike me as seeking patently irrelevant information.

In request number 33, plaintiffs seek "[a]ll documents describing [SSBT] policies,

---

[7] While Request 35 appears in Plaintiffs' Third Request for Production of Documents, plaintiffs discuss it jointly with numbers 31 and 32.  <u>See</u> MTC Docs Memo at 3.

practices, and procedures related to communications between [SSBT]'s company stock management and trustee units and other units of [SSBT] about company stock management clients of [SSBT]. . . ."  MTC Docs Memo at 5.  SSBT objects that what plaintiffs are really after is any documents in the files of *any* SSBT business unit regarding Waste Management.  <u>See Opposition to Plaintiffs' Second Motion to Compel Documents</u> ("Opp. to MTC Docs") [#304] at 4.  Plaintiffs justify this request as a legitimate inquiry into whether the persons who made the decision to settle the cases "had available to them the information contained in other units of the company." <u>Id</u>. at 5.  If plaintiffs had requested what those persons had available to them before they decided to settle the lawsuits, that might be a proper request. That, however, is not the request they propounded and the one they did propound is patently overbroad.

Thus, the only remaining request at issue is number 28, which seeks "any notice, claim, or other communication to any insurer of State Street in connection with the claims asserted in this lawsuit or in connection with the facts and circumstances giving rise to Plaintiffs' claims." MTC Docs Memo at 2.  SSBT has responded that no claim under any insurance policy has been submitted, and thus, there are no applicable insurance agreements. <u>Id</u>. at 3.  That will suffice.

B.    <u>Third Request for Production of Documents</u>

In request number 34, plaintiffs seek "[c]opies of all testimony, including but not limited to trial transcripts, deposition transcripts, and affidavits, by [SSBT] directors, officers, or employees, either as fact or expert witnesses, in lawsuits about investments in employer stock by ERISA retirement plans or about submitting proofs of claim on behalf of ERISA retirement plans." MTC Docs Memo at 6.  This is an impermissible request as far as it requests discovery of discovery undertaken in other matters.  As former Chief Justice Burger so acutely noted, "it has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial

interrogatories were other than wholly private to the litigants." <u>Gannett Co., Inc. v. DePasquale</u>, 443 U.S. 368, 396 (1979) (BURGER, C.J., concurring).  Plaintiffs' motion will be denied in regards to request number 34.

Request numbers 37 and 38 seek documents "sufficient to determine with respect to the retirement plan assets held in trust by [SSBT] of [SSBT]'s Company Stock Management Group retirement plan clients: the volume of assets, the revenues received by [SSBT] in connection therewith, including but not limited to trust, investment management, custodial and other revenues during the Relevant Time Period" and the same information with respect to retirement plans sponsored by Waste Management and held in trust by SSBT. MTC Docs Memo at 7. Plaintiffs argue that this information is relevant because it may lead to evidence of bias against pursuing legal claims against plan sponsor clients. <u>Id.</u>  Thus, plaintiffs want a large amount of information based on the theoretical foundation that there is a possibility that they might find a conflict of interest.  That hope cannot possibly justify forcing SSBT to undertake the burden of answering these overly-broad and far-reaching requests.

Request number 39 seeks documents regarding SSBT's policies pertaining to the circumstances under which SSBT would recommend the appointment of an independent fiduciary, and request number 40 seeks documents pertaining to the instances in the past where it made such a recommendation. MTC Docs Memo at 7-8.  According to SSBT, there are no documents responsive to request numbers 39 and 40.  I cannot compel what does not exist.  If plaintiffs are speculating that documents responsive to these requests do exist, there must be a reasonable deduction that that is true, and not a mere hunch.  <u>See, e.g.</u>, <u>Hubbard v. Potter</u>, 247 F.R.D. 27, 29 (D.D.C. 2008) (citing <u>Zubulake v. UBS Warburg LLC</u>, 217 F.R.D. 309, 313 (S.D.N.Y. 2003)).

