# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
WILLIAM S. HARRIS, et al.,      )
                                )
          Plaintiffs,           )
                                )
      v.                        )      Civil Action No. 02-618 (GK)
                                )
JAMES E. KOENIG, et. al.,       )
                                )
          Defendants.           )
                                )
```

## <u>MEMORANDUM OPINION</u>

Plaintiffs William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr. are former employees of Waste Management Holdings, Inc. ("Old Waste" or "the Company") and participants in the Waste Management Profit Sharing and Savings Plan ("Old Waste Plan" or "Plan"). They bring this action on behalf of the Plan's approximately 30,000 participants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et</u> <u>seq.</u>, against Defendants,[1] all of whom were fiduciaries of the Old Waste

---

[1] Defendants include the "Old Waste Fiduciaries," which are Old Waste (the Plan's sponsor), the Waste Management, Inc. Profit Sharing and Savings Plan Investment Committee ("Old Waste Investment Committee"), the Waste Management, Inc. Profit Sharing and Savings Plan Administrative Committee ("Old Waste Administrative Committee"), the individual Trustee Members of the Committees, the Old Waste Board of Directors and its individual members, and fifteen unidentified fiduciaries; and the "New Waste Fiduciaries," which are the Waste Management Retirement Savings Plan ("New Waste Plan"), the Investment Committee of the Waste Management Retirement Savings Plan ("New Waste Investment Committee") and its individual Trustee Members, the State Street Bank and Trust Company ("State Street"), and fifteen unidentified fiduciaries.

Plan or are fiduciaries of its successor plan, the Waste Management Retirement Savings Plan ("New Waste Plan").[2]

This matter is presently before the Court on Plaintiffs' Amended Motion for Class Certification. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, Plaintiffs' Motion is **granted in part, and denied in part**.

## I. Background

This action arises from Old Waste's announcement on February 24, 1998 that it was restating several of its financial statements for periods between 1991 and 1997 and that, prior to 1992 and continuing through the first three quarters of 1997, it had materially overstated its reported income by $1.43 billion. That announcement led to the filing of a securities class action in the Northern District of Illinois, which settled on September 17, 1999 ("Illinois Litigation"). Under the terms of the settlement, Old Waste and its agents were released from liability for any claims-- including unknown claims--brought by members of the Illinois Settlement Class. In 1999, after Old Waste's January 1, 1999, merger with Waste Services, Inc. to become New Waste, New Waste announced further after-tax charges and adjustments of $1.23

---

[2] On January 16, 1998, Old Waste and Waste Services, Inc., merged to become New Waste. On January 1, 1999, the Old Waste Plan was merged with the USA Waste Services, Inc. Employee's Savings Plan to become the Waste Management Retirement Savings Plan ("New Waste Plan").

billion. The announcement led to the filing of other securities class action complaints against New Waste and certain of its officers and directors in the Southern District of Texas, which settled on April 29, 2002 ("Texas Litigation"). Both settlements included the Plan and its fiduciaries within the scope of the class.

On April 1, 2002, Plaintiffs filed the instant action in this Court, alleging ten counts of ERISA violations pursuant to ERISA § 502(a)(2), codified as 29 U.S.C. § 1132(a)(2). ERISA § 502(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109 ("ERISA § 409")]." 29 U.S.C. § 1132(a)(2). Under ERISA § 409(a), fiduciaries found to have breached their fiduciary duties are personally liable "to make good to such plan any losses to the plan resulting from such breach . . . and . . . such other equitable or remedial relief as the court may deem appropriate . . . ." 29 U.S.C. § 1109. Although participants can assert claims on behalf of the entire plan or on behalf of their individual plan accounts, all of Plaintiffs' claims in this case are asserted on behalf of the entire Plan. See LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256, 128 S.Ct. 1020, 1026, 169 L.Ed.2d 847 (2008) (explaining that § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan

injuries"); <u>Stanford v. Foamex L.P.</u>, 263 F.R.D. 156, 164 (E.D. Pa. 2009).

Plaintiffs' claims were originally divided into three periods. First, Plaintiffs alleged five ERISA violations related to the Plan's purchase of inflated shares of company stock in the first claim period between January 1, 1990 and February 24, 1998 (Counts I-V). Second, Plaintiffs alleged four ERISA violations related to the release of claims by the Plan's fiduciaries in the Illinois securities litigation in the second claim period between July 15, 1999 and December 1, 1999 (Counts VI-IX). Third, Plaintiffs alleged one ERISA violation in the third claim period between February 7, 2002 and July 15, 2002 related to the release of claims by the New Waste Plan's trustee--Defendant State Street Bank and Trust Company--in the Texas securities litigation (Count X). Finally, on December 14, 2009, Plaintiffs were granted leave to file a Substitute Fourth Amended Complaint to add Counts XIII and XIV, which alleged Defendant State Street's violation of ERISA § 406(b)(2) in the Illinois and Texas Litigations.[3] <u>Harris v. Koenig</u>, 673 F.Supp.2d 8, 14-15 (D.D.C. 2009) [Dkt. No. 279].

On January 15, 2010, Defendants filed three Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6):

---

[3] The Court denied Plaintiffs leave to add Counts XI and XII, which alleged additional ERISA violations in the third claim period, because of Plaintiffs' undue delay in bringing the claims. 673 F.Supp.2d at 13-14.

