UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM S. HARRIS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES E. KOENIG, *et al.*, <br><br> Defendants. | Civil Action No. 02-618 (GK/JMF) |

MEMORANDUM OPINION

Pending before me now is <u>Plaintiffs' Motion for Protective Order to Prohibit Defendants' Proposed Deposition of Plaintiffs' Counsel Ellen M. Doyle</u> ("Mot.") [#395]. The lengthy and complicated history of this case, now in its eighth year of litigation, is recounted in opinions by both Judge Kessler and myself.[1] For present purposes, it suffices to say that the Fourth Amended Complaint (Docket #280) sets forth claims pertaining to the settlement by the Waste Management defendants ("WM")[2] and State Street Bank and Trust Company ("SSBT") of claims in courts in Illinois and Texas. Specifically, the pertinent counts can be summarized as follows:

---

[1] <u>Harris v. Koenig</u>, No. 02-CV-618, 2010 WL 2560038(D.D.C. Jun. 10, 2010); <u>Harris v. Koenig</u>, 602 F.Supp.2d 39, 42-44 (D.D.C.2009); <u>Harris v. Koenig</u>, No. 02-CV-618, __ F.R.D. ___, 2010 WL 3909507(D.D.C. Sept. 16, 2010).

[2] For present purposes, "Waste Management defendants" and "WM" refer to defendants Waste Management Holdings Inc., Waste Management Retirement Savings Plan, WMI Board of Directors, Waste Management Inc. Profit Sharing and Savings Plan Investment Committee, Waste Management Inc. Profit Sharing and Savings Plan Administrative Committee, and Investment Committee of the Waste Management Retirement Savings Plan. <u>Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Protective Order to Prohibit Defendants' Proposed Deposition of Plaintiffs' Counsel Ellen M. Doyle</u> [#395-1] at 1; <u>Defendants' Opposition to Plaintiffs' Motion for Protective Order to Prohibit Deposition of Ellen M. Doyle</u> ("Opp.") [#396] at 1.

> (1) WM and SSBT breached their fiduciary duties under ERISA and engaged in prohibited transactions by causing or permitting the plan to participate in the settlement of the Illinois Securities Class Action, causing the claims to be released (Counts VI-IX);
>
> (2) SSBT breached its fiduciary duties under ERISA and engaged in prohibited transactions by causing or permitting the Plan to participate in the settlement of the Texas Securities Class Action, failing to conduct adequate reviews of potential ERISA claims, and causing the claims to be released (Count X).

See Opp. at 3.

Ellen M. Doyle, Esq., is an attorney for plaintiffs in this action. In 2002, one week following the filing of the original ERISA complaint in this case (Docket #1), Doyle wrote a letter to Diane V. Dygert, counsel for the Waste Management retirement plan. Opp. at 3-4, Exh. 1. Doyle sought assurance that "no rights of the Plan and its participants asserted in this newly-filed ERISA Action [were] being released without adequate consideration in the securities litigation pending in the United States District Court for the Southern District of Texas." Opp. at Exh. 1. That securities litigation was, of course, the "Texas Litigation" referred to in Count X of the Fourth Amended Complaint, wherein plaintiffs claim that, among other things, SSBT released the Plan's claims without adequate consideration. Fourth Amended Complaint at ¶¶ 224-28.

Ultimately, Doyle, as counsel for William S. Harris, one of the plaintiffs in this action, moved to intervene in the Texas litigation to object to a proposed settlement. Opp. at 5. The Texas trial judge denied Harris' motion to intervene and approved the settlement, and Harris appealed to the Fifth Circuit. Id. While the appeal was pending, counsel for Harris and counsel for the lead plaintiff in the Texas Securities Class Action

negotiated a stipulation of settlement modifying the plan of allocation; the trial judge approved the proposed amendment. Id. at 6, Exh. 10. The plan of allocation entered into connection with the Texas settlement was modified so that $4.5 million was set aside from the Net Settlement Fund and allocated to the Waste Management Retirement Savings Plan (in addition to the $2 million Plan participants would otherwise receive under the plan of allocation). Id. at 6.

In August 2003, Doyle and fellow counsel for plaintiffs filed an application for $1.125 million in attorneys' fees for the work they performed in opposing the Texas Settlement, and obtaining the increased allocation. Id. at Exh. 11. In the accompanying fee petition, Doyle and her colleagues made the following statements about their work:

(1) Harris' objections "involved novel and difficult issues" concerning the effect of a release in a securities class action settlement on ERISA plan settlements and the responsibilities of fiduciaries. Opp. at Exh. 11 at 9. Harris' objections could "not be regarded as a particularly desirable 'case,'" and Harris' objection "was far from a 'slam dunk.'" Id. at Exh. 11 at 12.

