# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM S. HARRIS, <u>et al.</u>,   )
                                   )
                                   )
        Plaintiffs,      )
                                   )
      v.                 )     Civil Action No. 02-618 (GK)
                                   )
JAMES E. KOENIG, <u>et al.</u>,   )
                                   )
        Defendants.      )
                                   )

## <u>MEMORANDUM OPINION</u>

Plaintiffs William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr. are former employees of Waste Management Holdings, Inc. ("Old Waste") and participants in the Waste Management Profit Sharing and Savings Plan ("Old Waste Plan" or "Plan"). They bring this action on behalf of the Plan's approximately 30,000 participants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et seq.</u>, against Defendants,[1]

---

[1] Defendants include the "Old Waste Fiduciaries," which are Old Waste (the Plan's sponsor), the Waste Management, Inc. Profit Sharing and Savings Plan Investment Committee ("Old Waste Investment Committee"), the Waste Management, Inc. Profit Sharing and Savings Plan Administrative Committee ("Old Waste Administrative Committee"), the individual Trustee Members of the Committees, the Old Waste Board of Directors and its individual members, and fifteen unidentified fiduciaries; and the "New Waste Fiduciaries," which are the Waste Management Retirement Savings Plan ("New Waste Plan"), the Investment Committee of the Waste Management Retirement Savings Plan ("New Waste Investment Committee") and its individual Trustee Members, the State Street Bank and Trust Company ("State Street"), and fifteen unidentified fiduciaries.

all of whom were fiduciaries of the Old Waste Plan[2] or of its successor plan, the Waste Management Retirement Savings Plan ("New Waste Plan").[3]

This matter is presently before the Court on the Waste Management Defendants'[4] Motion for Summary Judgment Based on the Statute of Limitations ("WM Mot.") [Dkt. No. 446], Defendants Koenig and Tobecksen's Motion for Summary Judgment ("Koenig Mot.") [Dkt. No. 439], and Plaintiffs' Cross Motion on Statute of Limitations and Release and in Opposition to Defendants' Motions for Summary Judgment on These Defenses ("Pls.' Mot.") [Dkt. No. 471-1]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, the Court concludes that Defendants' Motions for summary judgment are **granted in part** and **denied in part**. Plaintiffs' summary judgment Motion is **denied**.

---

[2] From at least January 1, 1989, Old Waste also sponsored an employee stock ownership plan (the "ESOP"). In May 1998, the ESOP was merged into the Old Waste Plan, and its assets were held by the Old Waste Plan in a fund called the "ESOP Fund."

[3] On January 16, 1998, Old Waste and Waste Services, Inc., merged to become New Waste. On January 1, 1999, the Old Waste Plan merged with the USA Waste Services, Inc. Employee's Savings Plan to become the New Waste Plan.

[4] The term "Waste Management Defendants" refers to Defendants Old Waste, Old Waste Investment Committee, Old Waste Administrative Committee, New Waste Plan, and New Waste Investment Committee.

## I. Background[5]

This action arises from Old Waste's announcement on February 24, 1998, that it had materially overstated its reported income by approximately $1.3 billion prior to 1992 and continuing through the first three quarters of 1997, and that it was therefore restating several of its financial statements for periods between 1991 and 1997. That announcement led to the filing of a securities class action in the United States District Court for the Northern District of Illinois, which settled on September 17, 1999 ("Illinois Litigation").[6] Under the terms of the settlement ("Illinois Settlement"), Old Waste and its agents were released from liability for any claims--including unknown claims--brought by members of the Illinois Settlement Class in exchange for $220 million, of which the New Waste Plan recovered $86,609.76. In 1999,

---

[5] Unless otherwise noted, the facts set forth herein are drawn from the several Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h).

[6] On July 15, 1999, the Illinois district court entered a Preliminary Approval Order approving a proposed settlement and provisionally certifying a class, for settlement purposes only, of all persons (other than Defendants and their affiliates) who had acquired Old Waste common stock ("Company Stock") between November 3, 1994, and February 24, 1998. See Fifth Amended Complaint ("FAC") ¶ 138 [Dkt. No. 408]. Pursuant to the Preliminary Approval Order, "a Notice of Pendency and Proposed Settlement of Class Action, dated July 20, 1999 (the 'Illinois Notice'), was sent to [all] members of the [Illinois settlement class], including the Plan and its fiduciaries." Id. The Illinois Notice described the scope of the release that would be given by members of the Illinois settlement class in exchange for the settlement consideration, and advised class members of their right to object to or opt out of the proposed settlement by September 2, 1999. See id.

New Waste announced further after-tax charges and adjustments of $1.23 billion. That announcement led to the filing of additional securities class action complaints against New Waste and certain of its officers and directors in the Southern District of Texas, which settled on April 29, 2002 ("Texas Litigation"). Both settlements included the Plan and its fiduciaries within the scope of the class.

