**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM S. HARRIS, <u>et al.</u>, )<br><br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JAMES E. KOENIG, <u>et al.</u>, )<br>)<br>Defendants. )<br>) | Civil Action No. 02-618 (GK) |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr. are former employees of Waste Management Holdings, Inc. ("Old Waste") and participants in the Waste Management Profit Sharing and Savings Plan ("Old Waste Plan" or "Plan"). They bring this action on behalf of the Plan's approximately 30,000 participants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et seq.</u>, against Defendants,[1]

_____

[1] Defendants include the "Old Waste Fiduciaries," which are Old Waste (the Plan's sponsor), the Waste Management, Inc. Profit Sharing and Savings Plan Investment Committee ("Old Waste Investment Committee"), the Waste Management, Inc. Profit Sharing and Savings Plan Administrative Committee ("Old Waste Administrative Committee"), the individual Trustee Members of the Committees, the Old Waste Board of Directors and its individual members, and fifteen unidentified fiduciaries; and the "New Waste Fiduciaries," which are the Waste Management Retirement Savings Plan ("New Waste Plan"), the Investment Committee of the Waste Management Retirement Savings Plan ("New Waste Investment Committee") and its individual Trustee Members, the State Street Bank and Trust Company ("State Street"), and fifteen unidentified fiduciaries.

all of whom were fiduciaries of the Old Waste Plan[2] or of its successor plan, the Waste Management Retirement Savings Plan ("New Waste Plan").[3]

This matter is now before the Court on the portions of Plaintiffs' Motion for Partial Summary Judgment that address Counts VI and VII against Defendants State Street Bank and Trust Company ("State Street") and Old Waste [Dkt. No. 435], and on State Street's Motion for Summary Judgment [Dkt. No. 442].[4] Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, the Court concludes that Plaintiffs' Motion for

---

[2] From at least January 1, 1989, Old Waste also sponsored an employee stock ownership plan (the "ESOP"). In May 1998, the ESOP was merged into the Old Waste Plan, and its assets were held by the Old Waste Plan in a fund called the "ESOP Fund."

[3] On January 16, 1998, Old Waste and Waste Services, Inc., merged to become New Waste. On January 1, 1999, the Old Waste Plan merged with the USA Waste Services, Inc. Employee's Savings Plan to become the New Waste Plan.

[4] Because Old Waste is also named in Count Seven and has filed a Notice of Joinder in Co-Defendants' Motions for Summary Judgment [Dkt. No. 443] and a Notice of Joinder in Co-Defendants' Oppositions to Plaintiffs' Motion for Partial Summary Judgment [Dkt. No. 482], the Court will treat State Street's filings as applying to both State Street and Old Waste as to Count VII. Oddly, the Notice of Joinder in Co-Defendants' Motions for Summary Judgment does not specify Old Waste's joinder in State Street's Motion for Summary Judgment, but rather indicates that Old Waste joins in the Second Period Individual Defendants' Motion for Summary Judgment based on "Plaintiffs' inability to show . . . that State Street acted imprudently or breached any of its fiduciary duties by causing the Plan to participate in the Illinois Settlement." Since that topic was addressed in State Street's Motion, and not in the Second Period Individual Defendants' Motion, the Court will treat Old Waste as having joined in State Street's Motion as well.

Partial Summary Judgment is **denied** as to Counts VI and VII. State Street and Old Waste's Motion for Summary Judgment is **granted**.

## I. Background[5]

This action arises from Old Waste's announcement on February 24, 1998, that, prior to 1992 and continuing through the first three quarters of 1997, it had materially overstated its reported income by approximately $1.3 billion, and that it was therefore restating several of its financial statements for periods between 1991 and 1997. That announcement led to the filing of a securities class action in the United States District Court for the Northern District of Illinois, which settled on September 17, 1999 (the "Illinois Litigation").