By request number 41, plaintiffs seek documents "relating to any determination by [SSBT] or other fiduciary that [SSBT] maintained the requisite independence to act as an independent fiduciary on behalf of the Plan in the settlement of the Illinois Securities Litigation and the Texas Securities Litigation." MTC Docs Memo at 8.  SSBT claims that it "has already produced the documents demonstrating that it acted independently with respect to the decisions to participate in the Waste securities settlement." Opp. to MTC Docs at 9.  Thus, SSBT claims that the request is cumulative and duplicative. Id.  Plaintiffs, however, maintain that the request is not duplicative, because they are seeking information "relating to any *determination* that [SSBT] maintained the requisite independence to act as an independent fiduciary for the Plan in the securities settlement."  See Reply to Defendant Bank & Trust Company's Opposition to Plaintiffs' Second Motion to Compel Documents ("Reply MTC Docs") [#309] at 5.  SSBT is to produce any documents relating to any such *determination*.  If none exist, SSBT should certify that this is so.

C.      Plaintiffs' Amended First Set of Document Requests

In request number 24, plaintiffs seek to compel "[a]ll documents related to any communications with any Government Agency, including the Department of Labor ("DOL"), the Securities and Exchange Commission ("SEC") and the Office of the Comptroller of the Currency ("OCC"), regarding the Plan and/or performance of [SSBT] or any services for the Plan, including any communications with DOL regarding any investigation involving the Plan and any communications pertaining to Section 406 of ERISA, 26 U.S.C. § 1106." MTC Docs Memo at 8.  SSBT claims that some of the documents are privileged. Id. at 9.  SSBT further argues that, if plaintiffs want the documents, they can file a FOIA request with DOL. Opp. to MTC Docs at 6.  Plaintiffs argue that any privilege attached to the documents was waived by

disclosure to DOL, and that FOIA cannot exempt production in a civil case. Reply MTC Docs at 1.

To some extent, plaintiffs may be right that SSBT has waived an applicable privilege, but that is not a complete analysis. While such a disclosure may vitiate the attorney-client privilege, it may not waive the work-product privilege. I have previously addressed this difference in depth. See Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 13-15 (D.D.C. 2010). "The attorney-client and work-product privileges serve different societal interests." Id. at 13. Thus, "the conclusion that the presence of a third party during confidential communications between attorney and client or the sharing of a confidential communication with a third party defeats the attorney-client privilege does not apply to a claim of forfeiture of the work-product protection." Id. (citing United States v. Amer. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir.1980) (hereinafter AT&T)). When one party sharing a common adversary with another party discloses work product to that other party, that disclosure is perfectly consistent with maintaining the secrecy of the work product from their common adversary. AT&T at 1300. Accordingly, the work-product privilege is forfeited only when the disclosure is inconsistent with maintaining the secrecy of the work-product from the disclosing party's adversary. Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598. 605 (D.C. Cir. 2001).

Recently, the Court of Appeals for the District of Columbia Circuit has further clarified the "maintenance of secrecy" standard. See United States v. Deloitte LLP,610 F.3d 129, 141-143 (D.C. Cir. 2010). According to the Court of Appeals, in applying the standard, the Court has "generally made two discrete inquiries in assessing whether disclosure constitutes waiver." Id. at 141. First, the Court of Appeals "has considered whether the disclosing party has engaged in

self-interested selective disclosure by revealing its work product to some adversaries but not to others. Id. (citing United States v. Williams, 562 F.3d 387, 394 (D.C. Cir. 2009); In re Subpoenas Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir.1984)).  Second, the Court of Appeals has "examined whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential." Id.  A reasonable expectation of confidentiality may derive from a confidentiality agreement or an arrangement between the disclosing party and the recipient. Id.  This agreement, however, must be "relatively strong and sufficiently unqualified" to avoid waiver. Id.

This Court does not possess enough information at this time regarding the disclosure to DOL to determine whether the work-product privilege has been waived.  I will order additional briefing on the issue by the parties.  SSBT shall submit a brief, no more than ten pages in length, within ten days of this order, indicating why, in light of Deloitte, the work-product privilege was not waived.  Plaintiffs may submit a reply, no more than ten pages in length, within ten days of SSBT's filing of its brief.

## VI.    Motion to Compel Documents Responsive to Plaintiffs' Fourth Request for Production to State Street Bank

Plaintiffs filed an additional motion to compel production of documents related to "any person other than the Plan" and the settlements and documents related to practices, policies and procedures of SSBT.  See Motion to Compel Documents Responsive to Plaintiffs' Fourth Request for Production to State Street Bank [#310] ("Second MTC Docs").