(1) the Waste Defendants'[4] Motion to Dismiss Counts I-V and Counts VII-IX [Dkt. No. 294]; (2) the Individual Waste Management Defendants'[5] Motion to Dismiss Counts I-V [Dkt. No. 291]; and (3) Defendant State Street's Motion to Dismiss Counts XIII and XIV [Dkt. No. 292]. On June 10, 2010, the Court denied the Waste Defendants' Motion to Dismiss Counts I-V and VII-IX, and granted in part and denied in part the Individual Waste Defendants' Motion to Dismiss.[6] Defendant State Street's Motion to Dismiss was granted with respect to Counts XIII and XIV.

On November 9, 2010, Plaintiffs filed an unopposed Motion for Leave to File a Fifth Amended Complaint [Dkt. No. 403], which was granted. In the Fifth Amended Complaint, Plaintiffs withdrew Count X on the basis that the evidence obtained in discovery was insufficient to prove the claim.

---

[4] These Defendants include Old Waste, the Old Waste Investment Committee, the Old Waste Administrative Committee, and the New Waste Investment Committee.

[5] These Defendants include the individuals on Old Waste's Board of Directors, the Old Waste Investment Committee, the Old Waste Administrative Committee, the New Waste Investment Committee, and the executives who administered the Old Waste Plan.

[6] Counts I-V were dismissed against Defendants H. Jesse Arnelle, J. Steven Bergerson, Dean L. Buntrock, Jerry E. Dempsey, Dr. James Edwards, Donald F. Flynn, Herbert A. Getz, Roderick M. Hills, Joseph M. Holsten, Peter H. Huizenga, William P. Hulligan, Edward C. Kalebich, John J. Machota, Robert S. Miller, Peer Pedersen, James R. Peterson, John C. Pope, and Phillip B. Rooney. In addition, Defendants Howard H. Baker, Jr., Dr. Pastora San Juan Cafferty, Thomas R. Frank, Patricia McCann, Paul M. Montrone, D.P. Payne, and Steven G. Rothmeier were dismissed from the action.

The Fifth Amended Complaint now includes the following claims.

In the first claim period, Count I alleges that the Old Waste Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to prudently manage the assets of the Plan; Count II alleges that the Old Waste Administrative Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to provide complete and accurate information to Plan participants and beneficiaries; Count III alleges that Old Waste, the Old Waste Administrative Committee, the Old Waste Investment Committee, and any remaining Individual Defendants who are or were members of those Committees engaged in prohibited exchanges of stock between the Plan and Old Waste in violation of ERISA § 406(a)(1)(A); Count IV alleges that Old Waste, its Board of Directors, and any remaining Individual Defendants on the Old Waste Board breached their fiduciary duties under ERISA § 404 by failing to monitor the fiduciaries of the Plan; and Count V alleges that all Old Waste Fiduciaries breached their fiduciary duties under ERISA §§ 405(a)(2) and (3) by enabling their co-fiduciaries to commit the ERISA violations in Counts I-IV, and by failing to remedy them.

In the second claim period, Count VI alleges that Defendant State Street breached its fiduciary duty under ERISA § 404 by

failing to adequately investigate and preserve the claims in Counts I-V in the Illinois Litigation and by causing the claims to be released; Count VII alleges that Old Waste and State Street engaged in prohibited exchanges of choses in action between the New Waste Plan and Old Waste in violation of ERISA § 406(a)(1)(A) by releasing claims in the Illinois Litigation; Count VIII alleges that the New Waste Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to adequately monitor State Street's performance in the Illinois Litigation; and Count IX alleges that State Street, Old Waste, the New Waste Investment Committee, and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA §§ 405(a)(2) and (a)(3) by enabling their co-fiduciaries to commit the ERISA violations described in Counts VI-VIII, and by failing to remedy them.

On June 30, 2010 Plaintiffs filed their Amended Motion for Class Certification based on the remaining counts in the Fifth Amended Complaint [Dkt. No. 356]. The proposed class representatives are William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr., all Plan participants who were formerly employed by Old Waste as truck drivers. Plaintiffs request that Ellen M. Doyle and the law firm of Stember Feinstein Doyle Payne & Cordes, L.L.C. and J. Brian McTigue and the law firm of McTigue &

Veis, L.L.P. be appointed as Co-lead Counsel, and Gregory Yann Porter of Bailey & Glasser, L.L.P. be appointed as Counsel. On July 30, 2010, the Waste Defendants filed an Opposition to Plaintiffs' Motion, which Defendant James E. Koenig joined [Dkt. Nos. 368 and 393]. Plaintiffs filed their Reply on August 16, 2010 [Dkt. No. 377].

## II. Standard of Review

Federal Rule of Civil Procedure 23(a) requires a plaintiff to satisfy the following four requirements before a class can be certified: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties, and their counsel, must fairly and adequately protect the interests of the class ("adequacy of representation"). See Fed.R.Civ.P. 23(a). In addition, the plaintiff must satisfy one of the three requirements of Rule 23(b).