(2) Neither Harris nor the parties were able to cite any published court opinions addressing the issues at the time of Harris' objections. Id. at Exh. 11 at 9.

(3) The Department of Labor proposed a prohibited transactions exemption relating to the participation of ERISA plans in securities class action settlements, in light of "issues . . . that had not been previously considered." Id. at 6, Exh. 11 at 11.

Nothing warms the cockles of a lawyer's heart quite like catching opposing counsel in a contradiction, and defendants in this case want now to take Doyle's deposition to explore the fee petition statements with her.

It now appears, however, that plaintiffs are dismissing Count X of the Fourth Amended Complaint, having decided to dismiss the claims based on the settlement of the

3

Texas litigation.[3] Defendants were unaware of plaintiffs' intent when they noticed Doyle's deposition, or even when they submitted their opposition to the protective order. Defendants' Sur-Reply in Support of Opposition to Plaintiffs' Motion for Protective Order to Prohibit Deposition of Ellen M. Doyle ("Sur-reply") [#411] at 2.[4]

With the withdrawal of Count Ten and the claims based on the Texas litigation, the air has gone out of the balloon. All discovery is subject to a balancing calculus, wherein its utility is weighed against its cost. Fed. R. Civ. P. 26(b)(2)(C)(iii). The best defendants can do is argue that Doyle's statements about the Texas litigation will bear on the wisdom of the defendants' settlement of the Illinois litigation. Sur-reply at 3. Doyle, however, has already made the statements that defendants wish to exploit, and taking her deposition will only cause her to repeat them, or to qualify them and show that they are of no significance to the Illinois litigation. That discussion has nothing to do with the facts of this case, but consists of legal arguments about the validity of the positions plaintiffs have taken. Judge Kessler already knows what Doyle said in her fee petition, and can assess its legal significance without further elucidation by Doyle. If I know anything about lawyers, the notion that defendants' counsel will secure additional and fatal admissions from opposing counsel is a pipe dream.

More significantly, Doyle will likely not answer any questions, and will be

---

[3] On November 9, 2010, four days after filing their Reply Memorandum in Support of Plaintiffs' Motion for Protective Order ("Reply") [#400], plaintiffs filed Plaintiffs' Unopposed Motion for Leave to File Fifth Amended Complaint to Withdraw Count Ten and to Conform Complaint to Court's Prior Rulings Concerning Counts Eleven, Twelve, Thirteen, and Fourteen [#403]. The motion was granted, and the Fifth Amended Complaint was entered November 12, 2010, at Docket #408.

[4] Plaintiffs asserted in their reply that defendants had been advised of their intentions, but do not note when. Reply at 2.

justified in doing so.  It must be recalled that the only questions defendants can ask of Doyle are why she said what she said in a filing in the Texas court, her views on the validity of the position she took on behalf of her client in Texas, and how they relate to the position she is taking on behalf of the same client in the Illinois litigation.  It is impossible for the answers to be anything but her protected work product, for her thoughts on those topics are obviously her "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B).  In light of that, I find defendants' assurances to Doyle that their deposition questions will not invade her work product to be hollow; how can one ask a lawyer her views as to the validity of the positions she took, and will take, on behalf of a client without invading her work product?

Furthermore, it is my practice to preside personally over depositions where I anticipate there will be objections on the basis of work product and attorney-client privilege.  I cannot bring myself to spend the taxpayers' money presiding over a deposition where I anticipate sustaining objection after objection.  Thus, plaintiffs' motion for a protective order will be granted, the subpoenas served upon Ellen M. Doyle shall have no effect, and Doyle is discharged from any obligation to comply with the subpoenas.

I must add that I am troubled by how counsel conducted themselves with reference to this motion.  I do not understand why defendants' counsel, who have had access to the Texas fee petition since 2003, decided to take Doyle's deposition seven years later.  I also cannot comprehend why plaintiffs did not move me to stay resolution of their motion for a protective order when they were contemplating dismissing the count based on the Texas litigation.  Finally, I do not know why counsel did not have a

5

*thorough* discussion of plaintiffs' intentions as to that count and its significance for plaintiffs' motion, if they were genuinely meeting and conferring about the motion before it was filed, as they were supposed to be doing, and claimed they did.[5]

I am obliged to find out what happened, and to that end, I am ordering both parties to show cause in writing by December 8, 2010, why they both should not be sanctioned pursuant to 28 U.S.C. § 1927 for their conduct in the prosecution and defense of this motion.

A separate Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiffs state that WM served their subpoena on Doyle on October 8, 2010, while SSBT served its subpoena on Doyle on October 12, 2010. Mot. at 1. Plaintiffs' counsel assert that they conferred with defendants' counsel "in a good faith effort to resolve the dispute without Court action" on October 12, 2010, the same day the second subpoena was served. Id. at 2. Plaintiffs' motion was filed October 15, 2010.