On April 1, 2002, Plaintiffs filed suit in this Court, alleging ten counts of ERISA violations pursuant to ERISA § 502(a)(2), codified as 29 U.S.C. § 1132(a)(2).[7] Plaintiffs' claims were originally divided into three periods. First, Plaintiffs alleged five ERISA violations related to the Plan's purchase of inflated shares of Company Stock in the first claim period between January 1, 1990, and February 24, 1998 (Counts I-V, the "First Period Claims"). Second, Plaintiffs alleged four ERISA violations

---

[7] After the filing of this case, Defendant Old Waste filed a motion in the Illinois district court to enforce the Illinois Settlement in order to prevent this action from moving forward. In that motion, Defendant Old Waste argued that Plaintiffs were barred from prosecuting any ERISA claims relating to or arising out of Old Waste's February 24, 1998, Restatement because (1) the Old Waste Plan had released all claims relating to the Restatement on behalf of itself and Plan participants; and (2) the Old Waste Plan and its participants were barred by the Illinois Settlement from asserting any released claims in this or any other action. See Ex. 11 to Defendants' Omnibus Motion to Dismiss the Third Amended Complaint [Dkt. No. 186-13]. On March 11, 2003, Judge Wayne R. Andersen, who presided over the Illinois Litigation, denied Defendant Old Waste's motion on the ground of judicial economy. In re Waste Mgmt., Inc. Sec. Litig., No. 97-C-7709, 2003 WL 1463585, at *2 (N.D. Ill. Mar. 19, 2003).

related to the release of claims by the Plan's fiduciaries in the Illinois Litigation in the second claim period between July 15, 1999, and December 1, 1999 (Counts VI-IX, the "Second Period Claims"). Third, Plaintiffs alleged one ERISA violation related to the release of claims by the New Waste Plan's Trustee--Defendant State Street[8]--in the Texas Litigation in the third claim period between February 7, 2002, and July 15, 2002 (Count X).

On March 12, 2009, this Court dismissed Counts I-V as time-barred under ERISA § 413 because Plaintiffs had "actual knowledge of the breach or violation" more than three years before filing the original Complaint. Harris v. Koenig, 602 F. Supp. 2d 39, 52 (D.D.C. 2009) ("Harris I"). At that time and based on the allegations contained in the Third Amended Complaint, the Court also rejected Plaintiffs' argument that the three-year limitation period should be tolled under the statute's fraudulent concealment provision, finding that Defendants' failure to disclose material information did not constitute an act of concealment under ERISA. Id. at 52-53.

---

[8] On January 1, 1999, State Street was appointed Trustee of the New Waste Plan. Effective February 1, 1999, the New Waste Investment Committee appointed State Street to serve as the Investment Manager for the New Waste Plan. See FAC ¶¶ 47, 50. Pursuant to the terms of the Investment Manager Agreement between State Street and the New Waste Investment Committee, State Street had "full discretionary authority to manage" the New Waste Plan's assets and funds. Id. ¶ 50.

On December 14, 2009, Plaintiffs were granted leave to file a Substitute Fourth Amended Complaint ("4th Am. Compl.") [Dkt. No. 280]. Harris v. Koenig, 673 F. Supp. 2d 8, 14-15 (D.D.C. 2009) ("Harris II"). In their Fourth Amended Complaint, Plaintiffs amended Counts I-V to include new allegations which would establish fraudulent concealment--namely, that certain Old Waste Plan fiduciaries "fraudulently misstated, or caused to be fraudulently misstated, material financial information contained in disclosures required by ERISA and the 1934 Act." 4th Am. Compl. ¶ 79. Plaintiffs also added Counts XIII and XIV, which alleged Defendant State Street's violation of ERISA § 406(b)(2) in the Illinois and Texas Litigations.[9]

On January 15, 2010, the following Motions to Dismiss were filed by Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6): (1) the Waste Management Defendants' Motion to Dismiss Counts I-V and Counts VII-IX [Dkt. No. 294]; (2) the Individual Waste Management Defendants'[10] Motion to Dismiss Counts I-V [Dkt. No. 291]; and (3) Defendant State Street's Motion to Dismiss Counts XIII and XIV [Dkt. No. 292]. On June 10, 2010, the

[9] The Court denied Plaintiffs leave to add Counts XI and XII, which alleged additional ERISA violations in the third claim period, because of Plaintiffs' undue delay in bringing these claims. Harris II, 673 F. Supp. 2d at 13-14.

[10] These Defendants included the individual members of Old Waste's Board of Directors, the Old Waste Investment Committee, the Old Waste Administrative Committee, the New Waste Investment Committee, and the executives who administered the Old Waste Plan.

Court denied the Waste Management Defendants' Motion to Dismiss Counts I-V and VII-IX, and granted in part and denied in part the Individual Waste Defendants' Motion to Dismiss.[11] <u>Harris v. Koenig</u>, 722 F. Supp. 2d 44, 64-65 (D.D.C. 2010) ("Harris III"). Defendant State Street's Motion to Dismiss was granted with respect to Counts XIII and XIV. <u>Id.</u>

On November 12, 2010, Plaintiffs filed a Fifth Amended Complaint ("FAC"). In this Complaint, Plaintiffs withdrew Count X on the basis that the evidence obtained in discovery was insufficient to prove the claim. The Fifth--and final--Amended Complaint now includes the following claims.