Earlier, on July 15, 1999, the Illinois district court entered a Preliminary Approval Order approving a proposed settlement and provisionally certifying a class, for settlement purposes only, of all persons (other than Defendants and their affiliates) who had acquired Old Waste common stock between November 3, 1994, and February 24, 1998. See Fifth Amended Complaint ("FAC") ¶ 138 [Dkt. No. 408]. Pursuant to the Preliminary Approval Order, "a Notice of Pendency and Proposed Settlement of Class Action, dated July 20, 1999 (the 'Illinois Class Notice'), was sent to [all] members of the [Illinois settlement class],

---

[5] Unless otherwise noted, the facts set forth herein are drawn from the parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h).

including the Plan and its fiduciaries." Id. The Illinois Notice described the scope of the release that would be given by members of the Illinois settlement class in exchange for the settlement consideration, and advised class members of their right to object to or opt out of the proposed settlement by September 2, 1999. See id.

At the time of the Illinois settlement, State Street served as Trustee and Investment Manager for the New Waste Plan.[6] State Street Bank and Trust Co.'s Statement of Undisputed Material Facts ("Def.'s SoF") ¶ 4 [Dkt. No. 442]; Pls.' Counter-Statement in Response to State Street Bank and Trust Co.'s Statement of Undisputed Material Facts ("Pls.' CSoF") ¶ 4 [Dkt. No. 470-1]. As Trustee and Investment Manager, State Street received the Illinois Class Notice on or about July 27, 1999. Def.'s SoF ¶ 13; Pls.' CSoF ¶ 13. State Street then forwarded the Notice to Monet Ewing, an attorney in its legal department. Def.'s SoF ¶ 14; Pls.' CSoF ¶ 14. At that time, it was State Street's practice to review the terms of a securities class action settlement and to prepare and submit claims on behalf of benefit plans for which it served as trustee.

---

[6] On January 1, 1999, State Street was appointed Trustee of the New Waste Plan. Effective February 1, 1999, the New Waste Investment Committee appointed State Street to also serve as the Investment Manager for the New Waste Plan. See FAC ¶¶ 47, 50. Pursuant to the terms of the Investment Manager Agreement between State Street and the New Waste Investment Committee, State Street had "full discretionary authority to manage" the New Waste Plan's assets and funds. Id. ¶ 50.

Def.'s SoF ¶ 16; Pls.' CSoF ¶ 16. Under the terms of the settlement in the Illinois Litigation, Old Waste and its agents were released from liability for any claims--including unknown claims--brought by members of the Illinois Settlement Class in exchange for $220 million. Def.'s SoF ¶ 12; Pls.' CSoF ¶ 12; Notice of Pendency and Proposed Settlement of Class Action 7-8, July 20, 1999 [Dkt. No. 440-16]. On December 1, 1999, State Street submitted a claim on behalf of the New Waste Plan, resulting in a recovery of $86,609.76. Def.'s SoF ¶ 28; Pls.' CSoF ¶ 28.

On April 1, 2002, Plaintiffs filed suit in this Court, alleging ten counts of ERISA violations pursuant to ERISA § 502(a)(2), codified as 29 U.S.C. § 1132(a)(2). Plaintiffs' claims were originally divided into three periods. First, Plaintiffs alleged five ERISA violations related to the Plan's purchase of inflated shares of Company Stock in the first claim period between January 1, 1990, and February 24, 1998 (Counts I-V, the "First Period Claims"). Second, Plaintiffs alleged four ERISA violations related to the release of claims by the Plan's fiduciaries in the Illinois Litigation in the second claim period between July 15, 1999, and December 1, 1999 (Counts VI-IX, the "Second Period Claims"). Third, Plaintiffs alleged one ERISA violation related to the release of claims by State Street in the Texas Litigation in the third claim period between February 7, 2002, and July 15, 2002 (Count X).