I will first address the request for documents related to the policies, practices, and procedures of SSBT in regards to participation in class action settlements.  SSBT has repeatedly stated in its oppositions that no documents exist.  See Opposition to Plaintiffs' Motion to Compel Documents Responsive to Fourth Request for Production ("Opp. to Second MTC

Docs") [#316] at 2-3. Rule 34 of the Federal Rules of Civil Procedure clearly indicates that parties are only required to produce documents that "are *already* in existence." <u>Ascom Hasler Mailing Sys., Inc. v. United States Postal Serv.</u>, 267 F.R.D. 1, 8 (D.D.C. 2010) (citing <u>Alexander v. F.B.I.</u>, 194 F.R.D. 305, 310 (D.D.C. 2000) (internal citations omitted); 8A Wright *et al.*, <u>supra</u>, § 2210 (2d ed. 1994)) (emphasis added)). Plaintiffs keep seeking these documents, which SSBT keeps claiming do not exist. "Lack of evidence showing that a producing party is in fact in possession of a document is grounds to deny a motion to compel." <u>Id.</u> (citing <u>Alexander</u>, 194 F.R.D. at 310). The motion to compel what does not exist must be denied.

Next, I will consider the documents that seek discovery of SSBT's actions related to the settlement and SSBT's other clients. Specifically, plaintiffs seek:

(1) documents pertaining to participating in, opting out of, or objecting to the settlements in the Illinois Securities Litigation or the Texas Securities Litigation on behalf of any person other than the Plan;

(2) documents pertaining to any financial loss, or remedial advice given by or to SSBT with respect to participating in the Texas and Illinois Securities Litigation on behalf of any person other than the Plan, including any analysis of actual or potential conflicts of SSBT or SSBT clients with respect to such settlement;

(3) documents that identify the person, group, division, entity, etc. of SSBT that possess primary responsibility or authority for determining whether to participate in, opt out of, or object to the settlements in the Illinois Securities Litigation or the Texas Securities Litigation on behalf of any person or entity other than the Plan;

(4) documents that identify the person, group, division, entity, etc. of SSBT that possessed primary responsibility or authority for submitting the documents necessary to

participate in, opt out of, or object to the settlements in the Illinois Securities Litigation or the Texas Securities Litigation on behalf of any person or entity other than the Plan;

(5) documents that identify the person, group, division, entity, etc. of State Street that actually determined whether to participate in, opt out of, or object to the settlements in the Illinois Securities Litigation or the Texas Securities Litigation on behalf of any person or entity other than the Plan. See Memorandum of Points and Authorities in Support of Motion to Compel Documents Responsive to Plaintiffs' Fourth Request for Production ("Second MTC Docs Memo") at 5.

Plaintiffs argue that they need this information to prove or disprove whether there was a routine business practice. Id. SSBT argues that the decision for the Plan to participate in the Waste Management settlements did not involve consultation with other business units outside of the company stock group. Opp. to Second MTC Docs at 4. According to SSBT, none of the information related to other clients has any bearing on this case. Id.

In Plaintiffs' Response in Opposition to State Street's Motion for Protective Order ("Opp. to Protect. Order") [#335], plaintiffs indicate that they obtained a document which reflects that SSBT filed over seventy-five claims in the Illinois Litigation. Opp. to Protect. Order at Ex. A. The document lists the client and the recorded losses for each claim. Id. That information gives the Court some idea of the burden the proposed discovery would impose. Plaintiffs would want to know specific information about the claim decision-making process for all seventy-five of the claims. The reason for this discovery, plaintiffs argue, is to establish a routine organizational practice. Second MTC Docs Memo at 6. But, whether or not the settlement of the Illinois and Texas litigations was or was not consistent with a general SSBT practice of settling cases involving its clients is irrelevant. That is was or it was not does not

24

advance the inquiry into whether that settlement constituted a violation of law one iota.

**VII.    Motion to Determine the Sufficiency of State Street Bank's Answers and Objections to Plaintiffs' First Request for Admissions**

Plaintiffs served 157 requests for admissions on SSBT.  Plaintiffs now seek the Court's intervention to determine the sufficiency of SSBT's responses. Mot. to Det. Sufficiency at 1. Rule 36 of the Federal Rules of Civil Procedure allows a party to "serve on any other party a written request to admit, for the purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1).  If a party does not admit a matter, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).  If the answering party lacks knowledge or information, it may assert so "as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Id.  A party may object to the requests, but it may not "object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5).