The plaintiff bears the burden of proof on each element of Rule 23. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); McCarthy v. Kleindienst, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984). "In considering a motion for class certification, the Court's inquiry does not extend to an examination of the merits of the case. Instead, the legal standard

is whether the evidence presented by plaintiffs establishes a reasonable basis for crediting plaintiffs' assertions." <u>Kifafi v. Hilton Hotel Ret. Plan</u>, 228 F.R.D. 382, 385 (D.D.C. 2005) (citation and internal quotations omitted). A district court exercises broad discretion in deciding whether to permit a case to proceed as a class action. <u>Hartman v. Duffey</u>, 19 F.3d 1459, 1471 (D.C. Cir. 1994) (citing <u>Bermudez v. Dep't of Agric.</u>, 490 F.2d 718, 725 (D.C. Cir. 1973)); <u>see</u> <u>also</u> <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981) (discussing district court's authority to exercise control over a class action).

## III. Analysis

Plaintiffs seek to certify the following class:

> All participants (and their beneficiaries) in the Waste Management Retirement Savings Plan and/or its predecessor plans, including the Waste Management Profit Sharing and Savings Plan, for whose accounts the fiduciaries of the plan acquired the following employer securities of Waste Management, Inc.:
>
> > A) pre-corporate-merger common stock (NYSE: WMX) on or after January 1, 1990, through and including July 16, 1998; and/or
> >
> > B) post-corporate-merger common stock (NYSE: WMI) on or after July 16, 1998, through and including November 9, 1999.[7]

---

[7] Only Count X was brought on behalf of those participants for whose accounts the plan fiduciaries acquired post-corporate-merger common stock. Pls.' Proposed Order on Mot. for Class Cert. [Dkt. No. 356-2 ¶ 8]. However, Plaintiffs have since withdrawn Count X. Consequently, Plaintiffs have not carried their burden of proof with respect to this portion of the class, and certification

Pls.' Amd. Mot. for Class Cert. at 1-2.

Defendants raise several arguments against certification of the class of participants for whose accounts the plan fiduciaries acquired pre-corporate-merger common stock. First, Defendants argue that Plaintiffs have not satisfied the commonality, typicality, and adequacy of representation requirements of Rule 23(a). Second, Defendants argue that Plaintiffs have failed to show that one of the three requirements of Rule 23(b) is satisfied.

**A. Rule 23(a) Requirements**

Defendants do not dispute that the first requirement of Rule 23(a), numerosity, is satisfied. The Plan's Forms 5500 report an estimated class size of 21,000 to 33,000 participants during the relevant period. 5th Amd. Compl. ¶¶ 41-42. The Court agrees that this class is so numerous that "joinder of all members is impracticable" and, consequently, that the class action mechanism serves the interests of judicial economy and efficiency. Fed.R.Civ.P. 23(a)(1); <u>Freeport Partners, L.L.C. v. Allbritton</u>, No. 04-cv-2030, 2006 WL 627140, at *5 (D.D.C. Mar. 13, 2006).

The main argument advanced by Defendants is that the remaining uncertainty surrounding the scope of the Illinois release gives rise to potential conflicts among the putative class members which preclude a finding of the required commonality, typicality, and adequacy of representation. In their January 15, 2010, Motion to

of this portion of the class is **denied.**

Dismiss, the Waste Defendants argued that Plaintiffs cannot simultaneously allege that (1) the ERISA claims in Counts I-V are not subject to the terms of the Illinois Release; and (2) Defendants committed ERISA violations by releasing those same ERISA claims in the Illinois Litigation. This Court rejected that argument in its June 10, 2010, Memorandum Opinion denying the Waste Defendants' Motion to Dismiss, concluding that "Fed. R. Civ. P. 8(d)(3) permits plaintiffs to plead inconsistent claims in support of alternative theories of recovery" and that a fuller record was required to decide whether the release applies to Counts I-V. Harris v. Koenig, No. 02-cv-618, 2010 WL 2560038, at *8 (D.D.C. June 10, 2010) (quoting Fed.R.Civ.P. 8(d)(3) (2009) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")).

In opposition to Plaintiffs' Motion for Class Certification, Defendants now argue that, even if Counts I-V and Counts VI-IX may be brought simultaneously in the Complaint as alternative theories of recovery, the incentives to pursue either the first or the second period claims are not the same for all putative class members. Thus, Defendants argue that Plaintiffs cannot meet their burden to prove commonality, typicality, and adequacy of representation under Rule 23(a).

## 1. Commonality

To meet the commonality requirement of Rule 23(a)(2), Plaintiffs must show that at least one issue, the resolution of which will affect all or a significant number of the putative class members, is common to the entire class. See <u>DL v. Dist. of Columbia</u>, 237 F.R.D. 319, 322 (D.D.C. 2006); <u>In re Vitamins Antitrust Litig.</u>, 209 F.R.D. 251, 259 (D.D.C. 2002); <u>Freeport Partners</u>, 2006 WL 627140, at *5. The commonality requirement is a "low bar," and "courts have generally given it a permissive application." <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 19 (1st Cir. 2008) (citation and internal quotations omitted).

Plaintiffs argue that several questions of law and fact concerning the alleged actions and omissions of the Plan fiduciaries are common to the entire class of Plan participants. Pls.' Mot. at 18-21. Specifically, Plaintiffs point to "the identity of the Plan fiduciaries during the relevant periods, their responsibilities and duties with respect to investing in Company Stock, the treatment of the Plan's claims in the settlement of the Illinois and Texas Securities, whether the Plan and the class members' accounts suffered losses as a result of the fiduciary breaches claimed, and other matters." Pls.' Mot. at 18-19; <u>see</u> <u>also</u> 5th Amd. Compl. ¶ 273.