In the first claim period, January 1, 1990, to February 24, 1998, Count I alleges that the Old Waste Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to prudently manage the assets of the Plan; Count II alleges that the Old Waste Administrative Committee and any remaining Individual Defendants who are or were members of that

---

[11] Counts I-V were dismissed against Defendants H. Jesse Arnelle, J. Steven Bergerson, Dean L. Buntrock, Jerry E. Dempsey, Dr. James Edwards, Donald F. Flynn, Herbert A. Getz, Roderick M. Hills, Joseph M. Holsten, Peter H. Huizenga, William P. Hulligan, Edward C. Kalebich, John J. Machota, Robert S. Miller, Peer Pedersen, James R. Peterson, John C. Pope, and Phillip B. Rooney. In addition, Defendants the Honorable Howard H. Baker, Jr., Dr. Pastora San Juan Cafferty, Thomas R. Frank, Patricia McCann, Paul M. Montrone, D.P. Payne, and Steven G. Rothmeier were dismissed from the action.

Committee breached their fiduciary duties under ERISA § 404 by failing to provide complete and accurate information to Plan participants and beneficiaries; Count III alleges that Old Waste, the Old Waste Administrative Committee, the Old Waste Investment Committee, and any remaining Individual Defendants who are or were members of those Committees engaged in prohibited exchanges of stock between the Plan and Old Waste in violation of ERISA § 406(a)(1)(A); Count IV alleges that Old Waste, its Board of Directors, and any remaining Individual Defendants on the Old Waste Board breached their fiduciary duties under ERISA § 404 by failing to monitor the fiduciaries of the Plan; and Count V alleges that all Old Waste Fiduciaries breached their fiduciary duties under ERISA § 405(a)(2) and (3) by enabling their co-fiduciaries to commit the ERISA violations in Counts I-IV, and by failing to remedy them.

In the second claim period, July 15, 1999, to December 1, 1999, Count VI alleges that Defendant State Street breached its fiduciary duty under ERISA § 404 by failing to adequately investigate and preserve the claims in Counts I-V in the Illinois Litigation and by causing the claims to be released; Count VII alleges that Old Waste and State Street engaged in prohibited exchanges of choses in action between the New Waste Plan and Old Waste in violation of ERISA § 406(a)(1)(A) by releasing claims in the Illinois Litigation; Count VIII alleges that the New Waste

Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to adequately monitor State Street's performance in the Illinois Litigation; and Count IX alleges that State Street, Old Waste, the New Waste Investment Committee, and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 405(a)(2) and (a)(3) by enabling their co-fiduciaries to commit the ERISA violations described in Counts VI-VIII, and by failing to remedy them.

On March 30, 2011, the Waste Management Defendants filed their pending Motion for Summary Judgment Based on the Statute of Limitations, and Defendants Koenig and Tobecksen filed their pending Motion for Summary Judgment.[12] On May 2, 2011, Plaintiffs filed their Cross Motion for Summary Judgment on Statute of Limitations and Release and in Opposition to Defendants' Motions for Summary Judgment on These Defenses.[13] On June 8, 2011, the Waste

---

[12] The Waste Management Defendants also join in Defendants Koenig and Tobecksen's Summary Judgment Motion on statute of limitations, release, and several other defenses. Waste Management Defendants' Notice of Joinder in Co-Defendants' Motions for Summary Judgment [Dkt. No. 443].

[13] On July 18, 2011, this Court granted Defendants Koenig and Tobecksen's Motion to exclude various expert declarations submitted by Plaintiffs [Dkt. No. 544]. Accordingly, the following declarations have been stricken from the record and will not be considered by the Court: (1) the Declaration of Bente Villadsen in Support of Plaintiffs' Opposition to Motions for Summary Judgment (continued...)

-9-

Management Defendants filed their Reply in Support of Their Motion for Summary Judgment ("WM Reply") [Dkt. No. 511] and their Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("WM Opp'n") [Dkt. No. 508]. Defendants Koenig and Tobecksen also filed their Opposition to Plaintiffs' Cross Motion for Summary Judgment and Reply in Support of Their Motion for Summary Judgment on June 8, 2011 ("Koenig Reply") [Dkt. No. 509]. On June 30, 2011, Plaintiffs filed their Reply to Defendants Koenig and Tobecksen's Response in Opposition to Plaintiffs' Cross Motion for Summary Judgment on Release [Dkt. No. 532]. On August 15, 2011, Plaintiffs filed a Reply to Oppositions of Defendants James E. Koenig and Bruce D. Tobecksen and of Waste Management Defendants to Plaintiffs' Cross Motion for Summary Judgment on Statute of Limitations ("Pls.' Reply on SoL") [Dkt. No. 552].

## II. Standard of Review

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended Dec. 1, 2007; Arrington v. United

---

[13](...continued)
and Plaintiffs' Cross Motion for Summary Judgment, Apr. 29, 2011 [Dkt. No. 471-3]; (2) Declaration of Henry R. Jaenicke in Support of Plaintiffs' Supplemental Statement of Undisputed Material Facts, Apr. 30, 2011 [Dkt. No 471-9]; (3) Affidavit of Alan D. Biller, Apr. 27, 2011 [Dkt. No. 473]; and (4) Declaration of Saul Solomon in Opposition to Summary Judgment, Apr. 26, 2011 [Dkt. No. 474].