While there has been a significant amount of litigation regarding the various counts, the only counts relevant to the pending Motions are Counts VI and VII, which are also the only remaining counts specific to State Street.[7] Pursuant to Plaintiffs' Fifth--and final--Amended Complaint, Count VI alleges that, during the second claim period, from July 15, 1999, to December 1, 1999, State Street breached its fiduciary duty by failing to adequately investigate and preserve claims of breach of fiduciary duty under ERISA § 404 in the Illinois Litigation and by causing those claims to be released.[8] Count VII alleges that, during the same time

---

[7] Plaintiffs withdrew Count X against State Street in the Fifth Amended Complaint on the basis that the evidence obtained in discovery was insufficient to prove the claim. See FAC ¶¶ 224-69. State Street is also named in Count IX, which has survived a Motion to Dismiss. Harris v. Koenig, 602 F. Supp. 2d 39, 61-62 (D.D.C. 2009) ("Harris I"). That Count alleges, in part, that State Street should be held liable as a co-fiduciary for breaches of duty by other Defendants. See FAC ¶¶ 220-23. Plaintiffs' Motion for Summary Judgment includes arguments directed toward Count X, which will be addressed in a separate order and memorandum opinion.

[8] Specifically, Plaintiffs allege that State Street should have investigated and preserved claims that, between January 1, 1990, and February 24, 1998, (1) the Old Waste Investment Committee and certain individuals who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to prudently manage the assets of the Plan; (2) the Old Waste Administrative Committee and certain individuals who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to provide complete and accurate information to Plan participants and beneficiaries; (3) Old Waste, the Old Waste Administrative Committee, the Old Waste Investment Committee, and certain individuals who are or were members of those Committees engaged in prohibited exchanges of stock between the Plan and Old Waste in violation of ERISA § 406(a)(1)(A); (4) Old Waste, its Board of Directors, and certain individuals on the Old Waste Board
(continued...)

period, Old Waste and State Street engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(A) by releasing claims in the Illinois Litigation.[9]

On March 30, 2011, Plaintiffs filed their Motion for Partial Summary Judgment, which addressed, in part, Counts VI and VII against State Street and Old Waste ("Pls.' Mot."). On the same date, State Street filed its Motion for Summary Judgment ("Def.'s Mot."). On May 2, 2011, State Street filed a Response to Plaintiffs' Motion for Partial Summary Judgment ("Def.'s Opp'n") [Dkt. No. 467], and Plaintiffs filed their Opposition to State Street's Motion for Summary Judgment ("Pls.' Opp'n") [Dkt. No. 470]. On June 8, 2011, Plaintiffs ("Pls.' Reply") [Dkt. No. 497] and State Street ("Def.'s Reply") [Dkt. No. 506] filed their respective Replies.

## II. Standard of Review

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[8](...continued)
breached their fiduciary duties under ERISA § 404 by failing to monitor the fiduciaries of the Plan; and (5) all Old Waste Fiduciaries breached their fiduciary duties under ERISA § 405(a)(2) and (3) by enabling their co-fiduciaries to commit the ERISA violations cited above, and by failing to remedy them.

[9] On March 12, 2009, the Court denied Defendants' Motion to Dismiss, which included Counts VI and VII. Harris I, 602 F. Supp. 2d at 54-59.

moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended Dec. 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, that there is no "genuine" factual dispute and, second, if there is, that it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, 473 F.3d at 333 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

As the Supreme Court stated in Celotex Corp. v. Catrett, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. 317, 322 (1986). The Supreme Court has further explained,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct.

> 1348, 89 L.Ed.2d 538 . . . (1986) (footnote
> omitted). "'[T]he mere existence of <u>some</u>
> alleged factual dispute between the parties
> will not defeat an otherwise properly
> supported motion for summary judgment; the
> requirement is that there be no <u>genuine</u> issue
> of <u>material</u> fact.'"

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Liberty Lobby</u>,

477 U.S. at 247-48) (emphasis in original).

However, the Supreme Court has also consistently emphasized
that "at the summary judgment stage, the judge's function is
not . . . to weigh the evidence and determine the truth of the
matter, but to determine whether there is a genuine issue for
trial." <u>Liberty Lobby</u>, 477 U.S. at 249. In both <u>Liberty Lobby</u> and
<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150
(2000), the Supreme Court cautioned that "[c]redibility
determinations, the weighing of the evidence, and the drawing of
legitimate inferences from the facts, are jury functions, not those
of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>,
477 U.S. at 255.