Requests for admissions are not a discovery device. Nat'l Semiconductor Corp. v. Ramtron Int'l Corp., 265 F.Supp.2d 71, 74 (D.D.C.2003).  The purpose of requests for admissions is "to narrow the scope of issues to be litigated and to thereby expedite the litigation process." Kendrick v. Sullivan, No. 83-CV-3175, 1992 WL 119125, at *3 (D.D.C. May 15, 1992) (citing Rabil v. Swafford, 128 F.R.D. 1 (D.D.C. 1989); Equal Employment Opportunity Comm'n v. Baby Products Co., 89 F.R.D. 129, 130 (E.D. Mich. 1981)).  Accordingly, federal courts express their concern when they breed additional litigation because one party is dissatisfied with the answer of the other. Nat'l Semiconductor, 265 F. Supp. 2d at 74.

Nevertheless, a requesting party may, as plaintiffs have done here, "move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). A court may determine that an objection is justified, or it may order the responding party to answer the request. Id. Further, if a court finds that an answer does not comply with the federal rules, it "may order either that the matter is admitted or that an amended answer be served." Id.

A.    General Objections

Plaintiffs first take exception to SSBT's introducing its Answers by a series of General Objections. Those objections, denominated by letter, are:

A.    To information concerning any time period other than or earlier than the Second and Third Claims Periods set forth in Plaintiffs' Amended Complaint.

B.    Insofar as admissions pertain to events that occurred prior to January 1, 1999, the date when SSBT became a trustee of the plan.

C.    To the extent the response would disclose trade secrets, commercial or proprietary business information of State Street or any other confidential information of State Street or Waste Management benefit plan participants.

While couched as "objections," SSBT also:

E.    Reserves the right to object to the admissibility of any of its answers at trial.

F.    States that "[e]ach request is denied except to the extent expressly admitted."

See Memorandum of Points and Authorities in Support of Motion to Determine the Sufficiency of State Street Bank & Trust Company's Answers and Objections to Plaintiffs' First Requests for Admission [#336] ("Mot. to Det. Sufficiency Memo") at 2-4.

First, as to A and B, I have concluded that the proper scope of discovery in this case is limited to the Second and Third Claims periods, and cannot involve matters prior to the events

that occurred before SSBT became a trustee of the Plan.  These objections are therefore legitimate.

Second, General Objection F states a truism–what is not admitted is denied.  If the universe of answers is admissions and denials, then what is not one is the other.  Contrary to plaintiffs' claim,[8] stating that truism in an introductory manner does not violate the obligation to "specifically deny" a Request for Admission[9] when, as is true here, a party speaks to each Request and specifically admits or denies it.

Third, SSBT may reserve its right to contest the admissibility of any admission at trial. That a rule of civil procedure (Fed. R. Civ. P. 36(b)) specifies that a matter admitted is conclusively established does not render the matter admissible under the Federal Rules of Evidence.  See Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions . . .").

B.    Specific Objections

In 44 of its responses, SSBT qualified its answers rather than simply stating "Admitted" or "Denied."  Request 25 is an example.  Plaintiffs asked that SSBT admit that "[A]s an investment officer, Susan Curtis monitored news related to Waste Management, including reading Waste Management's securities filings." Mot. to Det. Sufficiency Memo, Exhibit 1 at 11.  SSBT responded: "Subject to the General Objections, State Street answers that Susan Curtis was an employee of State Street and one of her responsibilities was monitoring publicly available information about Waste Management." Id.

Plaintiffs believe that this is improper because SSBT must admit (or apparently) deny the Request unequivocally.  It may not "answer" them. Mot. to Det. Sufficiency Memo at 4.

---

[8] Mot. to Det. Sufficiency Memo at 4.

[9] Fed. R. Civ. P. 36(a)(4).

Plaintiffs cite no authority for this interpretation of the Rule, missing the irony that they are "objecting" to getting more information than they would get if SSBT had, as was its right, simply denied the request.  Furthermore, it is unreasonable for plaintiffs to think that there is some significant difference, worthy of bothering a court, with what it demanded–that SSBT admit that "Susan Curtis monitored news related to Waste Management, including reading Waste Management's securities filings"–and what it got: "Susan Curtis was an employee of State Street and one of her responsibilities was monitoring publicly available information about Waste Managment." Mot. to Det. Sufficiency Memo, Exhibit 1 at 11.  Given that kind of pettifoggery, it is hardly surprising that this case is entering its eight year of litigation.