Defendants respond that the inconsistent legal theories advanced by Plaintiffs in Counts I-V and Counts VI-IX defeat commonality. Because this Court has deferred ruling on the scope of the Illinois release until the record is more fully developed, uncertainty remains as to which, if any, putative class members will be able to pursue Counts I-V and which, if any, will be limited to pursuing Counts VI-IX if it is found that their claims under Counts I-V were released. In short, according to Defendants, "there remains substantial uncertainty about which putative class members will be able to pursue which of Plaintiffs' conflicting theories of recovery." Defs.' Opp'n at 13. Thus, Defendants argue, because Counts I-V and Counts VI-IX raise no common questions, there would be no common questions among those class members limited to pursuing Counts I-V and those class members limited to pursuing Counts VI-IX.

First, this argument is purely speculative; there is no evidence in the record to suggest that the putative class will be split along these lines. In fact, at this early stage, the scope of the Illinois release is at least one question of law--and it is a crucial question--which is common to the entire putative class.

Second, assuming _arguendo_ that the effect of the Illinois release is to split the putative class into two groups, the Court does not agree that Counts I-V and Counts VI-IX raise no common questions. While the first and second claim periods differ as to

legal and factual issues, the value of the released ERISA claims in Counts I-V, which depends in part on the merits of those claims, is relevant to Counts VI-IX. <u>See</u> Defs.' Opp'n at 2 ("[T]o prevail on the Second Period claims, Plaintiffs must show that the Illinois Judgment released the Plan's First Period claims <u>for inadequate consideration</u> . . . .") (emphasis added). Certain issues related to the merits of Counts I-V are relevant to the value of those claims, and are therefore common to the entire class. <u>See</u> <u>Trief v. Dun & Bradstreet Corp.</u>, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members.").

For these reasons, the Court concludes that the existing uncertainty regarding the scope and effect of the Illinois Release does not defeat commonality. Consequently, Plaintiffs have met their burden to demonstrate that there are common issues of law and fact which affect the entire class.

### 2. Typicality

Rule 23(a) next requires a showing of typicality, or that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that the named plaintiffs have the same motivation as absent class members to ensure fair and effective representation. Typicality is shown if each class member's claim arises from the

same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability. <u>Baby Neal for and by Kanter v. Casey</u>, 43 F.3d 48, 58 (D.C. Cir. 1994); <u>see</u> <u>also</u> <u>Freeport Partners</u>, 2006 WL 627140, at *6. The commonality and typicality requirements of Rule 23(a) tend to merge, since both look to whether each class member's claims, including the claims of the representative parties, arise from the same course of events. <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2370 n.13, 72 L.Ed.2d 740 (1982).

The claims brought in the Fifth Amended Complaint are all based on alleged actions or omissions which were directed at the Plan. In fact, Counts I-IX are all brought under ERISA § 502(a)(2), which permits plan participants to bring counts on behalf of the plan to recover <u>plan</u> injuries, not individual injuries. <u>See</u> <u>LaRue</u>, 552 U.S. 248, 256, 128 S.Ct. 1020, 1026. Thus, Plaintiffs' claims in Counts I-IX, as well as the legal arguments in support of the claims, are typical, if not identical, to the claims and arguments of the other Plan participants who are putative class members.

Defendants argue, however, that the specter of a conflict among class members regarding the proper scope of the Illinois release defeats Plaintiffs' arguments in support of typicality. Defendants argue that there is a conflict among the putative class members because some Plan participants may wish to limit the scope

of the Illinois release, whereas others may wish to argue it does not apply at all or even that it applies to the entire first claim period.[8]

First, as noted above, this scenario is purely speculative; there is no evidence in the record to suggest that a certain number of putative class members have an incentive to limit the scope of the release, and that a different group of putative class members have an incentive to interpret it broadly. Such "speculative suggestion of potential conflict is insufficient to defeat class certification." Aliotta v. Gruenberg, 237 F.R.D. 4, 12 (D.D.C. 2006) (quoting Rodolico v. Unisys Corp., 199 F.R.D. 468, 477 (E.D.N.Y. 2001)); see also Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003).

Second, in the event that such a conflict does arise, the Court has discretion to consider creating sub-classes. See Fed.R.Civ.P. 23(c)(5) (permitting a class action to be divided into

---

[8]    At times, Defendants suggest that, once the scope of the Illinois release is decided, conflicts would persist among class members who are limited to Counts I-V and class members who are limited to Counts VI-IX. The Court sees no reason why this would be the case. There is no discernible conflict presented by a class containing both (1) members whose ERISA claims in Counts I-V were released and who pursue Counts VI-IX on the ground that the release itself constituted ERISA violations, and (2) members whose ERISA claims in Counts I-V were not released and who continue to pursue Counts I-V. The only potential conflict conceivable at this stage is between those putative class members who might have an incentive to limit the scope of the Illinois release and other putative class members who might have an incentive to interpret the release broadly. However, as explained, the Court deems this conflict speculative.

subclasses which are treated as a class); <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 271-72 (3d Cir. 2009) (discussing district court's discretion to divide the class into subclasses in order to prevent conflicts of interest). The Court therefore concludes that Plaintiffs have met their burden to prove typicality.

### 3. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Like the typicality inquiry, this requirement seeks to uncover conflicts of interest between the named parties and the putative class. <u>See</u> <u>Amchem</u>, 521 U.S. at 625-26, 117 S.Ct. at 2250-51. "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." <u>Twelve John Does v. Dist. of Columbia</u>, 117 F.3d 571, 575 (D.C. Cir. 1997) (citation and internal quotations omitted). In addition, the adequacy of representation prong requires that the class representatives have a commitment to, knowledge of, and interest in the litigation, although they need not have expert knowledge of all aspects of the case. Only a "total lack of interest and unfamiliarity with [the] suit would be

sufficient grounds to deny plaintiffs' motion [to certify class]."
In re Newbridge Networks Sec. Litig., 926 F.Supp. 1163, 1177
(D.D.C. 1996) (citation and internal quotations omitted).

Plaintiffs' proposed representative parties include William S.
Harris, Reginald E. Howard, and Peter M. Thornton. These Plaintiffs
had Plan accounts which were invested in company stock during the
period from January 1, 1990 to November 2, 1994 and throughout the
Illinois Class Period (from November 2, 1994 to July 15, 1998).
Pls.' Reply at 8. Specifically, Harris was a participant in the Old
Waste and New Waste Plans and had invested in the Waste Management
Stock Fund from September 30, 1992 until the filing of the present
Motion; Howard was a participant in the Old Waste Plan who had
invested in the Waste Management Stock Fund from at least January
1, 1992 through February 1, 1999; and Thornton was a participant in
the Old Waste Plan who had invested in the Waste Management Stock
Fund and the ESOP Fund from at least January 1, 1992 through
February 1, 1999. 5th Amd. Compl. ¶¶ 17-19; Decl. of Ellen M. Doyle
in Support of Pls.' Reply in Support of Amd. Mot. for Class
Certification (Ex. A to Pls.' Mot. at ¶¶ 5-13); Pls.' Mot. at 7.

First, Defendants argue that the named Plaintiffs cannot
adequately represent the class because of the potentially
conflicting interests with the unnamed members of the class arising
out of the Illinois release. As discussed above, the Court rejects
this argument on the basis that it is speculative and, in the event

-18-

any conflict arises, there are procedural mechanisms for protecting all class members.

Second, Defendants argue that the proposed class representatives are inadequate because they know too little about the litigation. Defendants point to a number of instances where Harris, Howard, and Thornton admitted at their depositions to ignorance of certain details of the case, including the details of the Illinois and Texas Litigations, the precise composition of the class, the outcome of Defendants' Motions to Dismiss, and even the contents of the Complaint. Defs.' Opp'n at 20-22.

However, in complex actions such as this, the named representatives are entitled to rely on counsel to conduct the litigation, and are not required to be intimately familiar with the details of the case. In re Avon Secs. Litig., No. 91-cv-2287, 1998 WL 834366, at *9 (S.D.N.Y. Nov. 30, 1998) (in complex case, "the qualifications of class counsel are generally more important in determining adequacy than those of the class representatives").[9]

In addition, Plaintiffs cite to portions of the named representatives' depositions which indicate that they regularly consult with class counsel and review all legal documents which are forwarded to them. Pls.' Reply at 16-17. The statements cited in

---

[9]    It should be remembered that all three Plaintiffs were employed as truck drivers. It would be absurd to expect them to understand the intricacies of ERISA and the securities laws, which sometimes elude even experienced counsel.

Plaintiffs' Reply brief also indicate that Harris, Howard, and Thornton share a strong and genuine interest in litigating the suit in order to rectify the alleged injury done to Plan participants. Id. Consequently, the Court concludes that Harris, Howard, and Thornton are adequate class representatives.

Finally, Defendants failed to oppose Plaintiffs' proposed class counsel, so their adequacy may be treated as conceded. D.D.C. Local Rule 7(b); <u>Fox v. Am. Airlines, Inc.</u>, Civ. No. 02-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003), <u>aff'd</u>, <u>Fox v. Am. Airlines, Inc.</u>, 389 F.3d 1291 (D.C. Cir. 2004). Plaintiffs have therefore met their burden to prove the adequacy of both the class representatives and class counsel.

## B. Rule 23(b) Requirements

In addition to meeting the requirements of numerosity, commonality, typicality, and adequacy of representation in Rule 23(a), Plaintiffs must show that one of the requirements of Rule 23(b) is met. Plaintiffs seek certification of the class under Rules 23(b)(1) and/or (b)(2). Rule 23(b)(1) permits certification when:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual

> adjudications or would substantially impair or
> impede their ability to protect their
> interests.

Fed.R.Civ.P. 23(b)(1).

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).

### 1. Rule 23(b)(1)

Both Rules 23(b)(1)(A) and 23(b)(1)(B) are designed to prevent prejudice to the parties resulting from multiple suits involving the same subject matter by certifying a mandatory class. Rule 23(b)(1)(A) seeks to prevent prejudice to the party opposing the class, while Rule 23(b)(1)(B) seeks to prevent prejudice to other class members who did not participate in the litigation. Because breach of fiduciary duty claims under ERISA § 502(a)(2) are often, as they are here, shared by all Plan participants, the danger of such prejudice is great. Thus, such claims are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." In Re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3d Cir. 2009); see also In re Marsh ERISA Litig., 265 F.R.D. 128, 142 (S.D.N.Y. 2010).

Defendants argue, however, that neither Rule 23(b)(1)(A) nor Rule 23(b)(1)(B) applies because there are individual factual

questions relating to each putative class member's claims which eliminate any risk of inconsistent or varying adjudications or adjudications which would be dispositive of the interests of other class members. In other words, Defendants argue that the uncertainty surrounding the Illinois release requires individualized consideration of the class members' claims and, as a result, mandatory certification under Rule 23(b)(1) would be unwarranted.

The Court disagrees. In the Illinois Litigation, Defendants released the ERISA claims of the Plan, not the ERISA claims of the individual participants. Thus, the scope of the release is a single question of law which does not implicate facts applicable to specific individuals, and is appropriate for treatment on a class-wide basis. Cf. In re Polaroid ERISA Litig., 240 F.R.D. 65, 75-76 (S.D.N.Y. 2006). Defendants' argument is therefore rejected, and the Court turns to consideration of Defendants' other arguments against Rule 23(b)(1) certification.

### a. Rule 23(b)(1)(A)

Defendants first oppose class certification under Rule 23(b)(1)(A) because "there is little, if any risk, of individual suits by unnamed class members if the class is not certified." Defs.' Opp'n at 24. In support of this argument, Defendants point to the fact that, to date, no one apart from the three named representatives have filed suit. Id. However, as Plaintiffs

respond, there is no reason for other class members to have filed suit at this point given that this class action is pending.

Second, Defendants argue that the threat of incompatible standards of conduct is rarely present in suits for monetary damages, and thus certification under Rule 23(b)(1)(A) is inappropriate. Plaintiffs seek an order that Defendants restore to the New Waste Plan all losses occasioned by their breaches of fiduciary duties and "appropriate relief to enjoin the acts and practices of the Defendants alleged herein," as well as "such other equitable and legal relief as the Court deems just." 5th Amd. Compl., Prayer for Relief. It is true, as Defendants argue, that the relief sought by Plaintiffs is primarily monetary.

Although there is some precedent that ERISA § 502(a)(2) suits seeking primarily monetary relief are not appropriate for certification under Rule 23(b)(1)(A), most courts that have recently ruled on the issue have rejected that conclusion. Compare In re First Am. Corp. ERISA Litig., 258 F.R.D. 610, 621-22 (C.D. Cal. 2009) (concluding, on the basis of definitive Ninth Circuit precedent, that an ERISA § 502(a)(2) suit brought primarily for monetary damages was not appropriate for Rule 23(b)(1)(A) certification); and Hochstadt v. Boston Sci. Corp., 708 F.Supp.2d 95, 104 n.11 (D. Mass. 2010) (concluding the same in a footnote); with Hans v. Tharaldson, No. 3:05-cv-115, 2010 WL 1856267, at *10 (D.N.D. May 7, 2010) (concluding that Rule 23(b)(1)(A)

certification is appropriate for § 502(a)(2) claim for monetary relief); Stanford, 263 F.R.D. at 173 (same); Jones v. NovaStar Fin., Inc., 257 F.R.D. 181, 193-94 (W.D. Mo. 2009) (same); Kanawi v. Bechtel Corp., 254 F.R.D. 102, 111 (N.D. Cal. 2008) (same); In re Nortel Networks Corp. ERISA Litig., No. 3:03-md-01537, 2009 WL 3294827, at *15-16 (M.D. Tenn. Sept. 2, 2009) (same); In re Merck & Co. Inc. Secs., Derivative & ERISA Litig., Nos. 05-cv-1151, 05-cv-2369, 2009 WL 331426, at *11 (D.N.J. Feb. 10, 2009) (same); Abbott v. Lockheed Martin Corp., No. 06-cv-701, 2009 WL 969713, at *9 (S.D. Ill. Apr. 3, 2009) (same).

Those courts which have found certification under Rule 23(b)(1)(A) inappropriate have done so on the basis of Ninth and Eleventh Circuit precedent concluding that suits primarily for monetary damages pose no risk of incompatible standards of conduct. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1193 (9th Cir. 2001); Babineau v. Fed Express Corp., 576 F.3d 1183, 1195 (11th Cir. 2009) Significantly, neither Zinser nor Babineau addressed whether their holdings should apply in the ERISA § 502(a)(2) context. Moreover, these cases involved, respectively, product liability and breach of contract claims in which each class member had individual claims against the defendants, and therefore class certification would pose individual liability issues. Here, in contrast, the claims are brought on behalf of the entire Plan,

of which the putative class members are participants, and rulings on liability will apply to all members of the class.

As the court in <u>Stanford</u>, 263 F.R.D. at 173 (citations and internal quotations omitted), explained in language that is applicable to this case:

> The issue is not whether plaintiff seeks primarily monetary damages; rather, the focus of a Rule 23(b)(1)(A) analysis is on whether separate actions could lead to adjudications that establish incompatible standards of conduct for the party opposing the class. . . . [T]he court is concerned with the effect of inconsistent orders with respect to individual Plan accounts. When raising a plan-wide claim, a plaintiff is pursing a claim on behalf of the entire plan, which necessarily includes discrete accounts within the plan. Accordingly, if a court entertaining an individual account claim [pursuant to <u>LaRue</u>, 552 U.S. 248, 128 S.Ct. 1020] were to reach a different conclusion from a court entertaining a plan-wide claim, the fiduciaries would be left with incompatible orders concerning the same account. . . . Such competing orders lead to incompatible standards of conduct for the defendants.

In addition, although Plaintiffs primarily seek monetary damages in this case, it is not clear why what Defendants term their "perfunctory" requests to enjoin the acts and practices of the Defendants could not result in incompatible standards of conduct if a separate action resulted in a contrary ruling. Defs.' Opp'n at 27; <u>see</u> <u>In re Merck & Co., Inc.</u>, 2009 WL 331426, at *11 (stating that Rule 23(b)(1)(A) "does not require that the varying adjudications would establish incompatible standards as the

exclusive or even primary remedy" but only that "varying adjudications would establish incompatible standards"). For example, this Court could enter a ruling to restore Plan assets, remove Plan fiduciaries, or reform Plan investigative practices and monitoring practices that would directly contradict another Court's ruling on the very same issues. In that event, Defendants would be faced with incompatible standards of conduct with respect to their duties and obligations toward the Plan.

For these reasons, the Court concludes that there is a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" in this case. Thus, certification under Rule 23(b)(1)(A) is appropriate.

### b. Rule 23(b)(1)(B)

As noted above, Rule 23(b)(1)(B) focuses not on the danger to defendants of inconsistent rulings, but on the risk that separate actions might dispose of the interests or rights of other class members. Historically, § 502(a)(2) actions brought on behalf of the entire plan have been considered especially appropriate for Rule 23(b)(1)(B) certification. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 833-34, 119 S.Ct. 2295, 2308-09, 144 L.Ed.2d 715 (1999). The Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of

beneficiaries. In addition, Congress's intent was that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9, 105 S.Ct. 3085, 3090 n.9, 87 L.Ed.2d 96 (1985).

Defendants argue, however, that the Supreme Court's decision in LaRue, 552 U.S. 248, eliminated the risk that individual class members' rights or interests would be disposed of by § 502(a)(2) actions. The plaintiff in LaRue sought to bring a § 502(a)(2) claim against his plan's fiduciaries for their failure to make certain changes he requested to his individual account, which diminished the value of his interest in the plan. The Supreme Court held that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. at 256.

Defendants contend that this holding--that a participant in a defined contribution plan can bring an individual suit for breach of fiduciary duty, in addition to the possibility of bringing a suit on behalf of the entire plan--means that the putative class members can protect their own interests by bringing individual suits, whatever the disposition of this litigation may be, making certification under Rule 23(b)(1)(B) inappropriate. There is some precedent supporting this interpretation. See In re First Am. Corp.

ERISA Litig., 258 F.R.D. at 622; In re Computer Sciences Corp. ERISA Litig., No. 08-cv-2398, 2008 WL 7527874, at *3 (C.D. Cal. Sept. 2, 2008).

However, most courts deciding class certification motions for § 502(a)(2) actions post-LaRue have continued to find Rule 23(b)(1)(B) certification appropriate. See George v. Kraft, No. 08-C-3799, 2010 WL 3386, at *402 (N.D. Ill. Aug. 25, 2010); In re Marsh ERISA Litig., 265 F.R.D. at 144; Stanford, 263 F.R.D. at 173-74; Hochstadt, 708 F.Supp.2d at *104 n.12; Kanawi, 254 F.R.D. at 109; NovaStar Fin., Inc., 257 F.R.D. at 190; Hans v. Tharaldson, 2010 WL 1856267, at *9-10.

In Stanford, the court acknowledged the appeal of Defendants' argument, but concluded that Rule 23(b)(1)(B) certification was still appropriate post-LaRue:

> [B]ecause Stanford challenges behavior of defendants that allegedly injured the entire Fund, Stanford's claims would be identical to any individual account claim that another putative class member may raise. Indeed, . . . a participant's individual account is still a part of the Plan, and, therefore, an adjudication as to the Plan will likewise impact a participant's individual accounts. Thus, the availability of an individual account claim under § 502(a)(2) does not alleviate the concerns cited by the numerous courts that have certified ERISA class actions pursuant to Rule 23(b)(1)(B) in situations where claims on behalf of the Plan are identical to those on behalf of an individual account.

263 F.R.D. at 174.

Defendants argue that the reasoning in <u>Stanford</u> is inapplicable because "the claims of each of the class representatives are potentially very different from those available to the other class representatives and to absent members of the putative class." Defs.' Opp'n at 31 n.19. As has been discussed, the Court is not convinced that the uncertainty surrounding the scope of the Illinois release will result in "very different" claims for some putative class members. At most, the effect of the release would be to create two groups of putative class members: those whose claims in Counts I-V were released, and those whose claims were not released. Thus, adjudication of the named representatives' claims as to the Plan would impact the individual accounts of those participants who are similarly situated.

Thus, the Court concludes that <u>LaRue</u> did not eliminate the risk that the putative class members' interests and rights in this action will be disposed of if separate litigation on the same subject matter is permitted. Consequently, certification of a mandatory class under Rule 23(b)(1)(B) is appropriate.

## 2. Rule 23(b)(2)

Finally, as noted above, a class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P.

23(b)(2). Thus, Rule 23(b)(2) certification is appropriate for a class seeking primarily equitable relief for a common injury, not a class seeking substantial monetary damages. <u>In re Veneman</u>, 309 F.3d 789, 792 (D.C. Cir. 2002); <u>see</u> <u>also</u> Fed.R.Civ.P. 23(b)(2), adv. comm. n. (certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages").

While Plaintiffs are seeking injunctive and declaratory relief in this action, their primary goal is, as discussed earlier, to obtain monetary damages for class members. Thus, the Court concludes that certification under Rule 23(b)(2) is inappropriate.

### C. Rule 23(g)

Finally, a court that certifies a class must appoint class counsel under Rule 23(g). Plaintiffs request that Ellen M. Doyle and the law firm of Stember Feinstein Doyle Payne & Cordes, L.L.C. and J. Brian McTigue and the law firm of McTigue & Veis, L.L.P. be appointed as Co-lead Counsel, and Gregory Yann Porter of Bailey & Glasser, L.L.P. be appointed as Counsel. Proposed class counsel have extensive experience litigating ERISA class actions, and have demonstrated their commitment to the prosecution of this action. Pls.' Mot. at 26; Attn'y Biographies (Ex. Q to Dkt. No. 249). In addition, Defendants do not oppose certification of Plaintiffs' proposed class counsel. <u>See</u> Defs.' Opp'n. Consequently, the Court

appoints Plaintiffs' requested counsel as class counsel in this case.

**CONCLUSION**

For the reasons set forth herein, the Court concludes that Plaintiffs have carried their burden to meet the requirements under Rules 23(a), 23(b)(1)(A), 23(b)(1)(B) for certification of the class defined as follows:

> All participants (and their beneficiaries) in the Waste Management Retirement Savings Plan and/or its predecessor plans, including the Waste Management Profit Sharing and Savings Plan, for whose accounts the fiduciaries of the plan acquired the following employer securities of Waste Management, Inc.:
>
> A) pre-corporate-merger common stock (NYSE: WMX) on or after January 1, 1990, through and including July 16, 1998.

Plaintiffs have failed to meet their burden, however, to certify the class of participants (and their beneficiaries) for whose accounts the fiduciaries of the plan acquired "B) post-corporate-merger common stock (NYSE: WMI) on or after July 16, 1998, through and including November 9, 1999." In addition, Plaintiffs have failed to meet their burden to prove that certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate. Consequently, Plaintiffs' Amended Motion for Class Certification [Dkt. No. 356] is **granted in part, and denied in part**.

The Court certifies the following common questions of fact and

law for Counts I-IX of the Fifth Amended Complaint:[10]

- Whether the fiduciaries caused the Plan to acquire shares of company stock at inflated prices, and whether this constituted a breach of fiduciary duty under ERISA;

- Whether findings made in other litigation against Defendant James E. Koenig may be used affirmatively for purposes of collateral estoppel in this action;

- Whether the representation of the Plan and its participants by State Street in the Illinois Litigation was adequate and loyal;

- Whether State Street's investigation into the claims of the Plan prior to its agreement to release the claims was adequate;

- Whether the representation of the Plan and its participants by the lead plaintiffs in the Illinois Litigation was adequate when they did not have or assert ERISA claims;

- Whether additional claims for a recovery under ERISA could have been but were not made for the Plan during the Illinois Litigation;

- Whether additional claims for a recovery under ERISA had any value and, if so, what additional value the ERISA claims provided;

- Whether any claims for additional recoveries under ERISA were within the scope of the Illinois Litigation settlement release;

- Whether the release in the Illinois Litigation settlement may be enforced against the Plan and its participants;

- Whether State Street caused the Plan to engage in a prohibited transaction in the settlement of its claims in the Illinois Litigation;

- Whether Defendants Koenig and Tobeckson acted to conceal their breaches of fiduciary duty, thereby subjecting the

---

[10]     This list is not intended as a final or definitive list of the common questions of fact or law in this case.

Plaintiffs' claims to ERISA's six-year statute of limitations; and

- Whether Plaintiffs and Class members were injured by the Old Waste Plan Investment Committee Defendants' alleged failure to conduct an adequate fiduciary review to determine whether it was prudent to continue to acquire Company Stock.

In addition, the Court appoints Harris, Howard, and Thornton as class representatives. Ellen M. Doyle and the law firm of Stember Feinstein Doyle Payne & Cordes, L.L.C. and J. Brian McTigue and the law firm of McTigue & Veis, L.L.P. are appointed as Co-lead Counsel, and Gregory Yann Porter of Bailey & Glasser, L.L.P. is appointed as Counsel.[11] An Order will accompany this Memorandum Opinion.

|  |  |
|---|---|
| November 12, 2010 | /s/ _____ |
|  | Gladys Kessler |
|  | United States District Judge |

<u>Copies to</u>: attorneys on record via ECF

---

[11]     No objection was made as to their appointment.

-33-