<u>States</u>, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, that there is no "genuine" factual dispute and, second, if there is, that it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" <u>Arrington</u>, 473 F.3d at 333 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. <u>Liberty Lobby</u>, 477 U.S. at 248.

As the Supreme Court stated in <u>Celotex Corp. v. Catrett</u>, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. 317, 322 (1986). The Supreme Court has further explained,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 . . . (1986) (footnote omitted). "'[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly

> supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.'"

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Liberty Lobby</u>, 477 U.S. at 247-48) (emphasis in original).

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 249. In both <u>Liberty Lobby</u> and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 255.

## III. Analysis

Defendants and Plaintiffs move for summary judgment on the First Period Claims based on ERISA's statute of limitations. Defendants argue that the undisputed evidence demonstrates that Plaintiffs' First Period Claims are barred by ERISA's three-year limitations period, while Plaintiffs argue that the First Period Claims are timely under ERISA's six-year statute of limitations.[14]

---

[14] Additionally, Defendants Koenig and Tobecksen move for summary judgment on Counts I - III and V of the First Period Claims (continued...)

## A.    Fraud or Concealment Under Section 413

These cross-motions are the latest in several rounds of lengthy briefing regarding the timeliness of Plaintiffs' First Period Claims. Initially, in considering the Motions to Dismiss the Third Amended Complaint, this Court found that Plaintiffs had actual knowledge of potential ERISA claims as of February 24, 1998, found that Plaintiffs filed the instant action more than three-years after that date, on April 1, 2002, and therefore dismissed Counts I-V. Harris I, 602 F. Supp. 2d at 51-52; Harris III, 722 F. Supp. 2d at 54-55.

Subsequently, the Court denied Defendants' Motion to Dismiss the same counts as re-alleged in the Fourth Amended Complaint on the ground that Plaintiffs could receive the benefit of a six-year statute of limitations if they could prove that Defendants had fraudulently concealed the alleged ERISA violations. Harris III, 722 F. Supp. 2d at 59-60. In that Opinion, the Court held that Plaintiffs had sufficiently alleged, for purposes of a Motion to Dismiss, that the six-year statute of limitations should apply because Defendants "engaged in active concealment, separate from the underlying breaches of fiduciary duty, to prevent Plan

---

[14] (...continued)
based on several substantive grounds, and all Defendants argue that the First Period Claims are precluded by the Release signed in the Illinois Litigation. Because the Court finds that all First Period Claims are barred by the statute of limitations, neither the substantive arguments nor the Release issue will be reached in this Opinion.

participants and beneficiaries from discovering ERISA claims" by submitting inaccurate management representation letters ("MRLs") to Arthur Andersen.[15] Id.

The collective result of these decisions is that the Court has already determined that ERISA's three-year statute of limitations bars Plaintiffs' claims, unless Plaintiffs can demonstrate that Defendants engaged in acts of fraudulent concealment, as now alleged in the Fifth Amended Complaint. Harris I, 602 F. Supp. 2d at 51-52; Harris III, 722 F. Supp. 2d at 54-55. Therefore, the only question presently before the Court relating to the statute of limitations is whether or not, now that discovery has been completed, the undisputed material facts demonstrate that Defendants engaged in active concealment.[16]

---

[15] The only relevant allegation that survived Defendants' Motions to Dismiss is Plaintiffs' claim that the MRLs constituted acts of fraudulent concealment. Harris III, 722 F. Supp. 2d at 57-59. Neither the 1998 Restatement nor any other filing or statement made by Defendants is at issue at this time.

[16] To the extent that Plaintiffs attempt to relitigate whether they had actual knowledge of their ERISA claims on February 24, 1998, they have provided no grounds for the Court to reconsider its decision, nor have they even attempted to present their arguments under a proper legal standard for reconsideration. See Pls.' Mot. 4-5. Hence, the Court will not revisit the issue.

For the same reasons, the Court will not consider a new argument Plaintiffs now raise that, even if Koenig and Tobecksen did not engage in fraud or concealment, Count V is still timely as to Old Waste. Pls.' Mot. 37-38. Plaintiffs contend that "[w]hen the Court ruled that Plaintiffs had actual knowledge of the fiduciary breach claims alleged in Counts One through Five, it did not address whether Plaintiffs' claims in Count Five that were brought
(continued...)

Under ERISA, the limitations period for breach of fiduciary duties claims is governed by Section 413, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part or with respect to a violation, after the earlier of:
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment such action may be commenced not later than six years after the date of discovery of such breach or violation.

---

[16](...continued)
under ERISA § 405(a)(3) were subject to a different accrual date than Counts One through Four." Id. at 37. Plaintiffs argue that Count V is timely because Old Waste is liable as a co-fiduciary for failing to take reasonable steps to remedy Koenig and Tobecksen's fiduciary breaches. Plaintiffs further contend that their claim against Old Waste did not accrue until the three years during which Old Waste could have sued Koenig and Tobecksen elapsed, on February 23, 2011. Id. at 37-38.

Since this argument was not made earlier, and Plaintiffs have not addressed the issue of Count V's timeliness under Federal Rule of Civil Procedure 59 or raised any other legal justification for reconsideration, the Court will not reopen the issue of ERISA's three-year statute of limitations. See, e.g., Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1296 (D.C. Cir. 2004) (affirming denial of motion for reconsideration where moving party's argument could have been raised earlier); Estate of Gaither ex rel. Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (a motion for reconsideration raising arguments "that should have been raised earlier" was not "a bona fide motion for reconsideration.").

29 U.S.C. § 1113. Section "413's fraud or concealment provision sets forth a separate six-year statute of limitations" which applies when a plaintiff demonstrates that a defendant actively concealed evidence of its wrongdoing. Harris III, 722 F. Supp. 2d at 57; Larson v. Northrop Corp., Civ. No. 88-899, 1992 WL 249790, at *3 (D.D.C. March 30, 1992) ("Larson I"), aff'd on other grounds, 21 F.3d 1164 (D.C. Cir. 1994) ("Larson II").

In order to successfully invoke the six-year statute of limitations, Plaintiffs bear the burden of proving "fraud or concealment" under 29 U.S.C. § 1113. Larson II, 21 F.3d at 1172-73; Folz v. U.S. News and World Report, Inc., 663 F. Supp. 1494, 1537 (D.D.C. 1987), aff'd 865 F.2d 364 (D.C. Cir. 1989), cert. denied, 490 U.S. 1108 (1989); see also Abate v. District of Columbia, 659 F. Supp. 2d 156, 160 (D.D.C. 2009) ("On summary judgment, if the defendant has raised a statute of limitations defense, the plaintiff must show that a genuine issue of fact exists as to whether the discovery rule or equitable tolling applies.").

As our Court of Appeals has explained, "the fraudulent concealment doctrine of § 1113 requires that the defendant engage in active concealment--it must undertake some trick or contrivance to exclude suspicion and prevent inquiry." Larson II, 21 F.3d at 1174 (emphasis in original) (internal quotations omitted). Since the defendant must have engaged in active concealment, a plaintiff

must also show that the defendant engaged in the concealment intentionally and, of course, knowingly. Id. Further, "[s]uch concealment must rise to something more than merely a failure to disclose." Id. (internal quotation omitted). Thus, plaintiffs must "'show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence.'" Larson II, 21 F.3d at 1172 (quoting Folz, 663 F. Supp. at 1537).

Plaintiffs argue that there is evidence demonstrating that Defendants Koenig and Tobecksen purposefully misled Arthur Andersen by submitting fraudulent MRLs. Under Section 103(a) of ERISA, plan administrators are required to file annual reports with the Department of Labor ("DoL"). 29 U.S.C. § 1023(a). In connection with each annual report, plan administrators must also submit an opinion from an independent qualified public accountant ("independent accountant" or "independent auditor") as to "whether the financial statements and schedules required to be included in the annual reports . . . are presented fairly in conformity with generally accepted accounting principles ["GAAP"] . . . ." Id. § 1023(a)(3)(A). In connection with submitting these opinions, the auditor is required to obtain MRLs from plan management.

The following facts are undisputed. During the First Claim Period, January 1, 1990, to February 24, 1998, Arthur Andersen

served as the auditor of Old Waste's financial statements as well as the independent qualified accountant for the Plan. During the preparation of its opinions on the Plan's financial statements for fiscal years 1990-1996, Arthur Andersen received MRLs from Defendants Koenig and Tobecksen.[17]

Plaintiffs claim that Defendants, acting in their roles as Plan fiduciaries, concealed the accounting irregularities at Old Waste and their failure to fairly value the Old Waste stock by making false representations on each MRL for fiscal years 1990-1996. FAC ¶¶ 88, 92-93. As a result of receiving these inaccurate MRLs, Arthur Andersen submitted unqualified opinions on the Plan's financial statements to DoL. Id. ¶ 97. According to Plaintiffs, Koenig and Tobecksen submitted these misrepresentations to Arthur Andersen in order to prevent DoL, and ultimately the Plaintiffs, from becoming aware of the underlying ERISA violations. Id. ¶¶ 90-97.

Defendants argue that Plaintiffs have failed to adduce evidence that Defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing because (1) Plaintiffs have no evidence that Koenig or Tobecksen were aware of Old Waste's accounting errors before 1994, and (2) the evidence demonstrates that Arthur Andersen was generally aware of the

_____

[17] Defendant Koenig signed the MRLs for fiscal years 1991-1993 and 1996 and Defendant Tobecksen signed the MRLs for fiscal years 1994-1995.

accounting problems at Old Waste as early as 1993.[18] In substance, Defendants contend that Koenig and Tobecksen did not conceal anything from Arthur Andersen because there was no time at which they had knowledge of the accounting irregularities at Old Waste and Arthur Andersen did not. Defendants further argue that, even if Plaintiffs could make the necessary showing of knowledge, they have provided no evidence that Defendants intended to use the MRLs to conceal underlying ERISA violations. For the reasons given below, the Court concludes that Plaintiffs have failed to set forth material facts sufficient to find that Koenig and/or Tobecksen engaged in specific acts of fraud or concealment.

### 1. Koenig and/or Tobecksen's Knowledge

Defendants argue that "Plaintiffs effectively have abandoned any claim of active concealment during the 1990 through 1993 time period" because they have put forth no "evidence that defendants Koenig or Tobecksen even had knowledge about the Company's accounting errors before 'the end of 1993.'" WM Mot. 15 (citing Waste Management's Statement of Facts ¶ 22 ("WM SOF") [Dkt. No. 446-2]). Defendants contend that without any evidence of knowledge during the 1990-1993 time period, Plaintiffs cannot show that Koenig or Tobecksen made any misrepresentation before June 24,

---

[18] The parties also engage in extensive argument over whether the statements in the MRLs were themselves inaccurate. That issue, which is definitely in dispute, need not be addressed because the Court finds on other grounds that Plaintiffs have failed in their burden to demonstrate fraudulent concealment.

1994, the date Koenig submitted the first MRL after the end of 1993.

Plaintiffs offer two responses. First, Plaintiffs argue that "Koenig knew of the accounting errors at least as early as 1992." Pls.' Mot. 30. Second, Plaintiffs argue that "the fact is that those accounting errors were cumulative" so that "[c]oncealment of the errors in 1993 necessarily involves concealment of the errors from the preceding years."[19] Id. Regardless of the merit of this "cumulative" theory, the sole piece of evidence Plaintiffs point to for their contention that Defendants knew of accounting errors prior to the end of 1993 is the completed jury verdict form from SEC v. Koenig, No. 02C2180 (N.D. Ill. filed Mar. 26, 2002), which indicates that the jury found Koenig guilty of violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 in 1992. Pls.' Mot. 30; Pls.' Statement of Facts ¶¶ 144-48 ("Pls.' SOF") [Dkt. No. 435-2]; Veis Decl., Ex. 61 [Dkt. No. 437-34].

As Defendants correctly point out, "the jury's findings in SEC v. Koenig are not evidence." WM Reply 10. Further, Plaintiffs have made no effort to even argue that collateral estoppel should apply. And for good reason--fraudulent concealment under ERISA was neither litigated nor adjudicated in that action. See Biton v. Palestinian

_____

[19] Plaintiffs also state that "Old Waste has admitted that the errors go back at least as far as 1990." Pls.' Mot 30. Of course, what Old Waste has admitted is simply irrelevant--the only relevant inquiry here is what Koenig and Tobecksen knew when they signed the MRLs.

Interim Self-Government Auth., 412 F. Supp. 2d 1, 4-5 (D.D.C. 2005) (collateral estoppel applies only when: "(i) the issue previously adjudicated is identical with that now present, (ii) that issue was actually litigated in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action.") (citing Thomas v. General Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986)).

Moreover, Defendants emphasize that Plaintiffs' own expert, Henry R. Jaenicke, testified during discovery that Koenig and Tobecksen knew about Old Waste's accounting errors "at least as early as the end of 1993" or "by at least 1994." WM SOF ¶ 22; Pls.' Counterstatement to Waste Management Defendants' State of Undisputed Facts ¶ 22 ("Pls.' WM CSOF") [Dkt. No. 540]; Expert Report of Henry R. Jaenicke 4, Nov. 23, 2010 ("Jaenicke Report"), Pls.' Mot., Ex. 1 [Dkt. No. 471-10]. In short, Plaintiffs have pointed to no evidence suggesting that Koenig or Tobecksen had the requisite knowledge to engage in the type of concealment contemplated by Section 413 of ERISA prior to the end of 1993.

## 2.    Arthur Andersen's Knowledge

The crux of Plaintiffs' concealment theory is that Koenig and Tobecksen used the MRLs to mislead Arthur Andersen and thereby dupe the firm into submitting unqualified opinions, which, in turn, kept Plaintiffs in the dark. Defendants argue that this theory is simply

not plausible after 1993 because the "undisputed facts establish that [as early as 1993] Andersen had knowledge of the accounting issues that ultimately led to the February 1998 Restatement." WM Mot. 14; Koenig Reply 6. Indeed, Plaintiffs' own expert "affirmatively asserted in his report that Andersen personnel knew about the accounting errors at issue at least as early as the end of 1993" and even that "Andersen was the source of the Action Steps that Jaenicke contends informed Koenig of the accounting irregularities." WM Reply 6 (emphasis in original); WM SOF ¶ 12.[20]

In response, Plaintiffs argue that "although many of the generic 'issues' were identified in the Summary of Action Steps, at least two were not, 'Mountain Indemnity,' and 'Geographic Entries.'" Pls.' Mot. 28. Plaintiffs further parse the information included in the Action Steps by explaining that "awareness of 'accounting issues' is not the same as awareness of 'accounting errors.'" Pls.' Reply on SoL 15. And finally, "the magnitude of the ultimate restatement was far greater than the amounts Andersen had been aware of at the time it proposed the Action Steps. Pls.' Mot.

_____

[20] The "Action Steps" reference is to a document titled "Summary of Action Steps," dated December 31, 1993, generated by Arthur Andersen in the course of its 1993 audit of Waste Management's financial statements. WM Mot., Ex. 12 [Dkt. No. 446-15]. The document explains that "[i]mplementing the following action steps will ensure WMX begins to move towards its desired change in mindset resulting in more conservative accounting practices." Id. It then identifies thirteen specific issues of concern, with corresponding columns for "Must Do," "Reasonable," and "Conservative." Id.

28. Put simply, Plaintiffs contend that while Arthur Andersen may well have been aware of accounting improprieties occurring at Old Waste as early as 1993, the firm was not aware of all of the errors, nor of their magnitude.[21]

Although the precise extent to which Arthur Andersen was aware of Old Waste's accounting irregularities remains in dispute, it is immaterial. As Defendants note, Plaintiffs' theory of concealment is not that "Old Waste Plan's MRLs misrepresented the <u>extent</u> of Old Waste's accounting irregularities," WM Reply 7, but rather that "[i]t was critical to the Defendants' success in concealing the

---

[21] Plaintiffs also argue that "[t]he unwritten and unsupported premise of [Defendants'] argument is that the Old Waste (company) auditors would have informed the Old Waste Plan auditors of the accounting problems at the company level." Pls.' Mot. 27. That is, Plaintiffs argue that Defendants have not shown that the Plan Auditors, as opposed to the Old Waste corporate Auditors, at Arthur Andersen were aware of the Action Steps.

But, Plaintiffs, who bear the burden of proving their fraudulent concealment theory, have offered no direct evidence to support their theory that the Old Waste corporate audit team withheld information relevant to the Plan's audit from the Plan's auditors. By contrast, the record contains undisputed evidence supporting Defendants' "premise" that Plan Auditors would have been aware of Old Waste's accounting errors. <u>See</u> Export Report of Marilee Lau, Dec. 22, 2010, WM Mot., Ex. 10 [Dkt. No. 446-13] (where an audit company has different teams auditing the financial statements of a company and its employee retirement plan "there is communication between the teams as to any factors encountered during the corporate audit that would impact the opinion to be rendered on the benefit plan's financial statements or on the disclosures included in the benefit plan's financial statements."). Again, Plaintiffs' own expert testified, "if the auditor of a plan is also the auditor of the entity sponsoring the plan, many of the auditing procedures required for the audit of a plan will be performed as part of the audit of the sponsor's financial statements." Jaenicke Dep., 80:9-19, Jan. 31, 2011 [Dkt No. 512-1].

underlying accounting irregularities in the Company's financial statements that the Plan's financial statements also conceal the accounting irregularities and fraud." FAC ¶ 90. Indeed, there is nothing about the MRLs that suggests Defendants sought to conceal the magnitude of the accounting errors from Arthur Andersen.

Further, Plaintiffs' own expert debunked the theory that it was Arthur Andersen's ignorance of the extent of the irregularities that produced unqualified opinions:

> I simply do not understand how [Arthur] Andersen could have written that [February 11, 1994, memo] without issuing a qualified or adverse opinion on [Old Waste's] financial statements. The [memo] indicates that [Old Waste] was not at the "minimum acceptable level of accounting," but that is the level necessary to justify Arthur Andersen's rendering of a standard, unqualified opinion . . . on the Company's financial statements.

Jaenicke Dep., 80:15-20, Jan. 31, 2011 [Dkt. No. 512-1]. At best, Plaintiffs have presented evidence that Arthur Andersen should never have issued its unqualified opinions.[22] They have not offered

_____

[22] In response to Defendants' claim that there is no evidence suggesting that Arthur Andersen relied on the Plan MRLs, Plaintiffs argue that "if Arthur Andersen knew of [the MRLs'] falsity and, notwithstanding that knowledge, issued unqualified opinions on the Plan's financial statements, there would still be a trick or contrivance--active concealment, but Arthur Andersen would be a facilitator instead of a dupe." Pls.' Reply on SoL 17. This purely speculative argument does not constitute evidence and cannot rebut the undisputed facts offered by Defendants. Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 645 (D.D.C. 1997) ("'[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and
(continued...)

any evidence that Arthur Andersen was unaware of the auditing irregularities and therefore was misled into issuing the unqualified opinions. Quite to the contrary, the Action Steps sent by Arthur Andersen demonstrate the firm's detailed knowledge of Old Waste's accounting problems. In sum, Plaintiffs have not shown that Arthur Andersen was ever misled by an MRL sent by Koenig or Tobecksen.

### 3. Koenig and/or Tobecksen's Intent

Defendants alternatively argue that, even if Plaintiffs could prove that Arthur Andersen had been misled by Koenig or Tobecksen, they cannot prove that either Koenig or Tobecksen acted with intent to fraudulently conceal. WM Mot. 12-15; WM Reply 8-12. Plaintiffs respond first that "reckless disregard for the truth" satisfies the fraud or concealment exception and second that, at least in the case of Koenig, the jury findings in SEC v. Koenig, No. 02C2180 (N.D. Ill. filed Mar. 26, 2002), provide sufficient evidence of intent. Pls.' Mot. 31-33; Pls.' Reply on SoL 19-21.

Plaintiffs' first argument is easily disposed of. Once again, Larson II, as the controlling law in this Circuit, provides the answer and clearly states that in order to demonstrate fraudulent concealment, Plaintiffs must show "that [D]efendants engaged in a course of conduct designed to conceal evidence of their alleged

---

[22](...continued)
unsupported speculation.'" (quoting Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996)).

wrong-doing" and that "[t]here must be actual concealment--i.e., some trick or contrivance <u>intended</u> to exclude suspicion and prevent inquiry." <u>Larson II</u>, 21 F.3d at 1172-73 (emphasis added) (internal quotations omitted). Plaintiffs' citations to cases discussing types of fraud other than fraudulent concealment or to cases outside of this Circuit are irrelevant in light of controlling precedent.[23] <u>See</u> Pls.' Mot. 31-33. Plaintiffs must, therefore, provide some evidence that Defendants intended to fraudulently conceal the alleged wrongdoing in order to escape summary judgment for Defendants. <u>Celotex Corp.</u>, 477 U.S. at 322.

The only "evidence" offered by Plaintiffs regarding intent comes from the findings in <u>SEC v. Koenig</u>. Pls.' Mot. 31; Pls.' Reply on SoL 21. As discussed above, findings in <u>SEC v. Koenig</u> simply are not evidence, nor have Plaintiffs attempted to argue for collateral estoppel. <u>See</u> <u>Biton</u>, 412 F. Supp. 2d at 4-5. If anything, Plaintiffs' argument is less convincing on the issue of intent than knowledge, since whatever the jury or court in <u>SEC v. Koenig</u> may have found regarding Koenig's knowledge of certain securities law violations, they certainly did not address whether

---

[23] Plaintiffs' citation to <u>Caputo v. Pfizer, Inc.</u>, 267 F.3d 181, 191 (2d Cir. 2001), is particularly unconvincing since it is unclear whether that court's reference in that opinion to "reckless disregard for the truth" was intended to describe an element of the fraud or concealment exception or merely the pleading standard for fraud under Fed. R. Civ. P. 9(b).

Koenig intended to fraudulently conceal ERISA violations using the MRLs.

Accordingly, the Court concludes that Plaintiffs have failed to present evidence that at any time Koenig or Tobecksen intentionally engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing. <u>Larson II</u>, 21 F.3 at 1172; <u>see also</u> <u>Maydak, et al. v. United States, et al.</u>, 630 F.3d 166, 181 (D.C. Cir. 2010) (arguments that defendants "<u>must</u> have known" and that "intent could be inferred" were insufficient to show intent or willfulness and fell "far short of what is required by Rule 56 to defeat a motion for summary judgment.") (emphasis in original).[24] In sum, Plaintiffs have not shown that the MRLs were a fraudulent device intended to forestall suspicion or prevent inquiry. <u>Larson II</u>, 21 F.3d at 1174.

Because Plaintiffs have failed to point to any evidence that Arthur Andersen was ever misled by an MRL sent by Koenig or Tobecksen or that Koenig or Tobecksen intended to conceal alleged ERISA violations, Defendants' Motions for Summary Judgment as to Counts I-V are **granted.**

---

[24] <u>Maydak</u> was decided under the Privacy Act, 5 U.S.C. § 552(a)(g)(1). 630 F.3d at 181. However, the principle it establishes is applicable to this case.

## B.    Second Period Claims

Defendants also argue that "[b]ecause the First Period Claims are time-barred, Plaintiffs have no basis for claiming that the Plan's release of those claims caused them to suffer any harm." WM Mot. 4. Defendants point out that all of the Second Period Claims stem from the allegedly improper signing of the Release. Id. at 20. Defendants reason that if this Court denies Plaintiffs' First Period Claims for any reason other than the Release, such as on the basis of the statute of limitations, then the Release will have done the Plaintiffs no harm, and all Second Period Claims can be dismissed. Id. at 20.

Defendants' logic is unconvincing. First, Plaintiffs' Second Period claims do not merely allege that by signing the Release State Street prevented Plaintiffs from bringing this lawsuit. Rather, Plaintiffs allege that State Street breached its fiduciary duty under ERISA § 404 by failing to adequately investigate and preserve ERISA claims against the Illinois defendants. Plaintiffs further allege that, by signing the Release, Old Waste and State Street engaged in prohibited exchanges of choses in action between the New Waste Plan and Old Waste, and that Defendants should have monitored State Street's performance during the Illinois Litigation. Plaintiffs allege that Defendants had a duty to investigate and protect their ERISA claims. Defendants provide no authority for the theory that Plaintiffs' failure to bring those

ERISA claims in a timely fashion prevents them from suing Defendants for their own failure to properly investigate and preserve them. Therefore, Defendants' Motion for Summary Judgment as to the Second Period Claims on the statute of limitations is **denied.**

October 3, 2011

/s/_____
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**