## III. Analysis

### A.   Count VI: Failure to Investigate and Preserve Claims

In Count VI, Plaintiffs allege that State Street, in its
capacity as Trustee and Investment Manager, breached its fiduciary
duty to the New Waste Plan. FAC ¶¶ 205-09. Specifically, Plaintiffs
claim that State Street failed to adequately review and investigate
the claims in the Illinois litigation and appropriately consider

whether Plaintiffs' ERISA claims in that case should have caused State Street to opt out of the settlement. Id. ¶ 207.

Plaintiffs now move for summary judgment on the ground that "under the undisputed facts and circumstances presented here, State Street's mere reading of the class notice [did not] satisf[y] State Street's duty to investigate and recover on the Plan's potential ERISA claims."[10] Pls.' Mot. 45. State Street argues that "it satisfied its fiduciary duties as a matter of law" because "there is no evidence, expert or otherwise, that participation in the Illinois settlement was an imprudent decision, i.e., that a reasonable fiduciary in the same or similar circumstances would have followed a different process or made a different decision." Def.'s Mot. 14.

Under ERISA Section 404(a)(1), "a fiduciary shall discharge his [or her] duties with respect to a plan . . . with the care, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 20 U.S.C. § 1104(a)(1). As this Court has previously explained:

> The duties of loyalty and prudence mandated in Section 404(a) of ERISA include the "duty to take reasonable steps to realize on claims

---

[10] As previously noted, supra Part I, what Plaintiffs refer to as "mere reading," did include review by State Street's legal department.

-10-

> held in trust." <u>Donovan v. Bryans</u>, 566 F.
> Supp. 1258, 1262 (E.D. Pa. 1983). When, as in
> this case, a plan has potential claims against
> a third party, the "trustees have a duty to
> investigate the relevant facts, to explore
> alternative courses of action and, if in the
> best interests of the plan participants, to
> bring suit . . . ." <u>McMahon v. McDowell</u>, 794
> F.2d 100, 112 (3d Cir. 1986).

<u>Harris v. Koenig</u>, 602 F. Supp. 2d 39, 54-55 (D.D.C. 2009) ("<u>Harris
I</u>").

Notably, however, Section 404 requires a fiduciary to act "with the care, prudence, and diligence" a prudent person would use "<u>under the circumstances then prevailing</u>." 20 U.S.C. § 1104(a)(1) (emphasis added). The question now before the Court is not whether State Street's conduct appears prudent as of this time, i.e. 2011, but whether State Street acted with the type of care and engaged in the type of investigation that would reasonably be expected of someone acting as a Trustee during the second half of 1999. <u>See Chao v. Merino</u>, 452 F.3d 174, 182 (2d Cir. 2006) (a fiduciary's "actions are not to be judged 'from the vantage point of hindsight'") (quoting <u>Katsaros v. Cody</u>, 744 F.2d 270, 279 (2d Cir. 1984)); <u>Henry v. Champlain Enters., Inc.</u>, 445 F.3d 610, 620 (2d Cir. 2006) ("The focal point of our inquiry under ERISA is . . . whether [the fiduciary] acted with the prudence required of a fiduciary under the prevailing circumstances at the time of the transaction."); <u>Bussian v. RJR Nabisco, Inc.</u>, 223 F.3d 286, 299 (5th Cir. 2000) ("In determining compliance with ERISA's prudent

man standard, courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions. [ERISA's] test of prudence . . . is one of conduct, and not a test of the result of performance of the investment.") (quoting <u>Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.</u>, 173 F.3d 313, 317 (5th Cir.), <u>cert. denied sub nom</u>, <u>Laborers Nat'l Pension Fun v. American Nat'l Bank & Trust Co.</u>, 528 U.S. 967 (1999)). Indeed, "so long as the 'prudent person' standard is met, ERISA does not impose a 'duty to take any particular course of action if another approach seems preferable.'" <u>Merino</u>, 452 F.3d at 182 (quoting <u>Diduck v. Kaszycki & Sons Contractors, Inc.</u>, 874 F.2d 912, 917 (2d Cir. 1989)).

In support of their Motion, Plaintiffs point to a litany of shortcomings in State Street's process for dealing with the Illinois litigation. For example:

- "no one at State Street reviewed any complaint in the Illinois Litigation";
- "State Street also failed to determine whether the Illinois plaintiffs were pursuing ERISA claims";
- "State Street similarly failed to consider whether any Old Waste Plan or New Waste Plan fiduciaries had engaged in the misconduct at issue";
- "State Street did not ask New Waste for any information about the Illinois allegations";
- "State Street likewise reviewed no facts";

- "State Street also did not ask New Waste for any information about the amount of Company Stock purchased for the Plan;"
- "State Street never contacted counsel representing the Illinois Plaintiffs";
- "[t]he only people who reviewed the Class Notice in the Illinois Litigation were State Street's in-house lawyers Monet Ewing and Denise Sisk."

Pls.' Mot. 36-39. In essence, Plaintiffs contend that without undertaking some or all of these proposed actions, State Street breached its fiduciary duty under Section 404.

State Street responds that because it took into account relevant factors such as "the cost of enforcing the claim, the chance of success and the likelihood of collecting a judgment . . . State Street's handling of the Illinois settlement in 1999 was both sound and consistent with industry standards," notwithstanding any omissions identified by Plaintiffs. Def.'s Mot. 8-9 (citing Scott & Ascher, Trusts § 17.9 (5th Ed. 2007)).

State Street explains that "[f]ollowing its standard practice, State Street sent the notice of the Illinois settlement to the lawyers for its company stock group," who "were well aware of the laws and regulations applicable to company stock plans and followed developments in benefits litigations." Id. at 9. These attorneys considered the notice and determined that "the proposed settlement was the result of contested litigation and there were no reasonable concerns suggested by the notice with respect to issues such as the independence or qualifications of plaintiffs' counsel in the

Illinois class actions." Id. at 10. Therefore, State Street did not object to the settlement and filed a claim for the Plan. Id.

State Street argues that it was justified in not expending the resources required by the additional steps described by Plaintiffs because "[t]here is no evidence that a prudent fiduciary acting in similar circumstances at the time of the Illinois settlement would have taken a different approach, let alone made a different decision than State Street." Id. at 12. State Street explains that its standard approach at the time was to participate in securities class action settlements because it "was not aware of any company stock plan that had ever recovered money by pursuing an ERISA fiduciary breach claim separate from a recovery for securities law violations" and it would therefore not have been prudent to incur additional costs in pursuing such claims. Id. at 13.

In support of its position, State Street points to the statements of Plaintiffs' own experts who acknowledge that, in 1999, it was the standard practice of ERISA plans to accept securities class action settlements and file the appropriate claims. Plaintiffs' expert Alan D. Biller, who served as an independent consultant advising between 50 and 100 ERISA plans prior to 2000 regarding the filing of claims as part of securities class action settlements, stated that none of those plans opted out of a proposed settlement. Biller Dep., Jan 21, 2011, Curto Decl., Ex. 13, at 170-81 [Dkt. No. 442-19]. Biller also admitted that he

could not recall ever calculating the potential recovery for any plan under a proposed settlement and that "generally we didn't even try to estimate that." <u>Id.</u> at 179. Nor could Biller recall ever calculating the potential value of a carve-out for ERISA claims. <u>Id.</u> at 180.

Marcia Wagner, an ERISA compliance attorney retained by Plaintiffs to provide expert testimony, similarly was not aware of any ERISA plan that opted out of a settlement to pursue ERISA claims or that carved ERISA claims out of a settlement prior to 2000. Wagner Dep. Jan 27, 2011, Curto Decl., Ex. 14, at 47-48 [Dkt. No. 442-20]. She knew of no cases in which an ERISA plan trustee had "obtained substantial recoveries under alternative claims for relief under ERISA next door to a piece of securities litigation by 1999." <u>Id.</u> at 51-52.

Plaintiffs offer absolutely no countervailing evidence suggesting that a prudent person in State Street's position <u>at the time of the settlement</u> would have made greater efforts to pursue a carve-out of ERISA claims or otherwise opt out of the settlement. Instead, Plaintiffs identify twenty-eight decisions, opinion letters, amicus curiae briefs, and articles that they label as "pertinent legal precedent that predates September 1999." Pls.' Opp'n 21-27. Not a single one of these citations support Plaintiffs' position.

First, Plaintiffs offer fifteen cases which simply have nothing to do with ERISA litigation claims based on a drop in company stock price analogous to the ERISA claims that Plaintiffs argue deserved additional attention by State Street. Pls.' Opp'n 21-26. None suggest that an ERISA plan would be successful in opting out of a securities class action settlement and pursuing its own claims.

Second, Plaintiffs cite to two cases which do involve ERISA stock drop litigation. Pls.' Mot. 25. These cases stand for the well established principle, which does not support Plaintiffs' claims in this case, that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995); Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995).

Third, Plaintiffs quote from a smattering of Department of Labor Advisory Opinion Letters, Amicus Curiae briefs, and articles. Pls.' Mot. 20-27. These items are not only unhelpful in resolving the question of whether State Street's conduct was prudent but also do not provide a source of persuasive authority upon which the Court may rely.

Fourth, and finally, Plaintiffs cite to cases decided after 1999, which, once again, for the reasons given above, are not relevant to whether State Street's conduct was prudent at the time

in question. _Id._ at 25-27.[11] Even crediting their own descriptions of the materials they cite, Plaintiffs' twenty-eight sources stand for nothing more than the fact that "ERISA itself was adopted in 1974" and that State Street owed the Plan a duty of care under Section 404. _Id._ at 20.

Plaintiffs present no evidence whatsoever that there was any "history of success in ERISA 'stock drop' litigation of the kind [P]laintiffs say State Street should have pursued" or that a prudent fiduciary would have taken the steps suggested by Plaintiffs. Def.'s Mot. 4. Instead, as discussed above, Plaintiffs have merely presented a long list of additional steps they believe State Street should or could have undertaken that may or may not have yielded a preferable settlement for the Plan. But "ERISA does not impose a duty to take any particular course of action," nor does it allow a fiduciary's "actions to be judged from the vantage point of hindsight." _Merino_, 452 F.3d at 182 (internal quotations omitted).

In short, Plaintiffs have submitted no evidence that a prudent person acting in a like capacity and familiar with such matters would have taken a different course of action under the conditions

---

[11] The Court cannot help but note that in citing these cases, Plaintiffs followed the curious--and unusual--practice of giving the date of filing instead of the usual practice of giving the date of decision. _Id._ at 25-27. One can only wonder if this was done to obscure the fact that these cases were decided--not filed--after the time period which is relevant in this case.

prevailing at that time. 20 U.S.C. § 1104(a)(1). Without any such evidence, Plaintiffs "fail[] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, Plaintiffs' Motion for Summary Judgment as to Count VI is **denied** and State Street's Motion for Summary Judgment is **granted**.[12]

## B.   Count VII: Prohibited Transaction

Both parties also seek summary judgment on Plaintiffs' claim that State Street engaged in a prohibited transaction under ERISA Section 406 by agreeing to a settlement in the Illinois Litigation that released the Plaintiffs' claims. Section 406 forbids a plan's fiduciary from "caus[ing] the plan to engage in a transaction, if he [or she] knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange, or leasing, of any property between the plan and a party in interest." 29 U.S.C. § 1106(a)(1). The Section "categorically bar[s] certain transactions deemed likely to injure the pension plan." Harris Trust & Sav. Bank

_____

[12] It is immaterial to the ruling on this Motion that the Court has, on this date, denied State Street's Motion to Reconsider June 20, 2011 Memorandum Order [Dkt. No. 542]. Pursuant to the Order denying that Motion as well as the Court's June 20, 2011, Memorandum Order [Dkt. No. 521], State Street has lost its expert, Wilson H. Ellis. Of course, for the reasons given above, State Street has nonetheless demonstrated that it is entitled to judgment as a matter of law because of Plaintiffs' failure to establish the existence of an essential element of their claim.

v. Salomon Smith Barney, 530 U.S. 238, 242 (2000) (internal quotation omitted).

In concluding that Plaintiffs had adequately stated a claim and therefore denying State Street's Motion to Dismiss Count VII, this Court stated that "it is a prohibited exchange of property under ERISA Section 406 for State Street, a Plan fiduciary, to enter into the Illinois Securities Settlement on behalf of the New Waste Plan against Old Waste, the Plan sponsor and a party in interest, <u>unless</u> the transaction is exempted from the proscriptions of ERISA Section 406." <u>Harris I</u>, 602 F. Supp. 2d at 56-57 (emphasis added).

As the Court also noted at that early point in the litigation, State Street's participation in the settlement might be exempted from the strictures of Section 406 by Prohibited Transaction Exemption ("PTE") 2003-39, 68 Fed. Reg. 75,632. <u>Id.</u> at 57. PTE 2003-39 "permits transactions engaged in by a plan, in connection with the settlement of litigation" and "affects all employee benefit plans, the participants and beneficiaries of such plans, and parties in interest with respect to those plans engaging in the described transactions." 68 Fed. Reg. 75,632. In order to qualify for the exemption, the settlement must be "reasonable in light of the plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." <u>Id.</u> at 75,639. As the Department of Labor explained, this requirement demands that

any exempted settlement "involve a prudent decision-making process, given the facts and circumstances of the particular situation." Id. at 75,636.

State Street devotes a great deal of its briefing to rearguing whether a settlement of the type in question is a prohibited transaction under ERISA Section 406, noting in particular that no other court has examined some of the issues implicated by that question.[13] Def.'s Reply 15. However, it is unnecessary to reach that issue at this time.

Regardless of whether State Street's participation in the settlement is subject to Section 406, it is clear that, even assuming Section 406 does apply, PTE 2003-39 covers the release of claims included in the Illinois settlement. The language used by the Department of Labor demonstrates that exactly the same level of prudence is required to obtain an exemption under PTE 2003-39 as is

_____

[13] PTE 2003-39 itself reads:

> As the Department noted in proposing this exemption, the fact that a transaction is subject to an administrative exemption is not dispositive of whether the transaction is, in fact, a prohibited transaction. Rather, the exemption is being granted in response to uncertainty expressed on the part of plan fiduciaries charged with the responsibility under ERISA for determining whether it is in the interests of a plan's participants and beneficiaries to enter into a settlement agreement with a party in interest.

68 Fed. Reg. 75,633.

required by the fiduciary duties outlined in ERISA Section 404. Compare id. at 75,636 (an exempted settlement "will always involve a prudent decision-making process, given the facts and circumstances of the particular situation."), with 20 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his [or her] duties with respect to a plan . . . with the care, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.").

Indeed, Plaintiffs' arguments attempting to demonstrate why State Street's conduct should not be covered by PTE 2003-39 are indistinguishable from those raised by Plaintiffs under Count VI and already rejected by the Court, supra Part III.A. See Pls.' Mot. 49-51. As State Street argues, albeit briefly, its "approach to litigation settlements in 1999 already included the steps called for by PTE 2003-39 for settlements entered into before January 1, 2004." Def.'s Mot. 27.

For the reasons spelled out above, supra Part III.A, State Street's participation in the Illinois settlement involved what was at that time "a prudent decision-making process, given the facts and circumstances of the particular situation" and was "reasonable in light of the plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." 68 Fed.

Reg. 75,633, 75,639. Therefore, Plaintiffs' Motion for Summary Judgment as to Count VII is **denied**, and State Street and Old Waste's Motion for Summary Judgment is **granted**.[14]


                                    /s/
November 2, 2011                    _____
                                    Gladys Kessler
                                    United States District Judge


**Copies via ECF to all counsel of record**

---

[14] For the reason stated above, <u>supra</u> note 4, the grant of State Street's Motion applies to both State Street and Old Waste.