Moreover, their position that the only legitimate answer is an admission or a denial is directly contradicted by the subsection of Rule 36 that states:

> 4) Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

Fed. R. Civ. P. 36(4).

There is therefore nothing in the rule that divides the legitimate responses to a Request for Admissions into watertight compartments of utter admissions and utter denials.[10]  To the contrary, given that it is unreasonable to expect that one party can always accept the other party's characterization of an event, the rule permits a party to qualify its answer, which is exactly what SSBT has done.  I have therefore specifically reviewed the answers to which

---

[10] Indeed, plaintiffs admit this. Mot. to Det. Sufficiency Memo at 8 (conceding that a party may qualify answers that are only partly correct).

plaintiffs take exception[11] as not being "proper admissions" and I find them to be in accordance with this Rule and perfectly legitimate.

C.    <u>Information from the Other Defendants</u>

A series of requests (65-69, 73-74, 132-136) demand that SSBT admit facts pertaining to the actions of other defendants by demanding whether those defendants made certain inquiries of SSBT.  Mot. to Det. Sufficiency Memo at 5.  SSBT provided no answer to these demands but objected to all of them on the grounds that the request was "more appropriately directed to defendants other than State Street." <u>Id</u>. at 6.  That is not a proper answer.  The Rule permits only an admission or denial, that may be qualified, or an assertion of a lack of knowledge, conditioned by the requirement of the Rule as to good faith. Fed. R. Civ. P. 36(a)(4).  SSBT's objection is therefore overruled and SSBT must provide new answers to these requests.

D.    <u>Proof of the Submission of Other Claims</u>

Requests 77-80, 81-83, 147-149, 151-152 seek admissions pertaining to the submission of claims by SSBT on behalf of its other clients. I  have already concluded that this information exceeds the proper scope of discovery and SSBT's objections to these requests will be sustained.

**VII. Conclusions**

For the reasons stated herein, State Street's <u>Motion for a Protective Order</u> [#326] will be granted.  In light of such, State Street's <u>Motion for Leave to File Supplemental Exhibit in</u>

---

[11] I.e. 1-3, 5-12, 25-30, 37, 44, 46-47, 50-51, 53, 55, 71, 87, 90-91, 97-98, 104, 106. 110-111, 114-117, 120, 124, 128-129, and 144. Note that requests number 1-10 simply do not serve the purpose of a request for admission.  They ask SSBT to admit that it is "unaware of any case before the date of the Amended Complaint" where a court or DOL made certain legal determinations.  Req. 3-7.  These requests do not narrow any issues for trial, because they request admissions concerning SSBT's counsel's  current legal knowledge which is irrelevant to its claims.  Note that plaintiff also takes exception to SSBT's answer to 121, but it is a denial, with an explanation that I find fairly responds to the Request; SSBT denies that it cannot identify the records to which the Request refers.

Support of Motion for a Protective Order [#380] will be denied as moot.  Plaintiffs' <u>Motion to</u>

<u>Compel Testimony, Sufficient Interrogatory Responses and Documents from State Street Bank</u>

[#272] will be granted in part and denied in part.  Plaintiffs' <u>Motion to Compel 30(b)(1)</u>

<u>Deposition of Denise Sisk</u> [#285] will be granted.  Plaintiffs' <u>Motion to Compel Production of</u>

<u>Documents from Defendant State Street Bank</u> [#299] will be granted in part and denied in part.

Furthermore, as regards the DOL disclosures, SSBT will be ordered to submit a brief, no more

than ten pages in length, within ten days of this order, indicating why, in light of <u>Deloitte</u>, the

work-product privilege was not waived.  Plaintiffs will then be allowed to submit a reply, no

more than ten pages in length, within ten days of SSBT's filing of its brief.  Plaintiffs' <u>Motion to</u>

<u>Compel Documents Responsive to Plaintiffs' Fourth Request for Production to State Street Bank</u>

[#310] will be denied.  Plaintiffs' <u>Motion to Determine the Sufficiency of State Street Bank's</u>

<u>Answers and Objections to Plaintiffs' First Request for Admissions</u> [#336] will be granted in

part and denied in part.  An order accompanies this Memorandum Opinion.


_____

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE